PAUL ANDRE (State Bar No. 196585)
pandre@kramerlevin.com
LISA KOBIALKA (State Bar No. 191404)
lkobialka@kramerlevin.com
JAMES HANNAH (State Bar No. 237978)
jhannah@kramerlevin.com
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800

*Attorneys for Plaintiff*
FINJAN, INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>             Plaintiff,<br><br>        v.<br><br>BITDEFENDER INC., a Florida Corporation, and BITDEFENDER S.R.L., a Romanian Corporation,<br><br>             Defendants. | Case No.:<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Finjan, Inc. ("Finjan") files this Complaint for Patent Infringement and Demand for Jury Trial against Bitdefender Inc. and Bitdefender S.R.L. (collectively, "Defendants" or "Bitdefender") and alleges as follows:

## THE PARTIES

1.       Finjan is a Delaware Corporation with its principal place of business at 2000 University Avenue, Suite 600, E. Palo Alto, California 94303.

2.       Bitdefender Inc. is a Florida Corporation with its principal place of business at 6301 N.W. 5th Way, Suite 4300, Fort Lauderdale, FL 33309.  Bitdefender Inc. may be served through its agent for service of process Corporate Creations Network Inc. at 1430 Truxtun Ave., 5th Floor, Bakersfield, CA 93301.  Upon information and belief, Bitdefender Inc. maintains an office in this District at 2880 Lakeside Drive, Suite 150, Santa Clara, CA 95054.

3.       Bitdefender S.R.L. is a Romanian Corporation with its principle place of business at Preciziei Boulevard no. 24, West Gate Building H2, Ground Floor, 6th District, Bucharest, 7000, Romania.  Upon information and belief, Bitdefender Inc. is a wholly-owned subsidiary of Bitdefender S.R.L.

## JURISDICTION AND VENUE

4.       This action arises under the Patent Act, 35 U.S.C. § 101 *et seq*.  This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. §§ 1331 and 1338.

5.       Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) and/or 1400(b).

6.       This Court has personal jurisdiction over Defendants.  Defendants regularly and continuously do business in this District and has infringed or induced infringement, and continues to do so, in this District.  Upon information and belief, Defendants maintain an office within this District (Santa Clara, California).  Upon information and belief, Defendants' office in Santa Clara is a regular and established place of business.  Furthermore, Defendants' website advertises active job listings in the District. *See* Ex. 5 attached hereto (available at https://www.bitdefender.com/company/job-opportunities/).  In addition, the Court has personal jurisdiction over Defendants because minimum

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

contacts have been established with the forum and the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

## INTRADISTRICT ASSIGNMENT

7.      Pursuant to Local Rule 3-2(c), Intellectual Property Actions are assigned on a district-wide basis.

## FINJAN'S INNOVATIONS

8.      Finjan was founded in 1997 as a wholly-owned subsidiary of Finjan Software Ltd., an Israeli corporation.  In 1998, Finjan moved its headquarters to San Jose, California.  Finjan was a pioneer in developing proactive security technologies capable of detecting previously unknown and emerging online security threats, recognized today under the umbrella term "malware."  These technologies protect networks and endpoints by identifying suspicious patterns and behaviors of content delivered over the Internet.  Finjan has been awarded, and continues to prosecute, numerous patents covering innovations in the United States and around the world resulting directly from Finjan's more than decades-long research and development efforts, supported by a dozen inventors and over $65 million in R&D investments.

9.      Finjan built and sold software, including application program interfaces (APIs) and appliances for network security, using these patented technologies.  These products and related customers continue to be supported by Finjan's licensing partners.  At its height, Finjan employed nearly 150 employees around the world building and selling security products and operating the Malicious Code Research Center, through which it frequently published research regarding network security and current threats on the Internet.  Finjan's pioneering approach to online security drew equity investments from two major software and technology companies, the first in 2005 followed by the second in 2006.  Finjan generated millions of dollars in product sales and related services and support revenues through 2009, when it spun off certain hardware and technology assets in a merger. Pursuant to this merger, Finjan was bound to a non-compete and confidentiality agreement, under which it could not make or sell a competing product or disclose the existence of the non-compete clause.  Finjan became a publicly traded company in June 2013, capitalized with $30 million.  After

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

Finjan's obligations under the non-compete and confidentiality agreement expired in March 2015,
Finjan re-entered the development and production sector of secure mobile products for the consumer
market.

## FINJAN'S ASSERTED PATENTS

10.     On October 12, 2004, U.S. Patent No. 6,804,780 ("the '780 Patent"), titled SYSTEM
AND METHOD FOR PROTECTING A COMPUTER AND A NETWORK FROM HOSTILE
DOWNLOADABLES, was issued to Shlomo Touboul.  A true and correct copy of the '780 Patent is
attached to this Complaint as Exhibit 1 and is incorporated by reference herein.

11.     All rights, title, and interest in the '780 Patent have been assigned to Finjan, who is the
sole owner of the '780 Patent.  Finjan has been the sole owner of the '780 Patent since its issuance.

12.     The '780 Patent is generally directed towards methods and systems for generating a
Downloadable ID.  By generating an identification for each examined Downloadable, the system may
allow for the Downloadable to be recognized without reevaluation.  Such recognition increases
efficiency while also saving valuable resources, such as memory and computing power.

13.     On April 19, 2011, U.S. Patent No. 7,930,299 ("the '299 Patent"), entitled SYSTEM
AND METHOD FOR APPENDING SECURITY INFORMATION TO SEARCH ENGINE
RESULTS, was issued to Yuval Ben-Itzhak and Limor Elbaz.  A true and correct copy of the '299
Patent is attached hereto as Exhibit 2 and is incorporated by reference herein.

