PAUL ANDRE (SBN 196585)
pandre@kramerlevin.com
LISA KOBIALKA (SBN 191404)
lkobialka@kramerlevin.com
JAMES HANNAH (SBN 237978)
jhannah@kramerlevin.com
AUSTIN MANES (SBN 284065)
amanes@kramerlevin.com
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 752-1700
Facsimile:   (650) 752-1800

Attorneys for Plaintiff
FINJAN, INC.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation,<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>BITDEFENDER INC., a Florida Corporation, and BITDEFENDER S.R.L., a Romanian Corporation,<br><br>　　　　　　Defendants. | Case No.: 4:17-cv-4790-HSG<br><br>**PLAINTIFF FINJAN, INC.'S OPPOSITION TO DEFENDANT BITDEFENDER S.R.L.'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO QUASH THE RETURN OF SERVICE OF SUMMONS**<br><br>Date:　　March 8, 2018<br>Time:　　2:00 p.m.<br>Dept.:　　Courtroom 2, 4th Floor<br>Judge:　　Hon. Haywood S. Gilliam, Jr. |

Plaintiff Finjan Inc. ("Finjan") submits this Opposition ("Opposition") to Defendant Bitdefender S.R.L.'s ("SRL") Motion to Dismiss or Quash the Return of Service of Summons ("Motion").

## I.   INTRODUCTION

Finjan served SRL properly on multiple occasions under both California and Federal law. California law permits service on an entity by serving its "general manager" in this State, which is interpreted broadly and has been held to include such individuals or entities as: a mechanic doing business in California for a foreign company; a sales representative in California for a foreign company; and other entities with contacts to California that are closely related to the foreign company. Here, SRL admits that Bitdefender Inc. ("Inc.") is its sales representative in California. Thus, service on SRL is proper under that admission alone. Further, both SRL and Inc. (collectively, "Defendants" or "Bitdefender") are closely related such that service on one is sufficient to impute service on the other. Both SRL and Inc. were founded by the same husband and wife who still control both entities through a mutual parent company. All of Bitdefender's public documents, websites, and press-releases make no distinction between SRL and Inc. The websites, which are identical, list offices in both Romania and California. In fact, Bitdefender's co-founder and CEO claims that Bitdefender keeps a double headquarters, "partly in Romania and partly in the U.S." Although SRL now claims that Vincent Schiavo works only for Inc., the press-release announcing his hiring as the Senior V.P. of Worldwide Sales and Marketing was issued <u>by SRL</u> from Bucharest, Romania. And in the past few years SRL has even taken advantage of this State as a forum, filing an unrelated complaint in San Francisco Superior Court alleging that SRL does business in California and maintains an office at 2880 Lakeside Drive in Santa Clara, California – the same address where Mr. Schiavo was served and now works, purportedly for Inc. All of these facts and the additional evidence described below demonstrate that SRL and Inc. are sufficiently related, such that it is reasonable to assume Inc. will apprise SRL of the service made. Under California law, which Federal law adopts for service of process, this is sufficient to impute service on SRL.

Additionally, Finjan also served SRL under Federal Rule of Civil Procedure 4(h) by delivering a copy of the complaint to Mr. Schiavo, who is "so integrated" with both organizations that he will "know what to do with the papers." Rule 4 is to be interpreted flexibly; as long as the defendant has

1  sufficient notice and the plaintiff substantially complied with the rules, service is deemed valid.
2  Federal law also holds that service may be made on an employee of a related entity, so long as that
3  person is "in such a position as to render it fair, reasonable and just" to imply authority to receive
4  service.  Nothing in Rule 4 requires delivery by hand, and office manager Cynthia Davis admits she
5  received multiple service packets addressed to Mr. Schiavo at the Lakeside Drive office.  Here, it is
6  clear that SRL has sufficient notice and Finjan served both Mr. Schiavo and Ms. Davis under Rule 4.
7       Finally, SRL's assertion that Finjan can easily serve it through The Hague Convention is
8  incorrect, and a red herring.  Service through The Hague Convention is time-consuming and costly.
9  Finjan should not be forced to incur those expenses when it has already served SRL multiple times
10 under two different legal procedures.  SRL's continued attempts to evade or delay service are a sham
11 waste of resources.  The Court should put an end to SRL's gamesmanship by denying this Motion.

