PAUL J. ANDRE (State Bar No. 196585)
pandre@kramerlevin.com
LISA KOBIALKA (State Bar No. 191404)
lkobialka@kramerlevin.com
JAMES HANNAH (State Bar No. 237978)
jhannah@kramerlevin.com
AUSTIN MANES (State Bar No. 284065)
amanes@kramerlevin.com
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800

*Attorneys for Plaintiff*
FINJAN, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation, | Case No.: 4:17-cv-4790-HSG |
| Plaintiff, | **PLAINTIFF FINJAN, INC.'S OPENING CLAIM CONSTRUCTION BRIEF** |
| v. | Date: June 6, 2018 |
| BITDEFENDER INC., a Florida Corporation and BITDEFENDER S.R.L., a Romanian Corporation, | Time: 2:00 p.m.<br>Place: Courtroom 2 – 4th Floor<br>Judge: Hon. Haywood S. Gilliam Jr. |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .................................................................................................. 1

II.    STATEMENT OF FACTS .................................................................................... 1

    A.  Summary of Finjan's Patents ......................................................................... 1

III.   ARGUMENT ......................................................................................................... 2

    A.  Terms in the '494 Patent .............................................................................. 3

          Term 1.   "suspicious computer operations" (Claims 1, 6, 10, and 15) ......................... 3

          Term 2.   "Downloadable scanner coupled with said receiver, for deriving security profile data for the Downloadable" (Claim 10) ................................. 5

          Term 3.   "Database manager" (Claims 10 and 11) ................................................... 8

    B.  Terms in the '780 Patent .............................................................................. 9

          Term 4.   "performing a hashing function on the Downloadable and the fetched software components to generate a Downloadable ID" (Claims 1, 9 and 18) .......................................................................................................... 9

          Term 5.   "Fetching" (Claims 1 and 18) .................................................................. 11

    C.  Terms in the '154 Patent ............................................................................ 12

          Term 6.   "a content processor for (i) processing content received over a network" (Claim 1) ..................................................................................... 12

          Term 7.   "call to a first function" (Claims 1 and 4) ................................................ 14

          Term 8.   "a second function" (Claims 1 and 4) ...................................................... 16

          Term 9.   "when the first function is invoked" (Claims 1 and 4) ................................ 17

    D.  Term in the '299 Patent ............................................................................... 18

          Term 10.  "a warning of potential risk" (Claims 1, 13, 20, and 21) ............................. 18

III.   CONCLUSION ...................................................................................................... 20

FINJAN'S OPENING CLAIM CONSTRUCTION BRIEF       CASE NO.: 4:17-cv-4790-HSG

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*,
  512 F.3d 1338 (Fed. Cir. 2008)...................................................................................10

*Chef Am., Inc. v. Lamb-Weston, Inc.*,
  358 F.3d 1371 (Fed. Cir. 2004).............................................................5, 8, 11, 12, 17

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
  No. 13-cv-03999-BLF, 2014 WL 5361976 (N.D. Cal. Oct. 20, 2014)...............................9

*Finjan, Inc. v. Blue Coat Systems, LLC*,
  No. 15-cv-03295-BLF, 2016 WL 7212322 (N.D. Cal. Dec. 13, 2016)...............................4, 5, 6, 7

*Finjan, Inc. v. Proofpoint, Inc.*,
  No. 3:13-cv-05808-HSG, 2015 WL 7770208 (N.D. Cal. Dec. 3, 2015) ................................. *passim*

*Laitram Corp. v. NEC Corp.*,
  163 F.3d 1342 (Fed. Cir. 1998)...................................................................................10

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005)....................................................................................2

*Saffran v. Johnson & Johnson*,
  712 F.3d 549 (Fed. Cir. 2013).....................................................................................19

*Thorner v. Sony Computer Entm't Am. LLC*,
  669 F.3d 1362 (Fed. Cir. 2012)................................................................................2, 14

# I.   INTRODUCTION

The Court should adopt Finjan's proposed claim constructions because they are consistent with the intrinsic record.  In fact, this Court and the Patent Trial and Appeal Board ("PTAB") have already considered most of these terms and adopted the same constructions that Finjan proposes here (see Terms 1-2, 4 and 6-8).  Consistent with these decisions, Finjan's proposes that most of these terms should be given their plain and ordinary meaning, particularly because the patentee did not define these terms or disavow claim scope in the specification or prosecution history.

Where Finjan offers a construction for a term below, it is straightforward, will assist the fact finder, and remains true to the plain language of the term.  By contrast, Bitdefender's proposed constructions conflict with the prior orders of this Court and improperly read limitations into the claims from exemplary embodiments or other patents, in a litigation-driven attempt to avoid infringement.  Bitdefender's proposed constructions also needlessly muddle the plain language of the claim terms with verbose descriptions that will only confuse the jury.  The Court should apply Finjan's constructions.

# II.   STATEMENT OF FACTS

## A.   Summary of Finjan's Patents

Finjan asserts four patents against Bitdefender: U.S. Patent Nos. 8,677,494 (Ex. 1,[1] the "'494 Patent"); 6,804,780 (Ex. 2, the "'780 Patent"); 8,141,154 (Ex. 3, the "'154 Patent"); and 7,930,299 (Ex. 4, the "'299 Patent").  Each of these patents includes terms that are at issue for the purposes of claim construction.

### 1.   The '494 Patent

The '494 Patent generally covers a system for receiving a Downloadable and creating a profile for the Downloadable to be stored in a database.  *See* '494 Patent.  The system derives a security profile for the Downloadable that includes a list of suspicious operations that the Downloadable may attempt and stores the Downloadable profile in a database.  The database can also hold additional information about

---

[1] Unless otherwise noted, all exhibits cited are attached to the Declaration of Austin Manes in Support of Finjan's Opening Claim Construction Brief, filed herewith.