14.     All rights, title, and interest in the '299 Patent have been assigned to Finjan, who is the
sole owner of the '299 Patent.  Finjan has been the sole owner of the '299 Patent since its issuance.

15.     The '299 Patent generally covers a system and method for appending security
information to search engine results.  The claims generally cover a search request generating results for
which a content scanner assesses potential security risks, resulting in a combined security and results
summary.

16.     On March 20, 2012, U.S. Patent No. 8,141,154 ("the '154 Patent"), titled SYSTEM
AND METHOD FOR INSPECTING DYNAMICALLY GENERATED EXECUTABLE CODE, was

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

issued to David Gruzman and Yuval Ben-Itzhak.  A true and correct copy of the '154 Patent is attached to this Complaint as Exhibit 3 and is incorporated by reference herein.

17.     All rights, title, and interest in the '154 Patent have been assigned to Finjan, who is the sole owner of the '154 Patent.  Finjan has been the sole owner of the '154 Patent since its issuance.

18.     The '154 Patent is generally directed towards a gateway computer protecting a client computer from dynamically generated malicious content.  One of the ways this is accomplished is by using a content processor to process a first function and invoke a second function if a security computer indicates that it is safe to invoke the second function.

19.     On March 18, 2014, U.S. Patent No. 8,677,494 ("the '494 Patent"), titled MALICIOUS MOBILE CODE RUNTIME MONITORING SYSTEM AND METHODS, was issued to Yigal Mordechai Edery, Nimrod Itzhak Vered, David R. Kroll, and Shlomo Touboul.  A true and correct copy of the '494 Patent is attached to this Complaint as Exhibit 4 and is incorporated by reference herein.

20.     All rights, title, and interest in the '494 Patent have been assigned to Finjan, who is the sole owner of the '494 Patent.  Finjan has been the sole owner of the '494 Patent since its issuance.

21.     The '494 Patent is generally directed towards a method and system for deriving security profiles and storing the security profiles.  One of the ways this is accomplished is by deriving a security profile for a downloadable, which includes a list of suspicious computer operations, and storing the security profile in a database.

22.     The patents in paragraphs 10-21 are collectively referred to as the "Asserted Patents."

### FINJAN'S NOTICE OF INFRINGEMENT TO DEFENDANTS

23.     Defendants are well aware of Finjan's patents and have continued its unauthorized infringing activity despite this knowledge.  Finjan gave written notice to Defendants of their infringement of Finjan's patents on or about February 11, 2015.  Finjan attempted, albeit unsuccessfully, to actively engage in good faith negotiations for nearly two years with Defendants regarding Finjan's patent portfolio, including having a number of in-person and telephonic meetings, as described below.  Additionally, Finjan held meetings with Bitdefender several times explaining on

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

an element-by-element basis of Defendants' infringement of Finjan's patent claims, as described below.  As such, Defendants have continued to willfully, wantonly, and deliberately engage in acts of infringement of the Finjan Patents permitting increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

24.     Finjan's patent discussions with Defendants commenced on or about February 11, 2015, when Finjan sent Defendants a letter seeking to discuss its patents and how they relate to Defendants' products.  Having not received a reply from Defendant, Finjan sent a follow up letter to Defendants on or about September 18, 2015.

25.     On or about October 23, 2015, Finjan discussed its patents with Defendants, including at least the '844 Patent, the '154 Patent, and the '494 Patent, and how they read on Defendants' products, including at least Total Security, Family Pack, Internet Security, Antivirus Plus, Security for XP and Vista, Antivirus for Mac, Mobile Security, GravityZone Enterprise Security (for Virtualized Environments, Endpoints, Mobiles, Exchange), GravityZone Elite Security, GravityZone Advanced Business Security, GravityZone Business Security, Hypervisor Introspection, Security for AWS, Cloud Security for MSP, GravityZone for xSP products (collectively, the "Accused Products").  Finjan discussed its patents and the Accused Products again with Defendants on or about October 30, 2015.

26.     Finjan met with Defendants by telephone on or about November 17, 2015, to discuss its patents and how they read on the Accused Products.  Finjan also offered a draft nondisclosure agreement to Defendants and asked that Defendants sign it to further the licensing discussions between the parties.  Defendants refused to sign the nondisclosure agreement.

27.     On or about January 8, 2016, Finjan contacted Defendants again regarding a potential license to Finjan's patents, and offered a "significant discount" for a license if the parties could reach a licensing agreement within a few months.  Finjan discussed its patents and their relation to the Accused Products again by telephone with Defendants on January 12, 2016.

28.     On or about  February 2, 2016, Finjan met with Defendants to discuss the relation of Finjan's patents, including at least the '494 Patent and the '154 Patent, to the Accused Products, including at least Defendants' Active Virus Control and Enterprise Security for Virtualized

COMPLAINT FOR PATENT INFRINGEMENT                          CASE NO.

Environments products.  Finjan met with Defendants again on or about February 25, 2016 to further discuss the relation of Finjan's patents, including at least the '844 Patent, '494 Patent, and the '154 Patent, to the Accused Products.

29.     On or about March 3, 2016 Finjan held a telephone call with Defendants to discuss entering into a nondisclosure agreement with Defendants, in order to further the parties' licensing discussions.  Finjan met with Defendants again on or about March 16, 2016 to discuss Finjan's patents and how they read on the Accused Products.

30.     On or about May 13, 2016, Finjan contacted Defendants and explained that Defendants were using Finjan's inventions.  On or about August 22, 2016 Finjan informed Defendants that their continued sale and offers for sale of products that infringe Finjan's patents constituted egregious behavior under the Supreme Court's *Halo* decision regarding willful infringement.