12 **II.    STATEMENT OF ISSUE**
13      Whether SRL has sufficient notice of the Complaint such that Finjan's service on it is effective.
14 **III.   STATEMENT OF FACTS**
15      Florin and Mariuca Talpes co-founded Bitdefender in 2001.  *See* Ex. 1[1].  The husband and wife
16 team still own the controlling stake of Bitdefender today.  *Id*.  Bitdefender's website
17 (www.bitdefender.com) makes no distinction between Inc. and SRL as entities.  Ex. 2.  Both the
18 English and Romanian versions of Bitdefender's website are identical (aside from the translation) and
19 both list the same management team, including Florin Talpes as CEO.  Ex. 3.  The website states that
20 Bitdefender has offices in both Romania and Santa Clara, CA.  Ex. 2.  In October 2013, CEO Florin
21 Talpes gave an interview stating that Bitdefender has a "double HQ, partly in Romania and partly in
22 the US."  Ex. 4.
23      In 2014, SRL filed a complaint in an unrelated lawsuit in San Francisco Superior Court under
24 the name "BitDefender SRL, a Romanian limited liability company."  Ex. 5.  There, SRL alleged as its
25 first allegation that BitDefender SRL "is a Romanian limited liability company with its headquarters
26 located in Bucharest, Romania [that] is qualified to do business in the State of California, and has an

27 ---
28 [1] All exhibits cited herein are to the Declaration of Austin Manes in Support of Finjan's Opposition to SRL's Motion to Dismiss or Quash ("Manes Decl.") filed herewith, unless otherwise noted.

1  office at 2880 Lakeside Drive, Suite 237, Santa Clara, California." *Id*.

2  On April 5, 2016, SRL issued a press-release titled "Bitdefender Names Vincent Schiavo,
3  Harish Sunderam Agastya as VPs as Rapid Advance in Enterprise Market Gathers Pace." Ex. 6.  This
4  press release announced that SRL had hired Vincent Schiavo to the "key vice-president position" of
5  "Senior Vice President, Worldwide Enterprise Sales and Marketing at Bitdefender, where he will help
6  translate the company's technical superiority into a commanding position in global enterprise sales."
7  *Id*.  This press-release was issued from Bucharest, Romania and lists the source of the article as
8  "SOURCE BitDefender SRL." *Id*.  The press-release also refers the reader to Bitdefender's general
9  website, which makes no distinction between Inc. and SRL, for further information on the Company.
10 *Id*.  In this press-release, Bitdefender's COO, Bogdan Irina – who is based in Bucharest, Romania –
11 refers to Bitdefender's Santa Clara, CA office as an "enterprise hub in the U.S." for Bitdefender.  *Id*.
12 Vincent Schiavo also commented in the press-release that he sees "an infectious enthusiasm and
13 ambition throughout the company [Bitdefender], inspired by a solid vision for the future . . .
14 Bitdefender's impressive gains in the enterprise market in the last couple of years have been backed by
15 even more impressive technological innovations."  *Id*.  This press release is still published on
16 Bitdefender's website.

17 Finjan filed its Complaint in the instant lawsuit against Inc. and SRL on August 16, 2017.
18 Finjan served its Complaint on Bitdefender's agent for service of process in California, Corporate
19 Creations Network Inc., on October 3, 2017.  On October 4, 2017, Corporate Creations Network Inc.
20 informed Finjan that it had accepted service on behalf of Inc., but not on behalf of SRL.  On October
21 23, 2017, counsel for Inc. asked Finjan to stipulate to an extension of time to respond to the Complaint.
22 Manes Decl., ¶ 9.  That same day, counsel for Finjan asked counsel for Inc. to accept service on behalf
23 of SRL.  *Id.*  On November 9, 2017, counsel for Inc. informed counsel for Finjan that it was not
24 authorized to accept service on behalf of SRL.  *Id.*, ¶ 10.