FINJAN'S OPENING CLAIM CONSTRUCTION BRIEF          CASE NO.: 4:17-cv-4790-HSG

the Downloadable, such as the date and time the profile was derived and the URL from which the Downloadable originated. *Id.*, Col. 21, ll. 26-28.

### 2. The '780 Patent

The '780 Patent is directed to increasing the efficiency of a security system. Generally, the '780 Patent relates to a system that generates an ID for a Downloadable. *See* '780 Patent, Abstract. The ID is generated by a process called "hashing." Hashing is a mathematical function that can be applied to data to allow a more efficient determination of whether the data was previously seen. Creating a hash of files that are analyzed in this manner allows the system to readily retrieve, store, or process the file.

### 3. The '154 Patent

The '154 Patent provides another layer of protection as it offloads the processing of security decisions to a separate computer. *See* '154 Patent. Specifically, the '154 Patent teaches that incoming software is analyzed and aspects of the software are checked against a security computer to determine whether the software is malicious or not. If the software is not deemed malicious, then it is allowed to execute. *See id.*, Abstract.

### 4. The '299 Patent

The '299 Patent provides security measures to protect a user who is searching the internet. *See* '299 Patent. In particular, the '299 Patent claims a system that provides security assessments for web pages or media content that are located by way of an internet search. One of the ways this is accomplished is by displaying a warning of potential risk next to each result gathered by way of a search engine.

## III. ARGUMENT

Finjan proposes that the Court adopt a plain and ordinary meaning construction for most of the terms at issue. "Generally, claim terms should be given their ordinary and customary meaning–*i.e.*, the meaning that the terms would have to a person of ordinary skill in the art at the time of the invention." *Finjan, Inc. v. Proofpoint, Inc.*, No. 3:13-cv-05808-HSG, 2015 WL 7770208, at *1 (N.D. Cal. Dec. 3, 2015) (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc); *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)). In fact, there are only two

narrow exceptions to the plain and ordinary meaning presumption, neither of which applies here because the patentees (1) did not act as their own "lexicographer" for those terms and (2) did not disavow the full scope of any claim term in the specification or during prosecution. *Proofpoint*, 2015 WL 7770208, at *1-2.

### A.   Terms in the '494 Patent

### Term 1.   "suspicious computer operations" (Claims 1, 6, 10, and 15)

| Finjan's Proposed Construction | Bitdefender's Proposed Construction |
|---|---|
| No construction necessary – Plain and ordinary meaning.  Plain and ordinary meaning of "suspicious" is "hostile or potentially hostile." | Indefinite<br><br>Alternatively, "a subset of all possible computer operations that have been deemed suspicious prior to their inclusion in the list" |

The term "suspicious computer operations" should be given its plain and ordinary meaning, just as it has multiple times by Courts in this District and in sister courts.  Further, "suspicious" should be given its plain and ordinary meaning, which in the context of the '494 Patent is "hostile or potentially hostile," as set forth in the specification and file history.  A person of ordinary skill in the art would be able to apply Term 1 without problem, and it is described in the '494 Patent specification.  Medvidovic Decl., ¶ 12.  For example, the '780 Patent is specifically incorporated by reference into the '494 Patent and it describes how "suspicious computer operations" are "Operations Deemed Potentially Hostile" and provides detailed and specific examples including "File operations," "Network operations," and "Registry operations."  '780 Patent at Col. 5, ll. 59-60; Col. 6, ll. 1-14.  These types of operations are consistent with the plain and ordinary meaning of this term and well known to a person of ordinary skill in the art.  The '780 Patent further explains that "the term 'suspicious' includes hostile potentially, hostile, undesirable, potentially undesirable, etc."  '780 Patent at Col. 3, ll. 25-28; Medvidovic Decl., ¶ 13.  As such, the Court should adopt Finjan's proposed construction.

Bitdefender's argument that this term is indefinite is belied by the fact that numerous Courts, third-party experts (including those adverse to Finjan), and even former defendants against Finjan have all agreed or relied on a definite interpretation of this term in prior litigations.  *See, e.g.*, Ex. 5, *Finjan v. McAfee*, No. 10-cv-00593 (GMS), Dkt. No. 326 at *2 and n.3 (D. Del. Dec. 29, 2012); *see also Finjan,*

3

*Inc. v. Blue Coat Systems, LLC*, No. 15-cv-03295-BLF, 2016 WL 7212322, at *2 (N.D. Cal. Dec. 13, 2016) ("*Blue Coat II*"); Ex. 6, *Finjan v. Proofpoint*, No. 13-cv-05808-HSG, Dkt. No. 117-1 at *92 (N.D. Cal. January 26, 2015) (opposing expert relying on a definite interpretation); Ex. 7, *Finjan v. Sophos*, No. 14-cv-01197-WHO, Dkt. No. 453 at *48-56 (N.D. Cal. Mar. 2, 2015).  Further, patent claims are presumed valid.  *Nautilus, Inc. v. Biosig Instruments, Inc.*, No 13-369, 134 S. Ct. 2120, 2124 (2014).  As such, for a defendant to meet its burden of showing that a term is indefinite, the claim, read in light of its specification and file history, must "fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention."  *Id*.  Accordingly, this term cannot be indefinite because it is well known to a person of ordinary skill in the art.  Medvidovic Decl., ¶ 12.  Specifically, a person of ordinary skill in the art understands that this term refers to operations that a program may take on a user's computers that are potentially hostile.  Medvidovic Decl., ¶ 12.  Further, the '494 Patent includes detailed disclosure providing context for how the term is properly interpreted by a person of ordinary skill in the art.  *See, e.g.*, '780 Patent at Col. 3, ll. 25-28; Col. 5, ll. 59-60; Col. 6, ll. 1-14.