31.     Finjan held another telephone conference with Defendants' counsel on or about September 13, 2016 to discuss Finjan's patents and how they relate to the Accused Products.

32.     Between on or about December 5, 2016 and on or about March 27, 2017, Finjan exchanged edits to a nondisclosure agreement with Defendants.  On or about April 7, 2017 the parties signed a nondisclosure agreement.

33.     Despite Finjan's best efforts, Defendants refused to take a license to Finjan's patents. On information and belief, Defendants had pre-suit knowledge of the Asserted Patents and acted egregiously in that they did nothing to avoid infringement and, in fact, continued to develop additional technologies that infringe the Asserted Patents.

## BITDEFENDER'S PRODUCTS

34.     Defendants make, use, sell, offer for sale, and/or import into the United States and this District products and services that utilize its antivirus, cloud, and sandboxing technologies, including Total Security, Family Pack, Internet Security, Antivirus Plus, Security for XP and Vista, Antivirus for Mac, Mobile Security, GravityZone Enterprise Security (for Virtualized Environments, Endpoints, Mobiles, Exchange), GravityZone Elite Security, GravityZone Advanced Business Security, GravityZone Business Security, Hypervisor Introspection, Security for AWS, Cloud Security for MSP,

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

GravityZone for xSP (collectively, the "Accused Products").  *See* Ex. 6 (available at https://download.bitdefender.com/resources/media/materials/elite-security/Bitdefender-2017-Datasheet-GravityZone-EliteSecurity.pdf); Ex. 7 (available at https://www.bitdefender.com/solutions/all.html); Ex. 8 (available at https://www.bitdefender.com/business/compare.html).



*Endpoint integrated Sandbox.  The GravityZone endpoint agent automatically submits suspicious files to Sandbox Analyzer for further analysis.*

Ex. 6 (available at https://download.bitdefender.com/resources/media/materials/elite-security/Bitdefender-2017-Datasheet-GravityZone-EliteSecurity.pdf).

**BITDEFENDER'S TECHNOLOGIES**

35.     Defendants' products provide layered security as shown below and include B-HAVE and Advanced Threat Control (ATC), which utilize emulator, behavioral, and machine learning technologies.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.



Bitdefender Presentation (available at https://www.youtube.com/watch?v=5YMIBePUnmE).

36.     In addition, Bitdefender uses cloud-scanning technology as shown below (e.g., GravityZone Cloud, Bitdefender Cloud, Sandbox Analyzer).



*Endpoint integrated Sandbox. The GravityZone endpoint agent automatically submits suspicious files to Sandbox Analyzer for further analysis.*

8

Ex. 6 (available at https://download.bitdefender.com/resources/media/materials/elite-security/Bitdefender-2017-Datasheet-GravityZone-EliteSecurity.pdf).

● **On-install scanning**

Whenever you install an application, Bitdefender Mobile Security & Antivirus automatically scans it using in-the-cloud technology. The same scanning process starts each time the installed apps are updated.

Ex. 9 at 244 (available at

https://download.bitdefender.com/resources/media/materials/2018/userguides/en_EN/bitdefender_ts_2018_userguide_en.pdf).

## 16. WEB SECURITY

Web Security checks using Bitdefender cloud services web pages you access with the default Android browser, Google Chrome, Firefox, Opera, Opera Mini, Dolphin and built-in browsers from apps such as Facebook or Facebook Messenger. A complete list with the supported browsers is available in the Web Security section.

If an URL points to a known phishing or fraudulent website, or to malicious content such as spyware or viruses, the web page is temporarily blocked and an alert is shown.

Ex. 9 at 247 (available at

https://download.bitdefender.com/resources/media/materials/2018/userguides/en_EN/bitdefender_ts_2018_userguide_en.pdf).

37.    Defendants' products also include a technology known as "Search Advisor" that rates search results from web searches.

● Search Advisor, a component that rates the results of your search engine queries and the links posted on social networking websites by placing an icon next to every result:

● You should not visit this web page.

◇ This web page may contain dangerous content. Exercise caution if you decide to visit it.

● This is a safe page to visit.

Search Advisor rates the search results from the following web search engines:
● Google
● Yahoo!
● Bing
● Baidu

9

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

Ex. 10 at 111-12 (available at http://anti-virus.si/wp-content/uploads/2017/02/bitdefender_tsmd_2017_userguide_en.pdf).

## BITDEFENDER'S INFRINGEMENT OF FINJAN'S PATENTS

38.     Defendants have been and are now infringing, and/or will continue to infringe, the '780 Patent, the '299 Patent, the '154 Patent, and the '494 Patent (collectively, the "Asserted Patents") in this Judicial District and elsewhere in the United States by, among other things, making, using, importing, selling, and/or offering for sale the Total Security, Family Pack, Internet Security, Antivirus Plus, Security for XP and Vista, Antivirus for Mac, Mobile Security, GravityZone Enterprise Security (for Virtualized Environments, Endpoints, Mobiles, Exchange), GravityZone Elite Security, GravityZone Advanced Business Security, GravityZone Business Security, Hypervisor Introspection, Security for AWS, Cloud Security for MSP, GravityZone for xSP (collectively, the "Accused Products").

39.     In addition to directly infringing the Asserted Patents pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, or both, Defendants indirectly infringe all the Asserted Patents by instructing, directing, and/or requiring others, including its customers, purchasers, users, and developers, to perform all or some of the steps of the method claims, either literally or under the doctrine of equivalents, or both, of the Asserted Patents.

## COUNT I
### (Direct Infringement of the '780 Patent pursuant to 35 U.S.C. § 271(a))

40.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

41.     Defendants have infringed and continue to infringe Claims 1-18 of the '780 Patent in violation of 35 U.S.C. § 271(a).