25 On December 1, 2017, Bitdefender Holding B.V. issued two separate press releases, both
26 issued jointly from "BUCHAREST, Romania and SANTA CLARA, California," announcing that a
27 private equity firm had gained a minority stake in Bitdefender.  These press releases stated that
28 Bitdefender Holding B.V. had "scaled up its international operations significantly over the past few

years, in particular driven by corporate customers addressed by the Company's "Enterprise Solutions headquarters in Santa Clara, CA." These press releases are still published on Bitdefender's website.

According to SRL, the office manager for Inc.'s offices at 2880 Lakeside Drive, Cynthia Davis, accepted the service packet on Mr. Schiavo's behalf on at least two occasions at that address. *See* Dkt. No. 39-1, Declaration of Cynthia Davis in Support of Motion to Quash ("Davis Decl."), ¶¶ 4-6, 9-10. Ms. Davis also admits that she received a third copy of the packet on December 5, 2017. *Id.* Finjan's process server signed a proof of service stating that he "provided an envelope with the name Vincent Schiavo on it that had the summons and complaint for Bitdefender SRL" to Ms. Davis on November 30, 2017 at Mr. Schiavo's office at 2880 Lakeside Drive, and that Ms. Davis affirmed she was authorized to accept service of legal documents and accepted them. Ex. 7. Finjan also mailed SRL a copy of the service packet, addressed to Mr. Schiavo as Vice President at 2880 Lakeside Drive in Santa Clara, California, on or about December 4, 2017. Manes Decl., ¶ 11.

On December 20, 2017, counsel for Inc. contacted counsel for Finjan on SRL's behalf, asking Finjan to withdraw its proof of service on SRL. After Finjan refused, SRL hired the same counsel to submit this Motion that Inc. hired to represent it in this case.

## IV.   ARGUMENT

### A.   Finjan Served SRL Multiple Times under Both California and Federal Law.

#### 1.   SRL and Inc. are closely related, such that service on Inc. is sufficient for both under California law.

SRL and Inc. are closely related entities who share, or at the very least recently shared, office space at 2880 Lakeside Drive in Santa Clara, California. SRL admits that Finjan properly served Inc. through its registered agent for service of process in California, and again at Bitdefender's Santa Clara offices. Motion at 4; Davis Decl., ¶¶ 4-6 and 9-10. Under California law, service on Inc. is sufficient to impute service on SRL because Inc. is well within the definition of a "general manager in this State" for SRL. "The Federal Rules of Civil Procedure permit service upon a corporation . . . as prescribed by the law of the forum state or the state in which service is made." *U.S. ex rel. Miller v. Public Warehousing Co. KSC*, 636 Fed. Appx. 947, 948 (9th Cir. 2016). California law, in turn, "permits service of process upon a foreign corporation transacting business in California by serving 'its general