Bitdefender's backup argument that the term "suspicious computer operations" is limited to "all possible computer operations that have been deemed suspicious prior to their inclusion in the list" has been rejected repeatedly by courts in prior litigation.  *See, e.g.*, Ex. 5, *McAfee*, Dkt. No. 326 at *2 and n.3; *see also Blue Coat II*, 2016 WL 7212322, at *11.  As these courts have found, this proposed alternative construction is improper because it adds at least the following limitations to the claim language: (1) "all possible," (2) "deemed suspicious," and (3) "prior to their inclusion in the list."  These are new limitations that are not set forth in the claim, and there is no reason to add these limitations.  For example, Chief Judge Gregory Sleet of the District of Delaware held that this term should be given its plain and ordinary meaning when construing the same term in U.S. Patent No. 6,092,194.  "The court rejects the defendants assertion that this term [suspicious computer operations] should be construed to mean 'a list of all operations that may be attempted by the received Downloadable that have been determined to be suspicious.'"  Ex. 5, *McAfee*, Dkt. No. 326 at n.3 (also rejecting the argument that the patentee disavowed the plain and ordinary meaning of the term).  This decision is relevant because the '194 Patent is a parent of the '494 Patent, the '494 Patent explicitly

4

incorporates by reference the specification of the '194 Patent.  *See* '494 Patent, Col. 1, ll. 33-38; *see also Blue Coat II*, 2016 WL 7212322, at *1 (Judge Freeman relying on the specification of the '194 Patent to interpret the '494 Patent).  Thus, in keeping with prior decisions that have construed this term, it should also be given its plain and ordinary meaning here.  Ex. 8, *Finjan, Inc. v. Symantec Corp.*, No. 14-cv-02998-HSG, Dkt. No. 170 at *4 (N.D. Cal. Feb. 10, 2017) ("When engaging in claim construction, district courts have granted 'reasoned deference' to claim construction orders outside their jurisdiction that address the same term in the same patent, given the importance of uniformity in claim construction.").  Bitdefender's proposed construction is unnecessary and unsupported, and should be rejected.

**Term 2.    "Downloadable scanner coupled with said receiver, for deriving security profile data for the Downloadable" (Claim 10)**

| Finjan's Proposed Construction | Bitdefender's Proposed Construction |
|---|---|
| No construction necessary – Plain and ordinary meaning. | This phrase should be construed pursuant to 35 U.S.C. § 112(6) to cover the corresponding structure disclosed in the '494 patent, namely the code scanner referred to in the '194 patent at 5:36–57, 9:20–33, and Fig. 7, and equivalents.<br><br>Alternatively, "a code scanner that uses parsing techniques to decompose code into constituent operations and identifies specified operations or patterns of operations" |

The term "Downloadable scanner coupled with said receiver, for deriving security profile data for the Downloadable" should be given its plain and ordinary meaning because the claim language is clear and unambiguous.  The parties already agreed on a construction for the word Downloadable, which is the only word in Term 2 that could possibly need construction aside from plain and ordinary meaning.  The remaining words in Term 2 are simple English words whose meaning is clear: a scanner that derives security profile for Downloadables.  *Proofpoint*, 2015 WL 7770208, at *9 ("They mean exactly what they say." (quoting *Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1373 (Fed. Cir. 2004))).  A scanner is a well know component in computer security and software and has an associated structure for scanning content such as Downloadables.  Medvidovic Decl., ¶ 16.  As such, there is no need to construe this term

1  beyond its plain and ordinary meaning.

2  Reading Term 2 in the context of the entire claim further explains what role the scanner plays in

3  the three distinct aspects of the claim, i.e. (1) a receiver receives Downloadables, (2) a scanner scans those

4  Downloadables to generate a profile, and (3) a database manager stores the profile in a database.  *See* '494

5  Patent, Claim 10; *see also Blue Coat II*, 2016 WL 7212322, at *1.  Indeed, both Judge Freeman and

6  Judge Orrick from this District had no problem interpreting the plain language of Term 2 while upholding

7  the validity of the '494 Patent.  "[T]he Downloadable is scanned and 'security profile data,' which

8  includes 'a list of suspicious computer operations that may be attempted by the Downloadable,' is

9  derived."  *Blue Coat II*, 2016 WL 7212322, at *1 (citing the '494 Patent, Col. 21, ll. 21-23, Col. 22, ll. 10-

10  13); *see also* Ex. 7, *Sophos*, Dkt. No. 453 at *55 (holding "the '494 patent is innovative because it

11  describes a method of scanning and extracting particular suspicious elements of a file").  Thus, Term 2 is

12  clear and unambiguous, especially when read within the scope of the entire claim and to a person of

13  ordinary skill in the art, and it should be given its plain and ordinary meaning.  Medvidovic Decl., ¶¶ 15-

14  17.

15  Bitdefender asks that this term be construed as a "means-plus-function" element, but this

16  argument is unsupported because the claim "recite[s] sufficiently definite structure."  As a preliminary

17  matter, the word "means" does not appear anywhere in the claim language of the '494 Patent, so there is a

18  presumption against invoking § 112, ¶ 6, and Bitdefender has the burden of establishing the term is a

19  means-plus-function element.  *Collaborative Agreements, LLC v. Adobe Sys. Inc.*, No. 15-cv-03853-

20  EMC, 2015 WL 7753293, at *3 (N.D. Cal. Dec. 2, 2015) ("presumption applies here because the

21  challenged claim terms do not include the word 'means.'").

22  Bitdefender cannot overcome this burden because the claim recites the structure of a

23  Downloadable scanner, as well as additional structure on how this scanner interacts with other

24  components, all of which establish that sufficient structure is disclosed for the term.  *See Proofpoint*, 2015

25  WL 7770208, at *10-11 (holding the entire claim may inform the term's structure to defeat a means-plus-

26  function challenge: "Independent Claim 1 describes how the 'content processor' interacts with the

27  invention's other components (the transmitter and receiver), which informs the term's structural

28

6

character."). A Downloadable scanner connotes a structure that is directed to scanning a downloadable, and thus it should not be construed as a means-plus-function element. Medvidovic Decl., ¶ 17. Courts in this District have also recognized that Term 2 has a sufficiently definite structure, as described in the claim language. *See Blue Coat II*, 2016 WL 7212322, at *1 (holding that "the 'security profile data'" derived from the scan includes "a list of suspicious computer operations that may be attempted by the Downloadable"); *see also* Ex. 7, *Sophos*, Dkt. No. 453 at *56 (holding the '494 Patent "detail[s] a system that involves scanning malware … [and] detail[s] a process for identifying unknown viruses by extracting specific suspicious operations from files"). Thus, Bitdefender cannot demonstrate "that the claim term 'fails to recite sufficiently definite structure' or else 'recites function without reciting sufficient structure for performing that function' so as to overcome this presumption." *Proofpoint*, 2015 WL 7770208, at *10 (citations omitted).