42.     Defendants' infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

43.     Defendants' acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization, or license of Finjan.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

44.     Defendants' infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendants' products and services, including Total Security, Family Pack, Internet Security, Antivirus Plus, Security for XP and Vista, Antivirus for Mac, Mobile Security, GravityZone Enterprise Security (for Virtualized Environments, Endpoints, Mobiles, Exchange), GravityZone Elite Security, GravityZone Advanced Business Security, GravityZone Business Security, Hypervisor Introspection, Security for AWS, Cloud Security for MSP, GravityZone for xSP (collectively, the "'780 Accused Products").

45.     The '780 Accused Products embody the patented invention of the '780 Patent and infringe the '780 Patent because they practice a method of obtaining a downloadable that includes one or more references to software components required to be executed by the downloadable, fetching at least one software component required to be executed by the downloadable, and performing a hashing function on the downloadable and the fetched software components to generate a Downloadable ID. For example, as shown below, '780 Accused Products provide security to end users, where they receive downloadables that include one or more references to executable software components, such as .exe files, .pdf files, and other downloadables that might exhibit malicious behavior such as dropper files. '780 Accused Products will also fetch at least one software component required to be executed by the dropper file. '780 Accused Products perform a hashing function (such as MD-5, SHA1, or SHA256) on the dropper file to generate a downloadable ID as shown below.

Bitdefender detects this threat as  Gen:Variant.ZCrypt.1.

MD5: 62bf8f83071452af96a37e0ed0159731

Ex. 11 (available at https://labs.bitdefender.com/2016/06/bitdefender-stops-zcrypt-worm-like-ransomware/).

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

> As mentioned before, atmpsvcn.ocx was believed to belong to Stuxnet: more to the point, its MD5 hash (b4429d77586798064b56b0099f0ccd49) was detected in a Stuxnet dropper. This irrefutably places it as a Stuxnet component. It is common knowledge that Stuxnet used quite an array of droppers, and one of the oldest such droppers, dated from 2009, also contains the atmpsvcn.ocx component. Inside the dropper, we identified a resource encrypted using XOR 255 (0xFF) that is 520.192 bytes large and has the same hash: b65f8e25fb1f24ad166c24b69fa600a8.

Ex. 12 (available at https://labs.bitdefender.com/2012/06/stuxnets-oldest-component-solves-the-flamer-puzzle/).

> Of course, Bitdefender detects Xpaj and successfully cleans the systems affected by this threat.
>
> UPDATED: In case anyone is wondering if they've caught this particular nasty, the file hash is **d5c12fcfeebbe63f74026601cd7f39b2**

Ex. 13 (available at https://labs.bitdefender.com/2012/04/xpaj-the-bootkit-edition/).

46.     As a result of Defendants' unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law. Finjan and Defendants both compete in the security software space, as described for example in paragraphs 8-9 and 34-37 above. And Finjan is actively engaged in licensing its patent portfolio, as described for example in paragraphs 23-33 above. Defendants' continued infringement of the Asserted Patents causes harm to Finjan in the form of price erosion, loss of goodwill, damage to reputation, loss of business opportunities, inadequacy of money damages, and direct and indirect competition. Monetary damages are insufficient to compensate Finjan for these harms. Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

47.     Defendants' infringement of the '780 Patent has injured and continues to injure Finjan in an amount to be proven at trial, but not less than a reasonable royalty.

48.     Defendants have been long-aware of Finjan's patents, including the '780 Patent, and has continued its unauthorized infringing activity despite this knowledge. On or about February 11, 2015, Finjan informed Defendants of Finjan's patent portfolio, including the Asserted Patents and Defendants' infringement thereof, and thereafter provided representative claim charts mapping at least some of the Asserted Patents' claims to Defendants' accused products and services. Finjan actively

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

and diligently, but unsuccessfully, attempted to engage in good faith negotiations with Defendants for almost two years regarding Finjan's patent portfolio, including through a number of telephonic meetings and in-person meetings explaining Defendants' infringement of each claim element-by-element.

49. Even after being shown how its products infringe Finjan's patents, on information and belief Defendants have made no effort to design its products or services around Finjan's patents, in order to avoid infringement. Instead, Defendants incorporated infringing technology into additional products, such as those identified in this complaint. All of these actions demonstrate Defendants' blatant and egregious disregard for Finjan's patent rights.

50. Despite its knowledge of Finjan's patent portfolio and Asserted Patents, Defendants have sold and continue to sell the accused products and services in complete and reckless disregard of Finjan's patent rights. As such, Defendants have acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement of the '780 Patent, justifying an award to Finjan of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT II
### (Indirect Infringement of the '780 Patent pursuant to 35 U.S.C. § 271(b))

51. Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

52. Defendants have induced and continues to induce infringement of at least Claims 1-8 of the '780 Patent under 35 U.S.C. § 271(b).

53. In addition to directly infringing the '780 Patent, Defendants indirectly infringe the '780 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including customers, purchasers, users and developers, to perform some of the steps of the method claims, either literally or under the doctrine of equivalents, of the '780 Patent, where all the steps of the method claims are performed by either Defendants or its customers, purchasers, users and developers, or some combination thereof. Defendants knew or were willfully blind to the fact that it was

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

inducing others, including customers, purchasers, users and developers, to infringe by practicing, either themselves or in conjunction with Defendants, one or more method claims of the '780 Patent, including Claims 1-8.