4

1 manager in this State.'"  *Id.* (citing Cal. Code of Civ. Proc. § 416.10(b) and Cal. Corp. Code § 2110).
2 For nearly 100 years, the terms "general manager" and "managing or business agent" in these statues
3 have been construed broadly and they are not "susceptible to subtle distinctions."  *See, e.g., Milbank v.*
4 *Standard Motor Constr. Co.*, 132 Cal. App. 67, 69-71 (1933) (finding service sufficient on a
5 mechanical engineer sent by a foreign entity to service engines that the entity sold in California).  In
6 fact, more than once the term "general manager" has been held to include the exact situation presented
7 in the instant matter – a sales representative for the foreign corporation's products.  *See Cosper v.*
8 *Smith & Wesson Arms Co.*, 53 Cal. 2d 77 (1959); *see also Sims v. National Eng'g Co.*, 221 Cal. App.
9 2d 511 (1963) (also finding service sufficient on a sales representative).  In *Cosper*, the California
10 Supreme Court found that a sales representative, who was contracted by Massachusetts corporation
11 Smith and Wesson to "promote, on a non-exclusive basis the sale of [its] products on the West Coast,"
12 was a "general manager in this State" such that service on the non-exclusive sales representative was
13 sufficient to perfect service on *Smith and Wesson*.  53 Cal. 2d at 80, 83-85.  The *Cosper* court noted
14 that service is effective under California law if made on an agent "of sufficient character and rank to
15 make it reasonably certain that the defendant will be apprised of the service made." *Id* at 83.  The
16 *Cosper* court further held that an agent meets that requirement if it provides the defendant with "the
17 opportunity for regular contact with its customers and a channel for a continuous flow of business into
18 the state" and the defendant enjoys through the agent "substantially the business advantages that it
19 would have enjoyed 'if it conducted its business through its own offices or paid agents in the State.'"
20 *Id* at 84 (citation omitted).  Here, SRL admits that Inc. is (at minimum) an authorized reseller of SRL's
21 products in California.  Davis Decl., ¶ 2.  Just like in *Cosper*, this relationship is sufficient to deem
22 service on Inc. effective on SRL.
23       The Ninth Circuit recently construed *Cosper* while also discussing the latest California law on
24 this issue in *U.S. ex rel. Miller*.  There, the Ninth Circuit distinguished the *Gen. Motors* case that
25 Bitdefender relies heavily on in this Motion, noting that *Gen. Motors* was an early decision from 1971
26 that is inconsistent with the "most recent decision from the California Court of Appeal," *i.e.*, *Yamaha*
27 *Motor Co., v. Sup. Ct.*, 174 Cal. App. 4th 264 (2009).  *U.S. ex rel. Miller,* 636 Fed. Appx. at 949
28 (distinguishing the 2009 *Yamaha* decision from *Gen. Motors Corp. v. Super. Ct.*, 15 Cal. App. 3d 81

5

1  (1971)). The Ninth Circuit noted that *Yamaha* holds service on a closely related corporation can be
2  effective on its foreign counterpart, and noted two factors that distinguish the old *Gen. Motors* line of
3  cases from the more-recent line of cases that follow *Yamaha*: "First, where service was permitted, the
4  parent corporation was foreign and otherwise not readily available for service within California . . .
5  Second, service through a subsidiary as general manager requires a sufficiently close connection with
6  the parent." *U.S. ex rel. Miller,* 636 Fed. Appx. at 949. Ultimately the Ninth Circuit concluded that
7  the foreign corporation at issue was otherwise not readily available for service within California and
8  remanded to permit the plaintiff to take discovery on the "nature of the relationship" between the
9  entities, and also to "consider whether service was adequate on other grounds." *Id*.
10       Here, all of the factors outlined in *Cosper*, *Yamaha*, and *U.S. ex rel. Miller* weigh in favor of
11  finding that service on Inc. was effective as service on SRL in this case. As an authorized reseller of
12  SRL's products, Inc. provides SRL with the opportunity for regular contact with its California
13  customers and a channel for a continuous flow of business into the state. *Cosper,* 53 Cal. 2d at 84;
14  *U.S. ex rel. Miller,* 636 Fed. Appx. at 949. Moreover, although Ms. Davis' declaration admits that Inc.
15  sells SRL's products, every piece of available evidence regarding the relationship between SRL and
16  Inc. indicates that Inc. is much more than simply a reseller of SRL's goods. Both companies have
17  been managed since their inception by the same husband and wife team. Ex. 1. According to
18  Defendants, both are controlled by the same privately-owned holding company, Bitdefender Holding
19  B.V. Davis Decl., ¶ 3. Both companies' websites are identical and make no distinction between the
20  two entities. Exs. 2, 3. Both identical websites refer to offices in Santa Clara, California and
21  Bucharest, Romania. *Id.* Multiple press releases issued from Bucharest, Romania – or from Bucharest
22  and Santa Clara jointly – discuss these companies as the same enterprise with identical goals and make
23  no distinction between the entities. Exs. 1, 6. The CEO for all Defendants gives interviews stating that
24  his company has dual headquarters in Romania and the U.S. Ex. 4. SRL filed a complaint in 2014 in
25  San Francisco Superior Court listing itself as a Romanian company, authorized to do business in
26  California, with an office at the same Santa Clara address (2880 Lakeside Drive) where Mr. Schiavo
27  and Ms. Davis now work, and where they admit that Inc. maintains an office. Ex. 5. This joint office
28  is evidence that Inc. permits SRL to "enjoy substantially the same business advantages that it would