As a backup argument, Bitdefender proposes a construction that adds unnecessary limitations to the claim language. For example, Bitdefender seeks to inject the word "code" into the claim language as an unfounded additional limitation. But the word "code" is nowhere to be found in the claim language of the '494 Patent, and Bitdefender has no basis to attempt to read it into the claims. While the Court may look to the specification of the patent at issue for help construing a disputed term, it is wholly improper to rely on an embodiment or language in that specification to read in additional limitations that are not in the actual claim language at issue.[2] *Proofpoint*, 2015 WL 7770208, at *1 ("holding "it is improper to read limitations from the specification into the claims") (citation omitted). Because Finjan did not provide a definition for "scanner" that is different from its plain and ordinary meaning or disavow claim scope in the specification or prosecution history, there is no basis to limit this term.

Bitdefender's alternative construction is also needlessly and confusingly verbose. Thus, both of Bitdefender's proposed constructions should be rejected.

---

[2] In the Joint Claim Construction Statement (Dkt. No. 73, Ex. A at 3), Bitdefender also cited the May 7, 2013 Office Action Response for the '494 Patent as its only other intrinsic evidence for Term 2. But it is unclear how that Office Action Response supports Bitdefender's argument, if at all, and the Office Action Response does not support reading the word "code" into Claim 10 of the '494 Patent.

FINJAN'S OPENING CLAIM CONSTRUCTION BRIEF          CASE NO.: 4:17-cv-4790-HSG

**Term 3.    "Database manager" (Claims 10 and 11)**

| Finjan's Proposed Construction | Bitdefender's Proposed Construction |
|---|---|
| No construction necessary – Plain and ordinary meaning.  Plain and ordinary meaning of database manager is hardware and/or software that controls a database. | a program or programs that control a database so that the information it contains can be stored, retrieved, updated, and sorted |

The term "Database manager" should be given its plain and ordinary meaning, which is hardware and/or software that controls a database.  The parties have already agreed on a construction for the tem "database," which is a well-known component in computer security and software.  Dkt. No. 73 at 1; Medvidovic Decl., ¶ 19.  And the parties agree here that a database manager "controls" a database.  No further construction is necessary under the plain language of this term because "[t]hese are ordinary, simple English words whose meaning is clear and unquestionable . . . They mean exactly what they say." *Proofpoint*, 2015 WL 7770208, at *9 (quoting *Chef Am.*, 358 F.3d at 1373).

Indeed, Judge Orrick had no trouble understanding and relying on this basic phrase when construing the term "database" for the '494 Patent, concluding that "[a] database manager uses the database to retrieve security profile data for an incoming Downloadable."  Ex. 9, *Finjan, Inc. v. Sophos, Inc.*, No. 14-cv-01197-WHO, Dkt. No. 73 at *5 (N.D. Cal. Mar. 2, 2015).  There is simply no support to deviate from this plain reading of the claim term.

Bitdefender's proposed construction is unnecessary because both sides agree that the Database manager is something that "controls" or "manages" a database for storing and retrieving information, and any additional limitations are unnecessary.  The simple term "database manager" needs no embellishment or construction, especially where the word database is already construed, and there is no cause to read in Bitdefender's numerous limitations.

FINJAN'S OPENING CLAIM CONSTRUCTION BRIEF          CASE NO.: 4:17-cv-4790-HSG

### B. Terms in the '780 Patent

**Term 4.** **"performing a hashing function on the Downloadable and the fetched software components to generate a Downloadable ID" (Claims 1, 9 and 18)**

| Finjan's Proposed Construction | Bitdefender's Proposed Construction |
| --- | --- |
| performing a hashing function on the Downloadable together with its fetched software components to generate a Downloadable ID | performing a hashing function that operates across the combination of a Downloadable together with its fetched software components to transmute the Downloadable and its fetched software components into a unique and reproducible ID for that Downloadable |

Finjan's proposed construction of "performing a hashing function on the Downloadable and the fetched software components to generate a Downloadable ID" is the same construction that multiple courts, including this Court and the PTAB, have previously ordered for this term, *i.e.*: "performing a hashing function on the Downloadable together with its fetched software components to generate a Downloadable ID." *See Finjan, Inc. v. Blue Coat Systems, Inc.*, No. 13-cv-03999-BLF, 2014 WL 5361976, at *2 (N.D. Cal. Oct. 20, 2014); *see also* Ex. 10, *Finjan, Inc. v. ESET, LLC*, No. 17-cv-00183-CAB-(BGS), Dkt. No. 195 at *4 (S.D. Cal. Nov. 14, 2017); Ex. 11, *Finjan, Inc. v. Secure Computing Corp.*, No. 06-369 (GMS), Dkt. No. 142 at *2 (D. Del. Dec. 11, 2007); Ex. 12, *Palo Alto Networks, Inc. v. Finjan, Inc.*, Case IPR2016-00165, Paper No. 7 at *7-8 (P.T.A.B. April 21, 2016). These prior intra-District claim constructions should be afforded great deference. "If anything, to the extent possible, the degree of deference should be greater where the prior claim construction order was issued in the same jurisdiction. As observed by Judge Chen, the Supreme Court has stressed the particular importance of intrajurisdictional uniformity in claim construction." Ex. 8, *Symantec*, Dkt. No. 170 at *4-5 (citing *Visto Corp. v. Sproqit Tech., Inc.*, 445 F. Supp. 2d 1104, 1107-08 (N.D. Cal. 2006)). Finjan's proposed construction is also consistent with the intrinsic record of the '780 Patent, which discloses generating an ID so that files can be further processed, analyzed, or stored. '780 Patent, Col. 1, ll. 66–Col. 2, ll. 16. This is exactly what Finjan proposes in its proposed construction, which has been upheld many times in this District.