54.     Defendants knowingly and actively aided and abetted the direct infringement of the '780 Patent by instructing and encouraging its customers, purchasers, users and developers to use the '780 Accused Products.  Such instructions and encouragement included, but are not limited to, advising third parties to use the '780 Accused Products in an infringing manner, providing a mechanism through which third parties may infringe the '780 Patent, and by advertising and promoting the use of the '780 Accused Products in an infringing manner, and distributing guidelines and instructions to third parties on how to use the '780 Accused Products in an infringing manner.

55.     Defendants update and maintain an HTTP site with Defendants' quick start guides, administration guides, user guides, and operating instructions which cover in depth aspects of operating Defendants' offerings.  *See, e.g*., Ex. 9 (available at https://download.bitdefender.com/resources/media/materials/2018/userguides/en_EN/bitdefender_ts_2018_userguide_en.pdf); Ex. 14 (available at https://download.bitdefender.com/resources/media/materials/2018/userguides/en_EN/bitdefender_is_2018_userguide_en.pdf); Ex. 15 (available at https://www.bitdefender.com/box/support/).

## COUNT III
### (Direct Infringement of the '299 Patent pursuant to 35 U.S.C. § 271(a))

56.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

57.     Defendants have infringed and continue to infringe Claims 1-21 of the '299 Patent in violation of 35 U.S.C. § 271(a).

58.     Defendants' infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

59.     Defendants' acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization, or license of Finjan.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

60.     Defendants' infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendants' products and services that provide the "Search Advisor" functionality including the Internet Security, Total Security, Family Pack, AntiVirus Plus, Antivirus for Mac, Mobile Security, and BOX (collectively, the "'299 Accused Products").



Ex. 16 (available at https://www.bitdefender.com/solutions/antivirus-comparison.html).

61.     The '299 Accused Products embody the patented invention of the '299 Patent and infringe the '299 Patent because they practice a method and a system for appending security information to search engine results including generating results for which a content scanner assesses potential security risks, resulting in a combined security and results summary.  For example, as shown below, the Search Advisor functionality will rate search engine results from Google, Yahoo!, Bing, and Baidu.

● Search Advisor, a component that rates the results of your search engine queries and the links posted on social networking websites by placing an icon next to every result:

● You should not visit this web page.

---

15

COMPLAINT FOR PATENT INFRINGEMENT                              CASE NO.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



◇ This web page may contain dangerous content. Exercise caution if you decide to visit it.

● This is a safe page to visit.

Search Advisor rates the search results from the following web search engines:
● Google
● Yahoo!
● Bing
● Baidu

Ex. 10 at 111-12 (available at http://anti-virus.si/wp-content/uploads/2017/02/bitdefender_tsmd_2017_userguide_en.pdf).

Ex. 17 (available at https://antivirusinsider.com/use-bitdefender-search-advisor/).

62.     As shown above, the Search Advisor functionality will perform a search engine request (e.g., "science and technology"), receive results, uses a content scanner to assess at least a portion of the search results, receives results from the content scanner, and dynamically updates the combined search

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

and security results (shown by the red arrows pointing to the results of the content scanner).  If the

content is safe, there is a green checkmark.  The content is unknown, there is a yellow caution sign.  If

the content is malicious, a red sign will mark that the content is malicious.  As shown below, the

content scanner provides details regarding the scan results.



63.     As a result of Defendants' unlawful activities, Finjan has suffered and will continue to

suffer irreparable harm for which there is no adequate remedy at law.  Finjan and Defendants both

compete in the security software space, as described for example in paragraphs 8-9 and 34-37 above.

And Finjan is actively engaged in licensing its patent portfolio, as described for example in paragraphs

23-33 above.  Defendants' continued infringement of the Asserted Patents causes harm to Finjan in the

form of price erosion, loss of goodwill, damage to reputation, loss of business opportunities,

inadequacy of money damages, and direct and indirect competition.  Monetary damages are

insufficient to compensate Finjan for these harms.  Accordingly, Finjan is entitled to preliminary

and/or permanent injunctive relief.

64.     Defendants' infringement of the '299 Patent has injured and continues to injure Finjan

in an amount to be proven at trial, but not less than a reasonable royalty.

65.     Defendants have been long-aware of Finjan's patents, including the '299 Patent, and has

continued its unauthorized infringing activity despite this knowledge.  On or about February 11, 2015,

Finjan informed Defendants of Finjan's patent portfolio, including the Asserted Patents and

Defendants' infringement thereof, and thereafter provided representative claim charts mapping at least some of the Asserted Patents' claims to Defendants' accused products and services.  Finjan actively and diligently, but unsuccessfully, attempted to engage in good faith negotiations with Defendants for almost two years regarding Finjan's patent portfolio, including through a number of telephonic meetings and in-person meetings, explaining Defendants' infringement of each claim element-by-element.

66.     Even after being shown that its products infringe Finjan's patents, on information and belief Defendants have made no effort to design its products or services around Finjan's patents, in order to avoid infringement.  Instead, Defendants incorporated infringing technology into additional products, such as those identified in this complaint.  Moreover, Defendants sent representatives to at least one licensing meeting with Finjan who had no authority to accept a license.  All of these actions demonstrate Defendants' blatant and egregious disregard for Finjan's patent rights.

67.     Despite its knowledge of Finjan's patent portfolio and Asserted Patents, Defendants have sold and continue to sell the accused products and services in complete and reckless disregard of Finjan's patent rights.  As such, Defendants have acted recklessly and continue to willfully, wantonly, and deliberately engage in acts of infringement of the '299 Patent, justifying an award to Finjan of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT IV
### (Indirect Infringement of the '299 Patent pursuant to 35 U.S.C. § 271(b))

68.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

69.     Defendants have induced and continue to induce infringement of at least Claims 1-12 of the '299 Patent under 35 U.S.C. § 271(b).