have in California if it held its own offices in the State." *Cosper,* 53 Cal. 2d at 84; *U.S. ex rel. Miller,* 636 Fed. Appx. at 949. SRL announced the hiring of Mr. Schiavo as "Senior Vice President, Worldwide Enterprise Sales and Marketing at Bitdefender" to work out of Bitdefender's Santa Clara, CA office, and declared that he will "help translate the company's technical superiority into a commanding position in global enterprise sales." Ex. 6. Even if it is true that Mr. Schiavo is technically employed by Inc. and not SRL, in his "key vice president" position as Senior V.P. of Worldwide Sales, Mr. Schiavo is exactly the type of agent (for either Bitdefender or SRL) "of sufficient character and rank to make it reasonably certain that [SRL] will be apprised of the service made." *Cosper*, 53 Cal. 2d at 83 (finding a non-exclusive sales representative was of sufficient rank to apprise the corporation of service made); *see also Yamaha,* 174 Cal. App. 4th at 273 n.9 (*accord*); *U.S. ex rel. Miller,* 636 Fed. Appx. at 948 (*accord*). And whatever Inc.'s technical relationship is to SRL, it is clear from this evidence that the two companies operate as one. Further, SRL obtained the declaration of Ms. Davis, an employee of Inc., in support of this Motion and used the same law firm that represents Inc. in this matter to file this Motion. Thus, at minimum, SRL maintains regular contact with Inc. such that it is "reasonably certain" that Inc. will apprise (and has apprised) SRL of the service. *Yamaha,* 174 Cal. App. at 273; *U.S. ex rel. Miller,* 636 Fed. Appx. at 948-49.

      Finally, SRL is "foreign and otherwise not readily available for service within California." *U.S. ex rel. Miller,* 636 Fed. Appx. at 949. Unlike, in *Gen. Motors*, where the "appellate court distinguished *Cosper* by noting that GM already *had* 'designated an agent whose identity was easily ascertainable to accept service of process,'" here SRL instructed its employees, and apparently the employees of Inc., not to accept service on behalf of SRL and also instructed Inc.'s agent for service of process in California not to accept service on its behalf. *See Yamaha,* 174 Cal. App. 4th at 275 (citing *Gen. Motors,* 15 Cal. App. 3d at 85) (emphasis original). Contrary to the Motion's arguments, this factor weighs against SRL because its attempts to avoid service in this State satisfy the first prong identified in *U.S. Ex rel. Miller* regarding foreign corporations who are not readily available for service. 636 Fed. Appx. at 949.

      The second factor outlined in *U.S. Ex rel. Miller* is also satisfied because Inc. and SRL share a sufficiently close connection, as shown above. The fact that Inc. is not a subsidiary of SRL does not