Bitdefender's construction, on the other hand, is unnecessarily verbose and confusing. *See* Ex. 11, *Secure Computing*, Dkt. No. 142 at 2. It replaces the basic term "Downloadable ID" with the limitation "a unique and reproducible ID for that Downloadable" and further requires a limitation that the Downloadable and its fetched software components be "transmuted." Such a construction would be unhelpful to a factfinder because it adds unnecessary technical jargon to the straightforward concept of a Downloadable ID. Medvidovic Decl., ¶¶ 20-22. First, there is no mention of the word "transmute" anywhere in the '780 Patent. Next, to the extent Bitdefender intends to limit a "Downloadable ID" to be a "unique and reproducible ID," the '780 Patent specification does not support such an understanding. Medvidovic Decl., ¶¶ 22-23. Indeed, in the District of Delaware, Judge Sleet rejected such a construction because it was contrary to the prosecution history of the '780 Patent. Instead, Judge Sleet adopted the construction that Finjan proposes here, concluding that the "construction reflects how the inventor understood and used the term, as evinced by the patent's prosecution history." *Finjan, Inc. v. Secure Computing Corp.* Claim Construction Order at 2, n.4 (rejecting a construction similar to Bitdefender's). Further, Bitdefender identifies no support or disclaimer in the intrinsic record that would support its proposed construction. And neither the word "unique" nor "reproducible" appears anywhere in the claim language or specification. Medvidovic Decl., ¶ 22.

Bitdefender's proposed construction is also contrary to the law because any reference to "a" presumably means "one or more." *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008) ("That 'a' or 'an' can mean 'one or more' is best described as a rule, rather than merely as a presumption or even a convention. The exceptions to this rule are extremely limited: a patentee must 'evince[ ] a clear intent' to limit 'a' or 'an' to 'one.'") (citation omitted). Thus, as written in the claims, one or more Downloadable IDs can be generated, and Term 4 is not limited to a "unique and reproducible" Downloadable ID. Because there is no support for Bitdefender's construction and it is inconsistent with the construction of this term provided by other Courts in this District, it should be rejected. *See Proofpoint*, 2015 WL 7770208, at *9 n.4 (citing *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1347 (Fed. Cir. 1998)).

FINJAN'S OPENING CLAIM CONSTRUCTION BRIEF          CASE NO.: 4:17-cv-4790-HSG

**Term 5.   "Fetching" (Claims 1 and 18)**

| Finjan's Proposed Construction | Bitdefender's Proposed Construction |
|---|---|
| No construction necessary – Plain and ordinary meaning.<br><br>Plain and ordinary of fetching is "retrieving." | retrieving a software component that is not included in the Downloadable |

The term "fetching" should be given its plain and ordinary meaning of "retrieving." While Finjan does not believe that the term necessarily requires any construction, "retrieving" may provide the factfinder with additional clarity when applying the term. The parties' competing constructions show there is no dispute that "fetching" also means "retrieving." As such, no further construction is necessary under the plain language of this term. "These are ordinary, simple English words whose meaning is clear and unquestionable . . . They mean exactly what they say." *Proofpoint*, 2015 WL 7770208, at *9 (citing *Chef Am.*, 358 F.3d at 1373). Finjan's construction is also consistent with the specification of the '780 Patent, which discusses both "fetching" and "retrieving" as the same concept. '780 Patent, Col. 4, ll. 60-65. As such, Finjan's proposed construction should be adopted because it clarifies for the fact finder the plain and ordinary meaning of the term.

Bitdefender attempts to add a number of restricting limitations to a simple English word, and somehow turns a single word into eleven. Bitdefender uses these extra words to add the unnecessary limitation that the retrieved software component must not be included in the Downloadable. But this additional limitation is not supported by the intrinsic record of the '780 Patent, or by the single word "fetching." For example, the '780 specification discusses fetching components of Java applets in one embodiment. '780 Patent, Col. 1, ll. 55-56. As is known to those of skill in the art, Java applets are distributed as Downloadables as a single JAR file with referenced software components included in the JAR file. Medvidovic Decl., ¶ 27. Therefore, the '780 Patent includes a specific example where "fetching" refers to retrieving software components from within the Downloadable, and thus Bitdefender's interpretation contradicts the specification. *Proofpoint*, 2015 WL 7770208, at *1 (holding the Court may look to the specification of the patent at issue for help construing a disputed term, but "it is improper to read limitations from the specification into the claims").

FINJAN'S OPENING CLAIM CONSTRUCTION BRIEF          CASE NO.: 4:17-cv-4790-HSG

Bitdefender's argument that the retrieved software components must not be included in the Downloadable has already been rejected by at least one Court in this District, which found that Finjan's construction is reasonable (although not in a claim construction order).  *See* Ex. 7, *Sophos*, Dkt. No. 453 at *40 (rejecting the argument that "the term 'fetching' requires the infringing product to go out and acquire code that was not originally included in the Downloadable" and holding "[t]he parties have different interpretations of what the "fetching" and "required to be executed" terms require, but Finjan's interpretations are plausible."); *see also* Ex. 8, *Symantec*, Dkt. No. 170 at *4-5 (noting greater deference to interpretations by courts in the same District and "the particular importance of intrajurisdictional uniformity in claim construction") (citation omitted).

Because Bitdefender's proposed additional limitations are unsupported and unnecessary for this plain English word, Bitdefender's construction should be rejected.