70.     In addition to directly infringing the '299 Patent, Defendants indirectly infringe the '299 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including customers, purchasers, users and developers, to perform some of the steps of the method claims,

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

either literally or under the doctrine of equivalents, of the '299 Patent, where all the steps of the method claims are performed by either Defendants or its customers, purchasers, users and developers, or some combination thereof.  Defendants knew or were willfully blind to the fact that it was inducing others, including customers, purchasers, users and developers, to infringe by practicing, either themselves or in conjunction with Defendants, one or more method claims of the '299 Patent, including Claims 1-12.

71.     Defendants knowingly and actively aided and abetted the direct infringement of the '299 Patent by instructing and encouraging its customers, purchasers, users and developers to use the '299 Accused Products.  Such instructions and encouragement included, but are not limited to, advising third parties to use the '299 Accused Products in an infringing manner, providing a mechanism through which third parties may infringe the '299 Patent, and by advertising and promoting the use of the '299 Accused Products in an infringing manner, and distributing guidelines and instructions to third parties on how to use the '299 Accused Products in an infringing manner.

72.     Defendants update and maintain an HTTP site with Defendants' quick start guides, administration guides, user guides, and operating instructions which cover in depth aspects of operating Defendants' offerings.  *See, e.g*., Ex. 9 (available at https://download.bitdefender.com/resources/media/materials/2018/userguides/en_EN/bitdefender_ts_2018_userguide_en.pdf); Ex. 14 (available at https://download.bitdefender.com/resources/media/materials/2018/userguides/en_EN/bitdefender_is_2018_userguide_en.pdf); Ex. 15 (available at https://www.bitdefender.com/box/support/).

## COUNT XI
### (Direct Infringement of the '154 Patent pursuant to 35 U.S.C. § 271(a))

73.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

74.     Defendants have infringed and continue to infringe Claims 1-12 of the '154 Patent in violation of 35 U.S.C. § 271(a).

COMPLAINT FOR PATENT INFRINGEMENT                      CASE NO.

75.     Defendants' infringement is based upon literal infringement or infringement under the doctrine of equivalents, or both.

76.     Defendants' acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization, or license of Finjan.

77.     Defendants' infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendants' products and services, including Total Security, Family Pack, Internet Security, Antivirus Plus, Security for XP and Vista, Antivirus for Mac, Mobile Security, GravityZone Enterprise Security (for Virtualized Environments, Endpoints, Mobiles, Exchange), GravityZone Elite Security, GravityZone Advanced Business Security, GravityZone Business Security, Hypervisor Introspection, Security for AWS, Cloud Security for MSP, GravityZone for xSP (collectively, the "'154 Accused Products").

78.     The '154 Accused Products embody the patented invention of the '154 Patent and infringe the '154 Patent because they utilize and/or incorporate a system for protecting a computer from dynamically generated malicious content, comprising a content processor (i) for processing content received over a network, the content including a call to a first function, and the call including an input, and (ii) for invoking a second function with the input, only if a security computer indicates that such invocation is safe; a transmitter for transmitting the input to the security computer for inspection, when the first function is invoked; and a receiver for receiving an indicator from the security computer whether it is safe to invoke the second function with the input.

79.     For example, as shown below, the '154 Accused Products act as a content processor to process content (such as obfuscated JavaScript) received over the network, where that content includes a call to a first function that contains an input.  The '154 Accused Products will perform a lookup to the Bitdefender Cloud by transmitting the input to determine whether it is safe to invoke.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.



*Endpoint integrated Sandbox.  The GravityZone endpoint agent automatically submits suspicious files to Sandbox Analyzer for further analysis.*

Ex. 6 (available at https://download.bitdefender.com/resources/media/materials/elite-security/Bitdefender-2017-Datasheet-GravityZone-EliteSecurity.pdf).

80.     The '154 Accused Products are designed to protect against the JavaScript attack shown below, which uses a dropper file to access a Command and Control server to deliver malicious payloads.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.



Once the JS / JSE file is dropped and executed, it connects to the command and control center to get jobs and execute them.

Figure 4: The infection flow

Ex. 18 (available at

https://download.bitdefender.com/resources/files/News/CaseStudies/study/152/Bitdefender-

Whitepaper-Netrepser-A4-en-EN-web.pdfBitdefender-Whitepaper-Netrepser-A4-en-EN-web.pdf).

81.    As shown below, the '154 Accused Products uses Cloud Integration to act as a security

computer that provides an indication whether the content is safe.

## Cloud Integration

Scanning in the cloud has virtually zero impact on your local resources, so your system's speed and performance remain unaffected. And your files always remain completely private: we only scan data signatures, not the actual contents of your files — which are never uploaded or stored in the cloud.

Ex. 19 (available at https://www.bitdefender.com/solutions/total-security.html).

● **On-install scanning**
Whenever you install an application, Bitdefender Mobile Security & Antivirus automatically scans it using in-the-cloud technology. The same scanning process starts each time the installed apps are updated.

Ex. 9 at 244 (available at

https://download.bitdefender.com/resources/media/materials/2018/userguides/en_EN/bitdefender_ts_2

018_userguide_en.pdf).

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

## 16. WEB SECURITY

Web Security checks using Bitdefender cloud services web pages you access with the default Android browser, Google Chrome, Firefox, Opera, Opera Mini, Dolphin and built-in browsers from apps such as Facebook or Facebook Messenger. A complete list with the supported browsers is available in the Web Security section.

If an URL points to a known phishing or fraudulent website, or to malicious content such as spyware or viruses, the web page is temporarily blocked and an alert is shown.