7

matter, as the mechanical engineer in *Milbank, supra*, 132 Cal. App. at 69, and the sales representatives in both *Cosper* and *Sims, supra*, 221 Cal. App. 2d at 511 – on whom service was deemed effective – were not subsidiaries of the entities they represented in this State.  As the *Yamaha* court aptly stated: "*Cosper* applies a fortiori to this case – that is, the relationship between the manufacturer's representative and the manufacturer in *Cosper* was far less intimate, far less connected, and far less interrelated than the relationship between [defendants] in the case before us."  *Yamaha,* 174 Cal. App. 4th at 274.  If in *Cosper* a sporting-goods-oriented non-exclusive purveyor of guns on the West Coast was a "general manager in this State" for Smith and Wesson and an "agent of sufficient character and rank to make it reasonably certain that the defendant will be apprised of the service made," then certainly the "dual-headquarters" U.S. office for the Romanian company that is controlled by the same management, and out of which its Senior Vice President of Worldwide Sales and Marketing works, is also SRL's "general manager in this State."  And if it was reasonably certain that a casual sporting goods representative would apprise the foreign manufacturer of service in *Cosper*, it is even more certain that Mr. Schiavo (or Ms. Davis) already apprised SRL of the Complaint here.  Finjan adequately served SRL under California law.

**2.   Finjan served SRL under FRCP 4(h) and SRL has actual notice.**

Finjan also served SRL properly by serving Mr. Schiavo under Fed. R. Civ. P. 4(h), which allows service on a foreign corporation "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service."  Fed. R. Civ. P. 4(h)(1)(B).  "Despite the language of the Rule, service is not limited solely to officially designated officers, managing agents, or agents appointed by law."  *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988).  "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint."  *Id*.  "The rules are to be applied in a manner that will best effectuate their purpose of giving the defendant adequate notice."  *Id*.  Thus, all that is required for service to be effective is that the defendant received sufficient notice and the plaintiff substantially complied with Rule 4.  Here, both of those conditions are met.

In *Direct Mail*, a case on which the Motion relies but misstates its holding (Motion at 10), the

8
FINJAN'S OPP. TO DEF'S MOTION TO DISMISS OR QUASH       CASE NO.: 4:17-cv-4790-HSG

Ninth Circuit held that service on a receptionist was effective under the language of Rule 4(h) because the company maintained a small office, the receptionist was the only one in the office at the time, and there was at least circumstantial evidence that the complaint was delivered to an officer of the company.  Thus, it was "fair, reasonable, and just" to render service on the receptionist in *Direct Mail*. Bearing even more similarity to the instant matter, in *Direct Mail* the Court gave no weight to the receptionist's claims that she did not work for the company that had been served, Eclat, but rather for a separate but associated company, CT, that was a retailer of Eclat's products.  840 F.2d at 689 ("we find service of process on the receptionist in the shared office of Eclat and CT is sufficient").  Moreover, *Direct Mail* cited three other cases where service on a secretary was deemed effective under Rule 4(h), based at least in part on the fact that an officer or managing agent had actually received the complaint. "It is also true that actual receipt of process by the correct person may be a factor in finding process valid when there are other factors that make process fair." *Id.* at 688 (citing *Top Form Mills, Inc. v. Sociedad Nationale Industria Applicazioni Viscosa*, 428 F. Supp. 1237, 1251 (S.D.N.Y. 1977); *Nichols v. Surgitool, Inc.*, 419 F. Supp. 58, 63 (W.D.N.Y. 1976); *Union Asbestos & Rubber Co. v. Evans Prods. Co.*, 328 F.2d 949 (7th Cir.1964)).

      Here, Bitdefender cannot dispute that Mr. Schiavo actually received a copy of the Complaint and service packet addressed to SRL.  Notably, Mr. Schiavo did not submit a declaration in support of this Motion, and he does not dispute that he received the service packet.  Ms. Davis' declaration is conspicuously silent on whether she delivered the packet to Mr. Schiavo – that she accepted twice on his behalf – because she did.  Even after delivering the complaint by courier, Finjan also mailed a copy of the service packet to Mr. Schiavo at Bitdefender's Santa Clara office on at least 2 different occasions.  Nothing in Rule 4(h) requires delivery of the complaint to Mr. Schiavo *by hand*.  Ms. Davis admits that she received at least three copies of the complaint in the Santa Clara office on three separate occasions, and that at least one of those copies was addressed to Mr. Schiavo.  Davis Decl., ¶¶ 4-6, 9-10.  And the proof of service Finjan filed also affirms that the service packet was addressed to Mr. Schiavo.  Ex. 7.