## C.      Terms in the '154 Patent

### Term 6.    "a content processor for (i) processing content received over a network" (Claim 1)

| Finjan's Proposed Construction | Bitdefender's Proposed Construction |
|---|---|
| No construction necessary – Plain and ordinary meaning. | This phrase should be construed pursuant to 35 U.S.C. § 112(6) to cover the corresponding structure disclosed in the '154 patent, namely the web browser referred to at 2:64–3:2 ("a conventional web browser"), 10:60–11:4 ("a web browser running on a client computer"), and 15:33–37 ("a web browser"), programmed to perform the operations described at 11:54–59, 12:62–13:3, and 15:52–56, and equivalents thereof.

Alternatively, "a web browser" |

The term "a content processor for (i) processing content received over a network" should be given its plain and ordinary meaning.  This term consists only of plain English words with meanings that are clear and unquestionable.  *Proofpoint*, 2015 WL 7770208, at *9 (citing *Chef Am.*, 358 F.3d at 1373).  Simply put, the processor processes content sent over a network.  The words "processor," "network," and "content" are all straightforward computing terms that any person of ordinary skill in

12

the art, and even lay-persons, would understand.  Medvidovic Decl., ¶¶ 29-30.  For example, the term "content processor" is described in one example in the '154 Patent as a processor that processes received content.  '154 Patent, Col. 2, ll. 64-67; *see also id.*, Col. 10, ll. 61-62 ("Content processor may be a web browser running on client computer 210.").  Thus, plain and ordinary meaning should apply.

In fact, this Court has already determined that this term should be given its plain and ordinary meaning and is not susceptible to a means-plus-function limitation, as Bitdefender argues.  In fact, this Court already construed the *entire* claim element that includes this Term 6 – and also Terms 7 and 8 below – as having their plain and ordinary meaning and not being susceptible to a means-plus-function limitation, stating that "[b]ecause the intrinsic evidence describes the term's location and its interactions with other components, the means-plus-function limitation does not apply.  Thus, the term does not require any construction beyond its plain and ordinary meaning."  *Proofpoint*, 2015 WL 7770208, at *11 (construing this entire element finding that "content processor" has a sufficiently specific structure because the claims describes how the "content processor" interacts with the invention's other components (the transmitter and receiver)).  Further, this Court also found that the term "content processor" did not need any construction in a separate case.  *See* Ex. 8, *Symantec*, Dkt. No. 170 at *18. Thus, the Court should once again apply the plain and ordinary meaning to Terms 6 through 8.

There is no support for Bitdefender's backup argument to significantly narrow Term 6 to a single embodiment of a "web browser."  The specification of the '154 Patent sets forth a web browser as an example, and not as a definition, and provides detailed descriptions of generalized behavior.  '154 Patent, Col. 2, ll. 64-67 ("a content processor 170, *such as* a conventional web browser") (emphasis added).  Indeed, the specification shows a content processor on a client computer and merely states that it "*may* be a web browser running on client computer 210."  '154 Patent, Col. 10, ll. 61-62 (emphasis added); *id.*, Figs. 2 and 4; Medvidovic Decl., ¶¶ 31-32.  Further, this Court already rejected the same "web browser" limitation when it was offered by Proofpoint,.  Like Bitdefender, Proofpoint argued that 35 U.S.C. § 112(6) should apply and cited much of the same intrinsic evidence in support of this limitation that Bitdefender cites here.  *See Proofpoint*, 2015 WL 7770208, at *11; *see also* Ex. 13, *Finjan, Inc. v. Proofpoint, Inc.*, No. 13-cv-05808-HSG, Dkt. No. 143 at 19-22 (N.D. Cal. May 15,

FINJAN'S OPENING CLAIM CONSTRUCTION BRIEF          CASE NO.: 4:17-cv-4790-HSG

2015).  Thus, the Court should again reject the theory behind Bitdefender's proposed construction.

**Term 7.   "call to a first function" (Claims 1 and 4)**

| Finjan's Proposed Construction | Bitdefender's Proposed Construction |
|---|---|
| No construction necessary – Plain and ordinary meaning. | a programmatic statement or instruction in the content, coded as the name of a function along with any parameters needed for the function to perform its task, requesting the services of a substitute function that was replaced for an original function within the content, at a gateway computer, prior to the content being received at the client computer |

The term "call to a first function" should also be given its plain and ordinary meaning.  These five words comprise another straightforward term that Bitdefender seeks to replace with confusing and unnecessary language—this time with 58 words, which is 53 words too many.  A "call" and a "function" are well understood to a person of ordinary skill in the art, and do not require a 58-word interpretation. Medvidovic Decl., ¶¶ 33-34, 36.  There is no reason to depart from the plain and ordinary meaning of Term 7 because the patentee did not act as a lexicographer or disclaim any embodiments in the specification.  *Thorner*, 669 F.3d at 1365–66.

In fact, as explained with regard to Term 6 above, this Court has already concluded that Term 7 ("call to a first function") and Term 8 ("a second function") should be given their plain and ordinary meaning.  *Proofpoint*, 2015 WL 7770208, at *8–11 (holding that the phrases ""a call to a first function . . . [invoking/invoke/calling] a second function" and separately, that the entire phrase "content processor (i) for processing content received over a network, the content including a call to a first function, and the call including an input, and (ii) for invoking a second function with the input, only if security computer indicates that such invocation is safe," including all individual terms inside those phrases, should be given their plan and ordinary meaning); *see also* '154 Patent, Col. 5, ll. 4–25.  In *Proofpoint*, this Court rejected the same construction that Bitdefender offers here, which is an improper attempt to read an "original function" and a "substitute function" into the claim language of Terms 7 and 8.  As this Court noted in *Proofpoint*, "the Federal Circuit has repeatedly warned courts that 'it is the claims, not the written description, which define the scope of the patent right.' . . . Here, the claims do not use 'original'

and 'substitute' functions." *Proofpoint*, 2015 WL 7770208, at *9 n.4 (citation omitted) (also holding: "The Court agrees that . . . the specification demonstrates that the 'second function' described in the claims can be the 'original function' identified in the specification" and: "the Court concludes that the specification does not support Defendants' argument that the first and second functions must be different.  The term's plain and ordinary meaning governs, and no construction is necessary.").