Ex. 9 at 247 (available at

https://download.bitdefender.com/resources/media/materials/2018/userguides/en_EN/bitdefender_ts_2 018_userguide_en.pdf).

82.     As a result of Defendants' unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Finjan and Defendants both compete in the security software space, as described for example in paragraphs 8-9 and 34-37 above. And Finjan is actively engaged in licensing its patent portfolio, as described for example in paragraphs 23-33 above.  Defendants' continued infringement of the Asserted Patents causes harm to Finjan in the form of price erosion, loss of goodwill, damage to reputation, loss of business opportunities, inadequacy of money damages, and direct and indirect competition.  Monetary damages are insufficient to compensate Finjan for these harms.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

83.     Defendants' infringement of the '154 Patent has injured and continues to injure Finjan in an amount to be proven at trial, but not less than a reasonable royalty.

84.     Defendants have been long-aware  of Finjan's patents, including the '154 Patent, and has continued its unauthorized infringing activity despite this knowledge.  On or about February 11, 2015, Finjan informed Defendants of Finjan's patent portfolio, including the Asserted Patents and Defendants' infringement thereof, and thereafter provided representative claim charts mapping at least some of the Asserted Patents' claims to Defendants' accused products and services.  Finjan actively and diligently, but unsuccessfully, attempted to engage in good faith negotiations with Defendants for almost two years regarding Finjan's patent portfolio, including through a number of telephonic

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

meetings and in-person meetings explaining Defendants' infringement of each claim element-by-element.

85.     Even after being shown that its products infringe Finjan's patents, on information and belief Defendants have made no effort to design its products or services around Finjan's patents, in order to avoid infringement.  Instead, Defendants incorporated infringing technology into additional products, such as those identified in this complaint.  All of these actions demonstrate Defendants' blatant and egregious disregard for Finjan's patent rights.

86.     Despite its knowledge of Finjan's patent portfolio and Asserted Patents, Defendants have sold and continue to sell the accused products and services in complete and reckless disregard of Finjan's patent rights.  As such, Defendants have acted recklessly and continue to willfully, wantonly, and deliberately engage in acts of infringement of the '154 Patent, justifying an award to Finjan of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT XII
### (Direct Infringement of the '494 Patent pursuant to 35 U.S.C. § 271(a))

87.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

88.     Defendants have infringed Claims 1-18 of the '494 Patent in violation of 35 U.S.C. § 271(a).

89.     Defendants' infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

90.     Defendants' acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

91.     Defendants' infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendants' products and services, including Total Security, Family Pack, Internet Security, Antivirus Plus, Security for XP and Vista, Antivirus for Mac, Mobile

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

Security, GravityZone Enterprise Security (for Virtualized Environments, Endpoints, Mobiles, Exchange), GravityZone Elite Security, GravityZone Advanced Business Security, GravityZone Business Security, Hypervisor Introspection, Security for AWS, Cloud Security for MSP, GravityZone for xSP (collectively, the "'494 Accused Products").

92.     The '494 Accused Products embody the patented invention of the '494 Patent and infringe the '494 Patent because they practice a computer-based system that includes a receiver for receiving an incoming downloadable, Downloadable scanner for deriving security profile data for the downloadable, including a list of suspicious computer operations that may be attempted by the downloadable, a database manager for storing the downloadable security profile data in a database. For example, as shown below, the '494 Accused Products provide security to end users, where incoming downloadables from the Internet are received by the '494 Accused Products.



Ex. 20 (available at https://download.bitdefender.com/resources/media/pdf/whatsnew/BitDefender-BusinessSecurity-SolutionBrief-AVC-EN_web.pdf).

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

93.     As shown below, the '494 Accused Products creates a Downloadable security profile data that includes a list of suspicious computer operations, such as operation dropping files or rewriting the registry.



*Figure 2: AVC Process Monitoring and Threat Response*

Applications and process are continuously monitored for as long as they are active for signs of suspicious, malware-like activity, including:

- Not waiting for or requesting any form of user interaction
- Not displaying any type of user interface when executing or terminating the execution
- Copying or moving files in C:\Windows\ or C:\Windows\System32\
- Having an unrelated type of icon - for example, a process that has a folder icon
- Executing code in another processes' space in order to run with higher privileges
- Running files that have been created with information stored in the binary file
- Self-replicating
- Creating an auto-start entry in the registry
- Attempting to hide from process enumeration applications
- Dropping and registering drivers in C:\Windows\System32\

Ex. 20 (available at https://download.bitdefender.com/resources/media/pdf/whatsnew/BitDefender-BusinessSecurity-SolutionBrief-AVC-EN_web.pdf).

94.     As shown below, the '494 Accused Product utilize emulator, behavioral, machine learning techniques to create security profile data that include a list of suspicious operations.  These

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

profiles are stored on the '494 Accused Products, Threat DB, Gravity Console, and/or Bitdefender's cloud system.



Bitdefender Presentation (available at https://www.youtube.com/watch?v=5YMIBePUnmE).



Bitdefender Presentation (available at https://www.youtube.com/watch?v=5YMIBePUnmE).

95.     Defendants' infringement of the '494 Patent has injured Finjan in an amount to be proven at trial, but not less than a reasonable royalty.

27

96.     Defendants have been long-aware of Finjan's patents, including the '494 Patent, and has continued its unauthorized infringing activity despite this knowledge.  On or about February 11, 2015, Finjan informed Defendants of Finjan's patent portfolio, including the Asserted Patents and Defendants' infringement thereof, and thereafter provided representative claim charts mapping at least some of the Asserted Patents' claims to Defendants' accused products and services.  Finjan actively and diligently, but unsuccessfully, attempted to engage in good faith negotiations with Defendants for almost two years regarding Finjan's patent portfolio, including through a number of telephonic meetings and in-person meetings explaining Defendants' infringement of each claim element-by-element.