      Ms. Davis' claim that she works for Inc. and not SRL is inconsequential.  *See Direct Mail,* 840 F.2d at 689 ("we find service of process on the receptionist in the shared office of Eclat and CT is

1  sufficient"). At least until recently, if not currently, SRL and Inc., both operated out of that same Santa
2  Clara office and, at minimum, Inc. operates on SRL's behalf out of that office now. Ms. Davis
3  accepted a package addressed to SRL on Mr. Schiavo's behalf (and gave it to him) and also informed a
4  second process server four days later that she was authorized to accept legal documents, which were
5  addressed to SRL on the envelope, and she accepted them. Davis Decl., ¶¶ 4-6, 9-10; Ex. 7. Mr.
6  Schiavo is Senior Director of Worldwide Enterprise sales for Bitdefender, and the evidence shows that
7  he works for both Inc. and SRL in substance, if not also in name. Thus, both Ms. Davis and Mr.
8  Schiavo are "so integrated with the organization that [they] will know what to do with the papers" and
9  they both stand "in such a position as to render it fair, reasonable and just" to imply the authority to
10 receive service. *Direct Mail*, 840 F.2d at 688. The sole case that SRL cites to refute *Direct Mail*'s
11 holding is inapposite, as there the "Plaintiff [did] not really dispute that for purposes of Rule 4(h) [the
12 person served] was neither a managing or general agent for either of the Defendant Unions' nor was
13 [the person served] authorized to accept service on behalf of either of the Defendant Unions."
14 *Rodriguez v. Lehigh Sw. Cement Co.*, No. 14-CV-03537-LHK, 2015 WL 1325528, at *3 (N.D. Cal.
15 Mar. 24, 2015). Here, Mr. Schiavo is absolutely integrated with SRL and Inc. such that it is fair,
16 reasonable, and just to imply that he knew what to do with the papers. Finjan substantially complied
17 with Rule 4(h) by serving Mr. Schiavo, and SRL has actual notice of the Complaint. This is all that is
18 required for service to be effective under the "flexible" and "liberally construed" Rule 4(h). *Direct*
19 *Mail,* 840 F.2d at 688.

20     **B.    SRL's Conjecture on Service through The Hague Convention Is a Red Herring.**
21     Finjan substantially complied with the service requirements under both California and Federal
22 law, and SRL has demonstrated that it has notice of the Complaint. That is all that is required to
23 effectuate service under Rule 4(h) or to impute service on SRL under California law. SRL misstates
24 the purported ease with which Finjan could serve SRL through The Hague Convention. Service
25 through The Hague Convention is a costly and time-consuming process, and is unnecessary here.
26 Finjan should not have to bear that burden, and it does not have to under both California law and under
27 Federal Rule 4(h). SRL's continued attempts to evade or delay service have become a farce and the
28 Court should deny this Motion so the case can proceed.

10

FINJAN'S OPP. TO DEF'S MOTION TO DISMISS OR QUASH    CASE NO.: 4:17-cv-4790-HSG

## V. CONCLUSION

For the reasons set forth above, SRL's Motion to Quash should be denied.

Respectfully submitted,

DATED:  January 4, 2018                              By: */s/  Austin Manes*
                                               Paul Andre (State Bar. No. 196585)
                                               Lisa Kobialka (State Bar No. 191404)
                                               James Hannah (State Bar No. 237978)
                                               Austin Manes (State Bar No. 284065)
                                               KRAMER LEVIN NAFTALIS & FRANKEL LLP
                                               990 Marsh Road
                                               Menlo Park, CA  94025
                                               Telephone: (650) 752-1700
                                               Facsimile: (650) 752-1800
                                               pandre@kramerlevin.com
                                               lkobialka@kramerlevin.com
                                               jhannah@kramerlevin.com
                                               amanes@kramerlevin.com

                                               Attorneys for Plaintiff
                                               FINJAN, INC.