Bitdefender's proposed construction is also incorrect because it conflates two different patents, the '154 Patent and the non-asserted, related Patent No. 7,757,289 ("the '289 Patent").  In the '289 Patent, the applicant specifically claimed a system that involved a "substitute function."  Ex. 14, '289 Patent, Col. 17, l. 60–Col. 18, l. 29.  In the '154 Patent, the applicant claimed a different invention, those that involve first and second functions which are not necessarily substitute functions.  Given that two separate patents have been issued, with different claim language, it is inappropriate to use the claim language from the '289 Patent to replace the claim language of the '154 Patent.

Moreover, Bitdefender's construction of first function is inconsistent with the specification because the '154 Patent includes preferred embodiments where the first function and the second function are the same function, and not a substitute function.  Specifically, Table II identifies a first function as "Document.write('<h1>hello</h1>'), and Table III identifies the second function as "Document.write('text')," which is invoked if the security computer indicates that it is safe.  '154 Patent, Col. 10, ll. 15–60 (emphasis added).  As such, this embodiment describes that the first function and second function can be the same function and not a substitute function.  Medvidovic Decl., ¶ 35.  Accordingly, Bitdefender's proposed construction is inconsistent with the intrinsic record.

In sum, this Court has already determined that Terms 7 and 8 should be given their plain and ordinary meaning, and separately rejected the "original" and "substitute" argument that Bitdefender makes for Terms 7 and 8 here.  This Court also already construed the term "function" to have its plain and ordinary meaning, as it is well understood to a person of ordinary skill in the art.  Finally, Bitdefender's proposed construction for Terms 7 and 8 is not supported by the intrinsic record.  Thus, the Court should once again reject Bitdefender's proposed construction for Terms 7 and 8.

**Term 8.   "a second function" (Claims 1 and 4)**

| Finjan's Proposed Construction | Bitdefender's Proposed Construction |
| --- | --- |
| No construction necessary – Plain and ordinary meaning. | the original function that was replaced with the previously identified substitute function call within the content, at a gateway computer, prior to the content being received at the client computer |

For the reasons described above regarding Terms 6 and 7, the term "a second function" should also be given its plain and ordinary meaning.  This Court has already decided that Terms 6 through 8 should be given their plain and ordinary meaning, and that the words "a second function" are plain English that need no construction.  *Proofpoint*, 2015 WL 7770208, at *8–11.

In contrast, Bitdefender's proposed constructions for these terms are convoluted and unnecessarily verbose.  Below is how this claim element would ultimately read if the Court adopted Bitdefender's proposed constructions for Terms 7 and 8:

> a content processor (i) for processing content received over a network, the content including [*a programmatic statement or instruction in the content, coded as the name of a function along with any parameters needed for the function to perform its task, requesting the services of a substitute function that was replaced for an original function within the content, at a gateway computer, prior to the content being received at the client computer*], and the call including an input, and (ii) for invoking [*the original function that was replaced with the previously identified substitute function call within the content, at a gateway computer, prior to the content being received at the client computer*] with the input, only if a security computer indicates that such invocation is safe;

Bitdefender's proposed constructions for Terms 7 and 8 add a total of eighty-eight (88) words in place of just eight words from the original claim language.  Thus, not only are Bitdefender's proposed constructions improper under claim construction principles and contrary to this Court's prior decisions, but they would also be unhelpful and confusing for the factfinder to apply.

FINJAN'S OPENING CLAIM CONSTRUCTION BRIEF          CASE NO.: 4:17-cv-4790-HSG

**Term 9.   "when the first function is invoked" (Claims 1 and 4)**

| Finjan's Proposed Construction | Bitdefender's Proposed Construction |
|---|---|
| No construction necessary – Plain and ordinary meaning. | in response to the first function being invoked |

The term "when the first function is invoked" should be given its plain and ordinary meaning. These are plain words that are commonly used in the field and easily understood by persons of ordinary skill in the art.  Medvidovic Decl., ¶¶ 41-42.  As shown for Terms 6 through 8 above, this Court already construed the terms "function," "first function," and "invoke" to have their plain and ordinary meaning. *Proofpoint*, 2015 WL 7770208, at *8-11.  Bitdefender does not dispute that ruling or seek any additional construction for the words "function," "first function," or "invoke," but instead simply rewrites the word "when" to mean "in response to."  This construction is improper because "when" is a simple English word that needs no construction.  *Proofpoint*, 2015 WL 7770208, at *9 (citing *Chef Am*, 358 F.3d at 1373).  Further, it is not clear how Bitdefender's proposal even changes the meaning of the term, other than to make it longer and more convoluted, without reason.

Bitdefender cannot meet its burden of changing the meaning of "when" because it cannot show that the patentee acted as its own lexicographer or made a "clear and unambiguous disavowal of claim scope" for the word "when."  *Proofpoint*, 2015 WL 7770208, at *1-2.  To the contrary, the portions of the '154 Patent specification that Bitdefender cites in the Joint Claim Construction Statement are replete with the word "when."  *See* Dkt. No. 73, Ex. A at 21.  By contrast, Bitdefender's proposed substitution of the phrase "in response to" is nowhere in the '154 Patent.  In fact, the word "response" does not appear anywhere in the '154 Patent.  Similarly, the IPR Grant, IPR Written decision, and Office Action Response that Bitdefender cites in the Joint Claim Construction Statement also do not support Bitdefender's construction.  None of these documents uses the words "in response to" when discussing the word "when," or any other portion of Term 9.

Because the only disputed word in Term 9 is the simple English word "when" and because the patentee did not act as its own lexicographer or disavow the full scope of this term, the plain and ordinary meaning of Term 9 should apply.