97.     Even after being shown that its products infringe Finjan's patents, on information and belief Defendants have made no effort to design its products or services around Finjan's patents, in order to avoid infringement.  Instead, Defendants incorporated infringing technology into additional products, such as those identified in this complaint.  All of these actions demonstrate Defendants' blatant and egregious disregard for Finjan's patent rights.

98.     Despite its knowledge of Finjan's patent portfolio and Asserted Patents, Defendants have sold and continue to sell the accused products and services in complete and reckless disregard of Finjan's patent rights.  As such, Defendants have acted recklessly and continues to willfully, wantonly, and deliberately engage in acts of infringement of the '494 Patent, justifying an award to Finjan of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT XIII
**(Indirect Infringement of the '494 Patent pursuant to 35 U.S.C. § 271(b))**

99.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

100.     Defendants have induced infringement of at least Claims 1-9 of the '494 Patent under 35 U.S.C. § 271(b).

28

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

101.     In addition to directly infringing the '494 Patent, Defendants indirectly infringe the '494 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including customers, purchasers, users and developers, to perform one or more of the steps of the method claims, either literally or under the doctrine of equivalents, of the '494 Patent, where all the steps of the method claims are performed by either Defendants, its customers, purchasers, users, and developers, or some combination thereof.  Defendants knew or were willfully blind to the fact that it was inducing others, including customers, purchasers, users, and developers, to infringe by practicing, either themselves or in conjunction with Defendants, one or more method claims of the '494 Patent, including Claims 1-9.

102.     Defendants knowingly and actively aided and abetted the direct infringement of the '494 Patent by instructing and encouraging its customers, purchasers, users, and developers to use the '494 Accused Products.  Such instructions and encouragement included, but are not limited to, advising third parties to use the '494 Accused Products in an infringing manner, providing a mechanism through which third parties may infringe the '494 Patent, and by advertising and promoting the use of the '494 Accused Products in an infringing manner, and distributing guidelines and instructions to third parties on how to use the '494 Accused Products in an infringing manner.

103.     Defendants update and maintain an HTTP site with Defendants' quick start guides, administration guides, user guides, and operating instructions which cover in depth aspects of operating Defendants' offerings.  *See, e.g.*, Ex. 9 (available at https://download.bitdefender.com/resources/media/materials/2018/userguides/en_EN/bitdefender_ts_2018_userguide_en.pdf); Ex. 14 (available at https://download.bitdefender.com/resources/media/materials/2018/userguides/en_EN/bitdefender_is_2018_userguide_en.pdf); Ex. 15 (available at https://www.bitdefender.com/box/support/).

///

///

///

COMPLAINT FOR PATENT INFRINGEMENT                CASE NO.

## **PRAYER FOR RELIEF**

WHEREFORE, Finjan prays for judgment and relief as follows:

A.      An entry of judgment holding that Defendants have infringed and is infringing the '780 Patent, the '299 Patent, the '154 Patent, and the '494 Patent; and has induced infringement and is inducing infringement of the 'the '780 Patent, the '299 Patent, and the '494 Patent;

B.      A preliminary and permanent injunction against Defendants and their officers, employees, agents, servants, attorneys, instrumentalities, and/or those in privity with them, from infringing the '780 Patent, the '299 Patent, the '154 Patent, or inducing the infringement of the '780 Patent, the '299 Patent, and the '154 Patent, and for all further and proper injunctive relief pursuant to 35 U.S.C. § 283;

C.      An award to Finjan of such past damages, not less than a reasonable royalty, as it shall prove at trial against Defendants that is adequate to fully compensate Finjan for Defendants' infringement of the '780 Patent, the '299 Patent, the '154 Patent, and the '494 Patent;

D.      A determination that Defendants' infringement has been willful, wanton, and deliberate and that the damages against it be increased up to treble on this basis or for any other basis in accordance with the law;

E.      A finding that this case is "exceptional" and an award to Finjan of its costs and reasonable attorneys' fees, as provided by 35 U.S.C. § 285;

F.      An accounting of all infringing sales and revenues, together with post judgment interest and prejudgment interest from the first date of infringement of the '780 Patent, the '299 Patent, the '154 Patent, and the '494 Patent; and

G.      Such further and other relief as the Court may deem proper and just.

///

///

///

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Dated:  August 16, 2017                    By:    */s/ Paul J. Andre*
                                                Paul J. Andre (State Bar No. 196585)
                                                Lisa Kobialka (State Bar No. 191404)
                                                James Hannah (State Bar No. 237978)
                                                KRAMER LEVIN NAFTALIS
                                                  & FRANKEL LLP
                                                990 Marsh Road
                                                Menlo Park, CA  94025
                                                Telephone:  (650) 752-1700
                                                Facsimile:  (650) 752-1800
                                                pandre@kramerlevin.com
                                                lkobialka@kramerlevin.com
                                                jhannah@kramerlevin.com

                                                *Attorneys for Plaintiff*
                                                FINJAN, INC.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

## DEMAND FOR JURY TRIAL

Finjan demands a jury trial on all issues so triable.

Respectfully submitted,

Dated:  August 16, 2017        By:    */s/ Paul J. Andre*
_____

Paul J. Andre (State Bar No. 196585)
Lisa Kobialka (State Bar No. 191404)
James Hannah (State Bar No. 237978)
KRAMER LEVIN NAFTALIS
 & FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 752-1700
Facsimile:  (650) 752-1800
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com

*Attorneys for Plaintiff*
FINJAN, INC.

COMPLAINT FOR PATENT INFRINGEMENT              CASE NO.