FINJAN'S OPENING CLAIM CONSTRUCTION BRIEF          CASE NO.: 4:17-cv-4790-HSG

### D.     Term in the '299 Patent

### Term 10.  "a warning of potential risk" (Claims 1, 13, 20, and 21)

| Finjan's Proposed Construction | Bitdefender's Proposed Construction |
|---|---|
| No construction necessary – Plain and ordinary meaning. | an indication that a security assessment has not yet been performed by the content scanner, distinct from presenting potential security risks |

The term "a warning of potential risk" should be given its plain and ordinary meaning, as these are all "ordinary, simple English words whose meaning is clear and unquestionable. . . .They mean exactly what they say." *Proofpoint*, 2015 WL 7770208, at *9 (citation omitted).  Because these are simple English words that any lay-person can understand – let alone a person of ordinary skill in the art – there is no need for the additional limitations that Bitdefender's proposed construction seeks to impose.  Medvidovic Decl., ¶ 45.  Bitdefender cannot meet its burden of showing that the patentee acted as its own lexicographer or disavowed the full scope of this term, so the plain and ordinary meaning should apply.

In fact, the claim language and the specification both militate against Bitdefender's proposed construction, which strangely appears to require that "a warning of potential risk" be defined as an indication that a security assessment had *not* yet been performed.  But nothing in the claim language limits when the security assessment can be performed.  Rather, Claim 1 indicates that the security assessment and the displaying "a warning of potential risk" may be performed simultaneously, by its use of the phrase "prior to *completion* of said receiving." '299 Patent, Claim 1, Col. 13, ll. 8 (emphasis added); Medvidovic Decl., ¶ 45.  Notably, the claim language does not say a warning of potential risk occurs "prior to *beginning*" the security assessment.  Further, the claim language discusses a "*combined* search and security results summary" (Col. 13, ll. 4-5 (emphasis added)) and the specification describes a summary of the invention as "*combining* operation of a search engine with operation of a content security filter, so as to provide security assessments for web pages or media content." '299 Patent, Col. 2, ll. 13-15 (emphasis added).  Because the claim language contemplates combined search and security results and allows the security assessment to begin or be performed simultaneously with displaying "a

FINJAN'S OPENING CLAIM CONSTRUCTION BRIEF                         CASE NO.: 4:17-cv-4790-HSG

warning of potential risk," Bitdefender's proposed construction is at odds with the intrinsic record. Medvidovic Decl., ¶ 45.

Moreover, in order to overcome the presumption that the simple English words of Term 10 should be given their plain and ordinary meaning, Bitdefender must show that the patentee acted as its own lexicographer or disavowed the full scope of this term. *Proofpoint*, 2015 WL 7770208, at *1-2. Bitdefender cannot meet that burden.  Nothing in the evidence that Bitdefender cites in the Joint Claim Construction Statement supports its construction here.  *See* Dkt. No. 73, Ex. A at 23.  In fact, the only citations Bitdefender makes to the '299 Patent are to "alternative embodiments" or figures in the specification. *See id.*, Ex. A at 23 (citing the '299 Patent at 4:33-43 (discussing "potential" risks and not supporting Bitdefender's proposed construction); 4:54-57 (discussing alternative configurations); 7:16-25 (discussing an "alternative embodiment"); and 7-26-37(also discussing an "alternative embodiment")).  Thus, Bitdefender's citations to the '299 Patent do not support its construction and, in any event, it is improper to read limitations from the specification into the claims. *Proofpoint*, 2015 WL 7770208, at *1.

Bitdefender also cannot show that the patentee made a "clear and unambiguous disavowal of claim scope" during prosecution, which it must in order to overcome the presumption for plain and ordinary meaning under a disavowal theory. *Saffran v. Johnson & Johnson*, 712 F.3d 549, 559 (Fed. Cir. 2013).  None of the office actions that Bitdefender cites in the Joint Claim Construction Statement shows a clear and unambiguous disavowal.  *See* Dkt. No. 73, Ex. A at 23.  Notably, this Court already rejected a similar disavowal argument regarding a claim element that immediately precedes Term 10 in Claim 1 of the '299 Patent.  *See* Ex. 8, *Symantec*, Dkt. No. 170 at *20-23 (construing the phrase: "dynamically updating the combined search and security results summary" in Claim 1 to have its plain and ordinary meaning and further finding: "There was no clear and unmistakable disavowal of scope in the IPR proceeding").  The fact that this Court already rejected a disavowal of scope argument on this same claim, and also held that the phrase "dynamically updating the combined search and security results summary" needs no construction, weighs in favor of reaching the same determination for the

1  plain English words "a warning of potential risk" in that same claim, which are even less complicated

2  by comparison.

3  **III.    CONCLUSION**

4      For the reasons set forth above, Finjan respectfully requests that the Court construe all of the

5  disputed terms of the Finjan Patents in accordance with Finjan's constructions.

6                                                                      Respectfully submitted,

7  Dated:  May 4, 2018                                          By:  */s/ James Hannah*

8                                                                      Paul J. Andre (State Bar No. 196585)
                                                                       Lisa Kobialka (State Bar No. 191404)

9                                                                      James Hannah (State Bar No. 237978)
                                                                       Austin Manes (State Bar No. 284065)

10                                                                     KRAMER LEVIN NAFTALIS
                                                                       & FRANKEL LLP

11                                                                     990 Marsh Road

12                                                                     Menlo Park, CA 94025
                                                                       Telephone: (650) 752-1700

13                                                                     Facsimile: (650) 752-1800

14                                                                     pandre@kramerlevin.com
                                                                       lkobialka@kramerlevin.com

15                                                                     jhannah@kramerlevin.com
                                                                       amanes@kramerlevin.com

16

17                                                                     *Attorneys for Plaintiff*
                                                                       FINJAN, INC.

18

19

20

21

22

23

24

25

26

27

28

FINJAN'S OPENING CLAIM CONSTRUCTION BRIEF                    CASE NO.: 4:17-cv-4790-HSG