PAGES 1 - 111

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**BEFORE THE HONORABLE HAYWOOD S. GILLIAM, JR., JUDGE**

| | | |
|---|---|---|
| FINJAN, INC., | ) | |
| | ) | |
| PLAINTIFF, | ) | NO. C-17-4790 HSG |
| | ) | |
| VS. | ) | WEDNESDAY, JUNE 6, 2018 |
| | ) | |
| BITDEFENDER, INC., ET AL., | ) | OAKLAND, CALIFORNIA |
| | ) | |
| | ) | CLAIMS CONSTRUCTION |
| | ) | |
| DEFENDANTS. | ) | |
| _____ | ) | |

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

**FOR PLAINTIFF:**          KRAMER LEVIN NAFTALLIS & FRANKEL, LLP
                           990 MARSH ROAD
                           MENLO PARK, CALIFORNIA 94025
                   BY:  LISA KOBIALKA, ESQUIRE
                        KRIS KASTENS, ESQUIRE
                        AUSTIN MANES, ESQUIRE
                        HIEN LIEN, ESQUIRE

**ALSO PRESENT:**          JULIE MAR-SPIHOLA

                   (APPEARANCES CONTINUED)

**REPORTED BY:**           DIANE E. SKILLMAN, CSR 4909, RPR, FCRR
                           OFFICIAL COURT REPORTER

          TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

1     **FOR DEFENDANTS:**      SUSMAN GODFREY
                               1900 AVENUE OF THE STARS, STE. 1400

2                                LOS ANGELES, CALIFORNIA 90067
                        BY:  OLEG ELKHUNOVICH, ESQUIRE

3                                MICHAEL ADAMSON, ESQUIRE

4                                SUSMAN GODFREY LLP
                               1201 THIRD AVENUE, SUITE 3800

5                                SEATTLE, WASHINGTON 98101
                        BY:  IAN B. CROSBY, ESQUIRE

6

7     **ALSO PRESENT:**      AMELIA TANASE, DEPUTY GENERAL COUNSEL
                               BITDEFENDER S.R.L.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| | |
|---|---|
| 1 | WEDNESDAY, JUNE 6, 2018                    2:05 P.M. |
| 2 | P R O C E E D I N G S |
| 3 | **THE CLERK:**  WE'RE CALLING C-17-4790 FINJAN INC. |
| 4 | VERSUS BITDEFENDER, INC. ET AL. |
| 5 | PLEASE STEP FORWARD AND STATE YOUR APPEARANCES FOR THE |
| 6 | RECORD, PLEASE. |
| 7 | **MS. KOBIALKA:**  GOOD AFTERNOON, YOUR HONOR.  LISA |
| 8 | KOBIALKA ON BEHALF OF FINJAN. |
| 9 | AND WITH ME I HAVE MY LONG-TIME COLLEAGUE KRIS KASTENS, |
| 10 | AUSTIN MANES, HIEN LIEN, AND THE CLIENT JULIE MAR-SPIHOLA IS |
| 11 | ALSO HERE AS WELL. |
| 12 | **THE COURT:**  GOOD AFTERNOON, MS. KOBIALKA. |
| 13 | **MR. ELKHUNOVICH:**  GOOD AFTERNOON, YOUR HONOR.  OLEG |
| 14 | ELKHUNOVICH OF SUSMAN GODFREY FOR DEFENDANT BITDEFENDER, INC. |
| 15 | AND BITDEFENDER S.R.L.  AND WITH ME I HAVE MY COLLEAGUES IAN |
| 16 | CROSBY AND MICHAEL ADAMSON.  AND WE ALSO HAVE MS. AMELIA |
| 17 | TANASE IN THE GALLERY, WHO'S THE DEPUTY GENERAL COUNSEL FOR |
| 18 | BITDEFENDER S.R.L. WITH US. |
| 19 | **THE COURT:**  ALL RIGHT.  GOOD AFTERNOON, |
| 20 | MR. ELKHUNOVICH. |
| 21 | WE'RE HERE FOR THE CLAIM CONSTRUCTION HEARING.  I'VE |
| 22 | REVIEWED THE PAPERS.  WE SET ASIDE WHAT, THREE HOURS? |
| 23 | **MS. KOBIALKA:**  I BELIEVE WE SAID 45 MINUTES EACH. |
| 24 | **THE COURT:**  EVEN BETTER. |
| 25 | **MR. ELKHUNOVICH:**  YOUR HONOR, I THINK IN OUR JOINT |

```
1    CLAIM CONSTRUCTION STATEMENT WE SAID THREE HOURS.

2              THE COURT:  I THINK THAT'S THE NORM.  I THINK IT

3    MAY -- NORMALLY I WOULD DO A 90-MINUTE TUTORIAL.  OBVIOUSLY I

4    HAVE SEEN THESE PATENTS MANY TIMES SO WE DIDN'T NEED THAT

5    PART, BUT THREE HOURS IS REASONABLE, HOUR AND A HALF EACH.  IF

6    IT GOES QUICKER THAN THAT, THAT WILL BE FINE.

7              MR. ELKHUNOVICH:  THANK YOU, YOUR HONOR.

8              THE COURT:  ANYTHING WE NEED TO TAKE UP BEFORE WE

9    START?

10              MR. ELKHUNOVICH:  NOT FOR US, YOUR HONOR.

11              MS. KOBIALKA:  I DON'T BELIEVE THERE'S ANYTHING AT

12    THIS TIME.

13              THE COURT:  LET'S START WITH THE FIRST TERM, AND WE

14    WILL, AS IS MY PRACTICE, DO IT TERM BY TERM.  I WILL HEAR FROM

15    THE PLAINTIFF AND THEN THE DEFENDANT ON EACH TERM.

16              MS. KOBIALKA:  THANK YOU, YOUR HONOR.

17      I DO HAVE SOMETHING TO HAND UP THAT WILL JUST ORIENT YOU

18    THROUGHOUT.

19                    (BINDERS HANDED TO CLERK.)

20              THE CLERK:  ARE THESE ALL THE SAME OR THESE THREE

21    DIFFERENT?

22              MS. KOBIALKA:  THEY ARE ALL THE SAME IN CASE YOU

23    NEEDED EXTRA COPIES.

24      MAY IT PLEASE THE COURT, MS. KOBIALKA, TO GO THROUGH THESE

25    VARIOUS TERMS.  YOUR HONOR, I DID WANT TO MENTION THAT
```

1    MR. KASTENS WAS ACTUALLY GOING TO TAKE THE LEAVE, BUT HE

2    UNEXPECTEDLY HAD A BABY TWO DAYS AGO A LITTLE BIT EARLY, SO HE

3    MAY HELP ME FROM TIME TO TIME.  I AM VERY FORTUNATE THAT HE

4    WAS ACTUALLY WILLING TO COME TODAY TO ASSIST.

5        SO MOVING RIGHT INTO THE TERMS THEMSELVES.  THE FIRST TERM

6    IS THE '494 PATENT WITH REGARD TO "SUSPICIOUS COMPUTER

7    OPERATIONS".  THIS IS A TERM THAT HAS BEEN CONSTRUED BEFORE.

8        IN THE SLIDES I'VE PROVIDED, I ACTUALLY HAVE THE

9    CONSTRUCTIONS NEXT TO EACH OTHER, WHICH IS ON PAGE 4.  AND

10   FINJAN DOESN'T BELIEVE THERE'S A CONSTRUCTION THAT'S

11   NECESSARY.  THE PLAIN AND ORDINARY MEANING SHOULD BE

12   APPROPRIATE FOR THIS.

13       THERE'S BEEN A LOT OF DISCUSSIONS.  "SUSPICIOUS" IS GOING

14   TO BE THE HOSTILE OR POTENTIALLY HOSTILE COMPUTER OPERATIONS.

15   AND IT JUST MAKES SENSE IN THE CONTEXT OF THE PATENT ITSELF

16   AND IN TERMS OF ITS DISCUSSING COMPUTER SYSTEMS NOT CONFIGURED

17   TO RECOGNIZE VIRUSES ATTACHED TO OR CONFIGURED TO

18   DOWNLOADABLES.  IT'S PART OF THE SPECIFICATION OF THE RELATED

19   PATENT THAT'S INCORPORATED, THE '780 PATENT AND THE '494

20   PATENT ITSELF TALKING ABOUT DISCUSSING KNOWN VIRUSES VERSUS

21   UNKNOWN VIRUSES.

22       SO I'M NOT GOING TO GO THROUGH A WHOLE TUTORIAL REGARDING

23   THIS PARTICULAR PATENT BECAUSE I BELIEVE YOU'RE VERY FAMILIAR

24   ALREADY WITH IT, BUT THE POINT HERE IS TO IDENTIFY POTENTIALLY

25   MALICIOUS CODE.

1    AND A PERSON IN COMPUTER SKILL, SECURITY OR COMPUTER

2    SCIENTIST IS GOING TO UNDERSTAND THAT WHEN YOU ARE DEALING

3    WITH COMPUTER OPERATIONS, THERE'S GOING TO BE SOMETHING THAT

4    IS GOING TO BE SUSPICIOUS IF IT'S TRYING TO DO SOMETHING TO

5    YOUR COMPUTER IF IT'S UNBEKNOWNST TO YOU.

6    SO AS A RESULT, JUST THE PLAIN AND ORDINARY MEANING SHOULD

7    BE SUFFICIENT HERE BECAUSE IT'S A COMMONLY KNOWN TERM SO

8    THERE'S NO NEED TO REALLY CONSTRUE IT BEYOND THAT.

9    **THE COURT:**  HERE, THOUGH, IT SEEMS TO ME THAT YOU'RE

10   ALSO AGREEING THAT PLAIN AND ORDINARY MEANING IS HOSTILE OR

11   POTENTIALLY HOSTILE, SO IT WOULD BE GIVING SOME FURTHER

12   CONTOURS.

13   WE WOULDN'T HAVE THE SITUATION WHERE, DOWN THE LINE, WE

14   THEN HAVE A FURTHER DISPUTE ABOUT WHAT PLAIN AND ORDINARY

15   MEANS, CORRECT?  IF I AGREE WITH YOU THAT THE EVIDENCE

16   SUPPORTS YOUR PLAIN AND ORDINARY MEANING CONSTRUCTION, THEN

17   YOU'RE COMMITTED TO THAT DESCRIPTION.

18   **MS. KOBIALKA:**  ABSOLUTELY.  THIS IS SOMETHING THAT'S

19   BEEN VETTED IN NUMEROUS PAPERS ALREADY.  YOU KNOW, WE HAVE

20   TAKEN THIS POSITION IN MULTIPLE PLACES IN ADDITION TO THIS, SO

21   THAT IS CORRECT.

22   NOW, THE ISSUE WITH DEFENDANTS' CONSTRUCTION, THEY HAVE AN

23   ALTERNATIVE CONSTRUCTION.  WE DON'T BELIEVE IT'S INDEFINITE; A

24   PERSON OF ORDINARY SKILL IS GOING TO UNDERSTAND WHAT WE ARE

25   TALKING ABOUT, AND WE PROVIDED THAT -- THAT PARTICULAR

1    EVIDENCE AND, ONCE AGAIN, READ IN THE CONTEXT OF THE

2    SPECIFICATION.

3         BUT TURNING TO THEIR CONSTRUCTION, IT'S ACTUALLY VERY

4    CONFUSING AND COULD LEAD TO QUITE A BIT OF MISCHIEF AS TO

5    WHAT'S REALLY MEANT BY THEIR CONSTRUCTION.

6         IF I TAKE A LOOK AT THE "ALL POSSIBLE COMPUTER

7    OPERATIONS", THAT HAS BEEN A CONSTRUCTION THAT WAS PROPOSED IN

8    THE *MCAFFEE* CASE, AND THAT WAS REJECTED.  IT SHOULDN'T BE THAT

9    BROAD.

10        ADDITIONALLY, IT APPEARS, BASED ON THE BRIEFING, THAT THE

11   DEFENDANTS HAVE DROPPED THE PORTION OF THE CONSTRUCTION ABOUT

12   PRIOR TO THEIR INCLUSION IN THE LIST.  THERE WAS THAT PORTION

13   THAT WAS IN THERE.  THERE WAS NO ARGUMENT ON IT.  THERE'S NO

14   INTRINSIC SUPPORT WHATSOEVER FOR THAT PARTICULAR PORTION OF

15   THEIR CONSTRUCTION.

16        SO REALLY WHAT WE ARE LEFT WITH IS A SUBSET OF ALL

17   POSSIBLE COMPUTER OPERATIONS THAT HAVE BEEN DEEMED SUSPICIOUS

18   AS I UNDERSTAND IT FROM THEIR BRIEFING.  AND IT'S UNCLEAR.

19   ARE WE TALKING ABOUT A SUBSET OF ALL COMPUTER OPERATIONS OR

20   ARE WE TALKING ABOUT A SUBSET OF JUST THOSE THAT ARE DEEMED

21   SUSPICIOUS?

22        SO YOU'RE INJECTING SOME AMBIGUITY INTO THE CLAIM WITH

23   THEIR CONSTRUCTION AND THERE'S REALLY NO NEED FOR IT GIVEN

24   THAT IT'S WELL KNOWN AND WE ARE PROVIDING WHAT THAT PLAIN AND

25   ORDINARY MEANING IS IN THIS PARTICULAR CONTEXT.

1        IN THE *PROOFPOINT* CASE, THE OTHER SIDE'S EXPERT HAS

2   STIPULATED TO IT.  SO THIS IS JUST FURTHER EVIDENCE, NOT ONLY

3   THE *MCAFFEE* CLAIM CONSTRUCTION ORDER, BUT THE *PROOFPOINT*

4   EXPERT UNDERSTOOD WHAT THIS TERM MEANT, AND THE PLAIN AND

5   ORDINARY MEANING WAS APPROPRIATE.

6        **THE COURT:**  HOW DO YOU RESPOND TO THE DEFENDANTS'

7   ARGUMENT THAT YOU OPPOSED *SYMANTEC'S* PLAIN AND ORDINARY

8   MEANING PROPOSAL IN THE IPR?  IS THAT WARRANTED?

9        **MS. KOBIALKA:**  RIGHT.  SO THAT'S A DIFFERENT

10  CONSTRUCTION THAT'S AT ISSUE.  THAT IS, IT COULD EVER BE

11  DEEMED POTENTIALLY HOSTILE.  I BELIEVE THAT'S WHAT'S AT ISSUE

12  THERE.  THAT'S A DIFFERENT CONSTRUCTION THAT'S AT ISSUE.

13       **THE COURT:**  I THOUGHT THE PHRASE WAS "LIST OF

14  SUSPICIOUS COMPUTER OPERATIONS".  AND *SYMANTEC* SAID THAT

15  SHOULD BE GIVEN ITS PLAIN AND ORDINARY MEANING.

16  WHAT WAS YOUR RESPONSE TO THAT ARGUMENT BY *SYMANTEC*?

17       **MS. KOBIALKA:**  IPR... WE HAD ASSERTED --

18       **THE COURT:**  IN OTHER WORDS, THEY ARE MAKING A

19  DISAVOWAL ARGUMENT, AND HOW DO YOU RESPOND TO IT?

20       **MS. KOBIALKA:**  WE HAVEN'T -- WE HAVE NOT CHANGED IT

21  AND WE HAVEN'T DISAVOWED ANYTHING.  WE HAVEN'T SUGGESTED THAT

22  SOMEHOW IT'S SOMETHING DIFFERENT.

23  I THINK, IF I UNDERSTAND THEIR ARGUMENT, THEY'RE SAYING

24  THAT A LIST OF "SUSPICIOUS COMPUTER OPERATIONS" ARE OPERATIONS

25  THAT HAVE BEEN DEEMED SUSPICIOUS IS SOMEHOW A DISAVOWAL.  IT'S

```
1    REALLY -- IT'S NOT.  THERE WAS AN EXPLANATION THAT WAS

2    PROVIDED IN CONNECTION WITH THE IPR, IN PARTICULAR AS IT

3    RELATED TO THE PRIOR ART, BUT IT'S NOT ANY DIFFERENT THAN

4    POTENTIALLY OR... POTENTIALLY HOSTILE COMPUTER OPERATIONS.  SO

5    IT'S NOT DIFFERENT.

6        YOU KNOW, DISAVOWAL IS REALLY GOING TO BE WHERE YOU SAY WE

7    ARE GIVING UP THIS PARTICULAR AREA OF THE CONSTRUCTION.  I'M

8    NOT SURE THAT THERE IS A HUGE MATERIAL DIFFERENCE BETWEEN

9    WHETHER THE LIST OF SUSPICIOUS OPERATIONS ARE DEEMED

10   SUSPICIOUS VERSUS IT'S JUST HOSTILE OR POTENTIALLY HOSTILE.

11       BUT WHEN YOU START GETTING INTO CUTTING UP PIECES, BITS

12   AND PIECES OF ARGUMENT FROM THE IPR'S, PARTICULARLY "DEEMED

13   SUSPICIOUS", I THINK, ONCE AGAIN, YOU ARE GOING TO LEAD TO

14   SOME POTENTIAL MISCHIEF LATER ABOUT WHAT DOES IT MEAN TO BE

15   DEEMED HOSTILE.

16       AND IT'S JUST NOT NECESSARY HERE IN THE CONTEXT OF THE

17   CLAIM AND HOW THIS CLAIM TERM APPEARS WITHIN THE CLAIM ITSELF.

18           THE COURT:  ALL RIGHT.  THEIR QUOTE AT PAGE 2 OF

19   THEIR BRIEF IS:

20           "IN THE SYMANTEC CASE, FINJAN ASSERTED THAT A 'LIST

21           OF SUSPICIOUS COMPUTER OPERATIONS' IS PROPERLY

22           CONSTRUED AS 'A LIST OF SUSPICIOUS COMPUTER

23           OPERATIONS DEEMED SUSPICIOUS' BECAUSE 'GENERATING THE

24           LIST OF SUSPICIOUS COMPUTER OPERATIONS' FIRST

25           REQUIRES THAT A DETERMINATION BE MADE AS TO WHETHER
```

1          THE OPERATIONS TO BE LISTED ARE SUSPICIOUS."

2       A, WHAT DOES THAT EVEN MEAN?  B, DOES IT IN ANY WAY

3    SUGGEST THAT THEIR ARGUMENT HAS MERIT ON THIS POINT?

4          **MS. KOBIALKA:**  SO WHAT THEY HAVE DONE, AS I RECALL,

5    THEY HAVE TAKEN BITS AND PIECES -- I'M GOING TO PULL THE

6    ACTUAL EXHIBIT.

7       THEY HAVE TAKEN BITS AND PIECES FROM THE IPR IN AND OF

8    ITSELF, BUT IT'S NOT MATERIALLY DIFFERENT.  WHAT WE HAVE

9    STATED THERE, IF THE LIST OF -- "A LIST OF SUSPICIOUS COMPUTER

10   OPERATIONS DEEMED SUSPICIOUS", IS NOT A MATERIAL DIFFERENCE.

11   THIS IS NOT A DISAVOWAL WE SOMEHOW CHANGED THE CONSTRUCTION.

12   AND -- IN AND OF ITSELF.

13      SO THIS WAS IN DISCUSSIONS WITH TALKING ABOUT... AS IT

14   RELATED TO A SWIMMER REFERENCE WHICH WAS TALKING ABOUT

15   FUNDAMENTAL COMPUTER OPERATIONS.

16      BUT IT'S NOT A DISAVOWAL.  IT'S NOT A MATERIAL CHANGE IN

17   TERMS OF WHAT IS A LIST OF SUSPICIOUS COMPUTER OPERATIONS.

18   IT'S JUST IS A LIST OF WHAT WOULD BE SUSPICIOUS OR POTENTIALLY

19   HOSTILE, HOSTILE OR POTENTIALLY HOSTILE COMPUTER OPERATIONS.

20          **THE COURT:**  OBVIOUSLY THE TRICK IS, SITTING HERE IN

21   MY SEAT, IT'S VERY HARD TO TRACK ALL OF THE POSITIONS THAT

22   YOU'VE TAKEN OVER THE COURSE OF MANY, MANY PROCEEDINGS.  BUT

23   THAT'S, I SUPPOSE, THE NATURE OF THE ENTERPRISE.

24      I DON'T HAVE ANY OTHER QUESTIONS ABOUT THIS TERM UNLESS

25   YOU HAVE SOMETHING ELSE.

```
1        MS. KOBIALKA:  NO, YOUR HONOR.

2        MR. ELKHUNOVICH:  YOUR HONOR, A COUPLE OF

3  HOUSEKEEPING MATTERS.

4     FIRST, WE ALSO HAVE SOME SLIDES, IF I MAY HAND THEM UP?

5        THE COURT:  YES.

6              (SLIDES HANDED TO CLERK.)

7        THE CLERK:  THEY ARE THE SAME?

8        MR. ELKHUNOVICH:  YES, THEY ARE THE SAME, TWO COPIES.

9     YOUR HONOR, THE PARTIES IN THEIR BRIEFING, BOTH SIDES MAKE

10 REFERENCE TO THE '194 PATENT, THE PATENT WHICH SPECIFICATION

11 IS INCORPORATED INTO THE '494 PATENT, BUT I REALIZED IN

12 PREPARING FOR THIS HEARING THAT NEITHER SIDE HAS INCLUDED THAT

13 PATENT INTO OUR VOLUMINOUS EXHIBITS.

14     SO IF IT WILL PLEASE THE COURT, I HAVE MADE SOME COPIES,

15 AND I AM HAPPY TO HAND THAT UP, IF YOU WOULD LIKE.

16        THE COURT:  THAT'S FINE.  AND THEN YOU SHOULD

17 PROBABLY FILE IT AT SOME POINT FOLLOWING THE HEARING.

18        MR. ELKHUNOVICH:  WE WILL DO THAT AFTER THE HEARING.

19     SO, YOUR HONOR, DIVING RIGHT IN TO TERM ONE OF THE '494

20 PATENT, AS A THRESHOLD MATTER, CONTRARY TO WHAT MS. KOBIALKA

21 SAID, THIS PARTICULAR TERM HAS NOT BEEN CONSTRUED BY ANY COURT

22 EXCEPT THE SYMANTEC IPR.  THE ISSUE WITH THE TERM AS PRESENTED

23 IS, WHAT IS THE MEANING OF "SUSPICIOUS COMPUTER OPERATIONS".

24     THERE WERE OTHER PHRASES THAT INCLUDED THIS SUBPHRASE THAT

25 WERE CONSTRUED, BUT THE CLAIM CONSTRUCTION ISSUES WERE ABOUT
```

1    TOTALLY DIFFERENT THINGS.

2        SO, FOR EXAMPLE, MS. KOBIALKA REFERRED TO THE *MCAFFEE*

3    CASE.  IN THE *MCAFFEE* CASE, THE CLAIM CONSTRUED WAS THE

4    BROADER PHRASE OF "A LIST OF SUSPICIOUS COMPUTER OPERATIONS".

5    AND THE ENTIRE ISSUE THERE WAS THAT *MCAFFEE* TOOK THE POSITION

6    THAT "A LIST OF SUSPICIOUS COMPUTER OPERATIONS" SHOULD BE

7    CONSTRUED AS A LIST OF ALL SUSPICIOUS COMPUTER OPERATIONS.

8        AND THE JUDGE IN THE DISTRICT OF DELAWARE REJECTED THAT

9    CONSTRUCTION FINDING THAT THE ALL LIMITATION FOUND IN THE

10   SPECIFICATION WAS NOT APPROPRIATE FOR BEING READ INTO THE

11   CLAIM, AND I BELIEVE THAT'S FOOTNOTE 2.

12       AND THE JUDGE ADOPTED THE PLAIN AND ORDINARY MEANING, BUT

13   THE ISSUE OF WHAT "SUSPICIOUS" MEANS AND WHAT MAKES "COMPUTER

14   OPERATIONS SUSPICIOUS" WAS NOT ADDRESSED, AND AS FAR AS WE

15   COULD TELL, IT WAS NOT ADDRESSED BY ANY OTHER COURT EXCEPT THE

16   PTAB IN THE *SYMANTEC* CASE.

17       **THE COURT:**  WELL, IF THE COURT IN *MCAFFEE*, AND

18   LOOKING AT THE ORDER GAVE THE ENTIRE PHRASE ITS PLAIN AND

19   ORDINARY MEANING, DOESN'T THAT SUGGEST THAT THERE WAS NOTHING

20   WITHIN IT THAT REQUIRED CONSTRUCTION?

21       **MR. ELKHUNOVICH:**  THE POINT I'M MAKING, YOUR HONOR,

22   IS THAT NEITHER SIDE ADVOCATED FOR THE NEED OF CONSTRUCTION.

23       I MEAN, IN THESE PROCEEDINGS WE HAVE RULES THAT REQUIRE

24   CERTAIN STRATEGIC CALLS.  UNDER THIS COURT'S RULE, WE GET TEN

25   CLAIM TERMS TO CONSTRUE JOINTLY.  DIFFERENT COURTS HAVE

1    DIFFERENT RULES, SO THERE ARE STRATEGIC DECISIONS THAT GET

2    MADE ABOUT WHAT THE PARTIES WANT TO REQUEST THE COURT TO

3    CONSTRUE.

4        WE INITIALLY EXCHANGED TERMS FOR CLAIM CONSTRUCTION

5    PURSUANT TO THE LOCAL PATENT RULES, AND OUR LIST WAS MUCH

6    LONGER, BUT WE NARROWED IT DOWN TO TEN.  NOW, IT DOESN'T

7    MEAN -- SO IF THE COURT DOESN'T CONSTRUE THOSE OTHER TERMS, WE

8    CAN'T CITE TO YOUR HONOR'S CLAIM CONSTRUCTION DECISION AND

9    SAY, BECAUSE THE COURT DIDN'T CONSTRUE SUCH AND SUCH PHRASE,

10   WHICH WASN'T EVEN AT ISSUE, THAT MEANS THAT THE COURT HELD

11   THAT IT DESERVES PLAIN AND ORDINARY MEANING.

12       SO THE POINT I WAS TRYING TO MAKE, AND THERE'S A SUBTLE

13   DISTINCTION, IT IS NOT THAT NO COURT HAS EVER DEEMED A PHRASE

14   CONTAINING THE WORDS "A SUSPICIOUS COMPUTER OPERATION" PLAIN

15   AND ORDINARY, IT'S JUST THE ISSUE THAT WE HAVE IN THIS CASE OF

16   WHAT "SUSPICIOUS" MEANS WAS NEVER LITIGATED AS FAR AS WE KNOW,

17   EXCEPT AT THE *SYMANTEC* IPR.

18       SO OUR FIRST POSITION IS THAT THE CLAIM IS INDEFINITE.

19   THE ISSUE HERE REALLY IS WHAT IS SUSPICIOUS.  AND THE PATENT,

20   THE '494 PATENT DOESN'T TELL US ANYTHING ABOUT IT.

21       THE INCORPORATED PATENTS, THE '194 AND '780, TELL US A

22   LITTLE BIT ABOUT IT BY PROVIDING EXAMPLES OF WHAT KIND OF

23   OPERATIONS MAY BE INCLUDED INTO "A LIST OF SUSPICIOUS COMPUTER

24   OPERATIONS", BUT NONE OF THESE PATENTS ACTUALLY DESCRIBE THE

25   KEY ISSUE IN CYBER SECURITY AND VIRUS DETECTION, WHICH IS HOW

1    DO YOU DETERMINE IF SOMETHING IS SUSPICIOUS OR NOT.

2         AND OUR ARGUMENT ON INDEFINITENESS IS NOT THAT A PERSON OF

3    ORDINARY SKILL IN THE ART DOESN'T UNDERSTAND OR HAS NEVER

4    HEARD OF THE TERM; OUR ARGUMENT IS THAT A PERSON OF ORDINARY

5    SKILL IN THE ART WOULD NOT KNOW HOW TO APPLY THAT TERM

6    OBJECTIVELY.

7         IN OTHER WORDS, IF THE USER OF THIS PATENTED PROCESS, A

8    PERSON OF ORDINARY SKILL IN THE ART, WAS TO SET OUT TO

9    IMPLEMENT IT, THE DETERMINATION OF WHAT IS OR IS NOT

10   SUSPICIOUS WOULD BE LEFT ENTIRELY TO THEIR SUBJECTIVE DECISION

11   MAKING.

12        AND AS OUR EXPERT PROFESSOR SCHAEFER EXPLAINED, THAT

13   DETERMINATION IS NOT SOMETHING ABSOLUTE OR SOMETHING THAT IS

14   KNOWN A PRIORI -- AND I WILL GET TO THIS A PRIORI ARGUMENT

15   BECAUSE THAT COMES FROM THE *SYMANTEC* IPR, AND THAT'S ACTUALLY

16   THE POSITION TAKEN BY FINJAN THERE ALONG WITH THEIR CLAIM

17   CONSTRUCTION EXPERT THERE, MR. MEDVIDOVIC, WHO'S ALSO A CLAIM

18   CONSTRUCTION EXPERT HERE -- BUT THE POINT IS THERE IS NO

19   UNDERSTANDING IN THE FIELD OF, EITHER THEN NOR NOW, OF WHAT IS

20   SUSPICIOUS, AS FAR AS COMPUTER OPERATIONS GO, AND WHAT IS NOT.

21             **THE COURT:**  LET ME -- ON THIS ONE WE CAN PROBABLY CUT

22   TO THE CHASE.

23        THEIR EXPERT SAYS IT IS, YOURS SAYS IT ISN'T; I'LL HAVE TO

24   MAKE THAT ASSESSMENT.  GIVE ME YOUR BEST CASE INVOLVING A TERM

25   LIKE THIS ONE THAT HAS BEEN FOUND TO BE INDEFINITE.

1     IT STRIKES ME THAT "SUSPICIOUS", WITHIN THE CONTEXT OF

2   COMPUTER SECURITY, SEEMS DIFFERENT THAN THE TYPES OF CLAIMS

3   THAT HAVE BEEN FOUND TO BE INDEFINITE, THE TYPES OF TERMS.

4   WHAT CASE INVOLVING WHAT TERM DO YOU THINK IS YOUR BEST, MOST

5   ANALOGOUS AUTHORITY?

6        **MR. ELKHUNOVICH:**  YOU KNOW, YOUR HONOR, THE FEDERAL

7   CIRCUIT AUTHORITY IS THE *DATAMIZE* AND THE *INTERVAL* CASES, AND

8   THE *DATAMIZE* CASE.  THE TERM WAS "AESTHETICALLY PLEASING".  IN

9   THE *INTERVAL* CASE IT WAS "COMPUTER INTERFACES", AND THE

10   QUESTION WAS WHAT WAS AN UNOBTRUSIVE MANNER --

11        **THE COURT:**  ISN'T THAT -- IF THAT'S YOUR BEST CASE,

12   ISN'T THAT OBVIOUSLY SUBJECTIVE IN A WAY THAT "SUSPICIOUS" IN

13   THE CONTEXT OF COMPUTER SECURITY ISN'T?

14        **MR. ELKHUNOVICH:**  IT IS -- YOUR HONOR, YES, TO A LAY

15   PERSON, NO, TO A PERSON OF ORDINARY SKILL IN THE ART.

16     BECAUSE EVEN THOUGH WE ALL UNDERSTAND WAS WHAT

17   "SUSPICIOUS" MEANS, IT'S SOMETHING THAT YOU DON'T WANT THAT

18   YOU SUSPECT OF DOING SOMETHING BAD ON YOUR COMPUTER, THERE'S

19   NO OBJECTIVE WAY KNOWN TO DETERMINE IT.

20     IN FACT, THAT'S WHAT THESE CYBER SECURITY COMPANIES AND

21   VIRUS DETECTION COMPANIES COMPETE ABOUT.  THEY HAVE DIFFERENT

22   METHODOLOGIES FOR DETERMINING WHETHER ANY GIVEN COMPUTER

23   OPERATION IN THE CONTEXT -- AND THIS IS CRITICAL AND WHAT

24   DISTINGUISHES, YOU KNOW, THESE SIMPLER CASES LIKE *INTERVAL* AND

25   *DATAMIZE* FROM THIS CASE, THE CONTEXT MATTERS HERE.

1          IF WE LOOK AT THE SPECIFICATION TO WHICH FINJAN -- ON

2     WHICH FINJAN RELIES, WE HAVE A TABLE THERE THAT SAYS

3     "EXEMPLARY LIST OF COMPUTER OPERATIONS DEEMED SUSPICIOUS".

4     YOU WILL SEE ON THAT LIST THINGS LIKE WRITE, READ.  THESE ARE

5     BASIC COMPUTER OPERATIONS THAT ARE NOT IN ANY WAY INHERENTLY

6     SUSPICIOUS.  SO THE QUESTION IS, THEY CAN BE DEEMED

7     SUSPICIOUS, BUT THE QUESTION IS HOW.

8          SO THAT'S -- THAT'S OUR ARGUMENT THERE.  AND IN TERMS OF

9     MR. -- I'M SORRY, PROFESSOR MEDVIDOVIC'S TESTIMONY HERE ON

10    THIS ISSUE, HE DOES NOT EXPLAIN IN HIS DECLARATION HOW THIS

11    CAN BE DETERMINED OBJECTIVELY.  HE JUST SAYS A PERSON OF

12    ORDINARY SKILL IN THE ART WOULD UNDERSTAND THE TERM.

13         WELL, WE DON'T DISAGREE THAT A PERSON OF ORDINARY SKILL IN

14    THE ART UNDERSTANDS THE TERM, WE DISAGREE WITH THE FACT THAT

15    IT CAN BE OBJECTIVELY APPLIED.  AND HE DOESN'T SAY ANYTHING

16    ABOUT THAT.

17         SO MOVING ON TO THE SYMANTEC IPR.  *SYMANTEC* IPR GOES

18    DIRECTLY -- INDEFINITENESS WAS NOT AN ISSUE THERE, BUT IT GOES

19    DIRECTLY TO THIS ISSUE OF AN OBJECTIVE WAY OF DEFINING THIS

20    TERM, WHETHER IT BEING FINDING THAT IT IS IMPOSSIBLE TO DO SO

21    AND FINDING IT INDEFINITE OR CONSTRUING IT IN SOME WAY THAT

22    TAKES IT FROM A UNIVERSE OF BEING ENTIRELY SUBJECTIVE TO

23    SOMETHING OBJECTIVE.

24         AND MS. KOBIALKA SAID THERE IS NO MATERIAL DIFFERENCE

25    BETWEEN THE CONSTRUCTION ADVANCED IN THE IPR AND THE

1    CONSTRUCTION ADVANCED HERE.  WE DISAGREE.  *SYMANTEC* ADVANCED

2    PLAIN AND ORDINARY MEANING.  DR. MEDVIDOVIC SAID NO, IT IS

3    NOT, AND SPENT PAGES AND PAGES OF HIS DECLARATION AS WELL AS

4    THE PATENT HOLDER'S BRIEF IN THE PTAB EXPLAINING THAT THERE IS

5    NO A PRIORI KNOWLEDGE OF WHETHER ANY GIVEN COMPUTER OPERATION

6    IS OR IS NOT SUSPICIOUS, IS OR IS NOT HOSTILE OR WHATEVER

7    OTHER SUBJECTIVE WORD WE CAN SUBSTITUTE THERE.

8         AND MR. MEDVIDOVIC EXPLAINED THAT THE KEY ASPECT OF THE

9    INVENTION IN THESE PATENT CLAIMS IS THAT THE FIRST STEP BEFORE

10   ANY COMPUTER OPERATION WOULD BE INCLUDED ON THIS LIST IN THE

11   SECURITY PROFILE, THE GSP, THERE NEEDS TO BE A PRIORI

12   DETERMINATION THAT IT EITHER IS OR IS NOT SUSPICIOUS, WHICH IS

13   WHY FINJAN IN THAT CASE BEFORE THE PTAB ADVANCED THE CLAIM

14   CONSTRUCTION OF... I WANT TO MAKE SURE I GET IT EXACTLY RIGHT,

15   A LIST OF SUSPICIOUS COMPUTER OPERATIONS IS PROPERLY CONSTRUED

16   AS A LIST OF COMPUTER OPERATIONS DEEMED SUSPICIOUS.

17        AND THIS IS EXHIBIT A, FINJAN'S BRIEF AT THE PTAB, PAGE 9

18   AND EXCERPTED ON PAGE 5 OF THE PRESENTATION I HANDED UP.  THE

19   PATENT OWNER ARGUED THAT THE '494 PATENT REQUIRES THIS

20   CONSTRUCTION SPECIFICALLY THAT THE OPERATIONS ARE DEEMED TO BE

21   SUSPICIOUS.

22        AND IT REFERENCES THE '194 PATENT SPECIFICATION AND

23   EXPLAINS HOW GENERATING THE LIST OF SUSPICIOUS COMPUTER

24   OPERATIONS FIRST REQUIRES THAT A DETERMINATION BE MADE AS TO

25   WHETHER THE OPERATIONS TO BE LISTED ARE SUSPICIOUS.

```
1        OUR CLAIM CONSTRUCTION, I DON'T THINK IT'S CONFUSING, BUT

2   IT COMES DIRECTLY FROM FINJAN AND MR. MEDVIDOVIC IN HIS

3   DECLARATION IN THAT CASE.  WE DID NOT INVENT IT.  WE DID NOT

4   FINESSE IT.  WE TOOK IT STRAIGHT OUT OF THERE.

5        BUT AT A MINIMUM, IF THERE IS NO MATERIAL DIFFERENCE

6   BETWEEN THEIR POSITION THERE AND POSITION HERE, WE WOULD TAKE

7   AS A COMPROMISE POSITION WHAT THEY ADVANCED, "A LIST OF

8   COMPUTER OPERATIONS DEEMED SUSPICIOUS".  BECAUSE AT A MINIMUM,

9   IF THE COURT WAS NOT TO FIND PERSUASIVE THE ARGUMENT THAT THE

10  CLAIM IS INDEFINITE AND THERE IS NO OBJECTIVE WAY TO APPLY THE

11  SUSPICIOUS INQUIRY, THE COURT SHOULD INTERPRET THE TERM IN

12  SOME OBJECTIVE WAY, AND THE ONLY WAY TO DO THAT IS TO ADD THIS

13  "DEEMED" STEP.

14       AND THIS IS WHAT SYMANTEC IPR WAS ALL ABOUT.  THIS WAS

15  FINJAN'S ARGUMENT, AND WE 100 PERCENT AGREE WITH IT.

16            THE COURT:  ALL RIGHT.  NO FURTHER QUESTIONS ON THAT

17  ONE.

18            MR. ELKHUNOVICH:  THANK YOU, YOUR HONOR.

19            MS. KOBIALKA:  MAY I BRIEFLY RESPOND?

20            THE COURT:  I WOULD -- YOU MAY, AND I WOULD LIKE YOU

21  TO... SEE, THIS IS THE CHALLENGE AGAIN.  YOU ALL HAVE BEEN

22  DOING THINGS ON TEN PARALLEL TRACKS.

23       I DON'T HAVE ANY VISIBILITY INTO NOW I AM TRYING TO

24  RECONSTRUCT THE RECORD.  YOU ARE CLAIMING IT DOESN'T REALLY

25  MATTER.  WHY ARE THEY NOT RIGHT THAT WHAT DR. MEDVIDOVIC SAID
```

```
1    IN THE SYMANTEC IPR OUGHT TO BIND YOU HERE?

2         MS. KOBIALKA:  SO THE CONTEXT IS GOING TO MATTER IN

3    THE IPR BECAUSE THEY'RE -- THERE WAS -- SYMANTEC WAS TRYING TO

4    READ OUT THE SUSPICIOUS LIMITATION IN ORDER TO HAVE PRIOR ART

5    READ ON --

6         THE COURT:  STEPPING BACK, EVERYONE'S MOTIVE WAS TO

7    GAIN ADVANTAGE IN THE MOMENT, AND IT STILL IS, INCLUDING RIGHT

8    HERE TODAY.

9       BUT SETTING ASIDE THE CONTEXT, THIS WAS A STRAIGHTFORWARD

10   STATEMENT.  WHY SHOULD YOU NOT BE HELD TO THE STATEMENT THAT

11   YOU MADE IN THAT PROCEEDING, YOUR EXPERT MADE UNDER OATH IN

12   THAT PROCEEDING?

13        MS. KOBIALKA:  SO, FIRST OF ALL, THE STATEMENT THAT

14   THEY ARE REFERRING TO IS TAKEN OUT OF CONTEXT.  AND THE IPR

15   COURT FOUND THAT IT WAS ULTIMATELY NOT NECESSARY.  IT WASN'T

16   VERY HELPFUL --

17        THE COURT:  BUT THE CONTEXT IS YOUR EXPERT SAID, A

18   LIST OF SUSPICIOUS COMPUTER OPERATIONS IS PROPERLY CONSTRUED

19   AS, AND THEN THERE'S A PHRASE.  SO WHY SHOULD I NOT FIND THAT

20   THAT PHRASE IS PROPERLY CONSTRUED AS DR. MEDVIDOVIC SAID?

21        MS. KOBIALKA:  DEEMED -- THAT IT WOULD BE DEEMED

22   HOSTILE?

23        THE COURT:  YES.

24        MS. KOBIALKA:  IT DOESN'T -- LIKE I SAID, IT DOESN'T

25   ACTUALLY MAKE A MATERIAL DIFFERENCE.  WE WERE GOING WITH PLAIN
```

AND ORDINARY MEANING BECAUSE WE HAVE CONSISTENTLY TAKEN THAT

POSITION, THAT PLAIN AND ORDINARY MEANING WAS APPROPRIATE FOR

THIS.

THESE ARE ISSUES THAT ARE UP ON APPEAL.  IT HAS BEEN

APPEALED BY THE BOTH SIDES.  THERE'S SOME DIFFERENT ISSUES

THAT ARE STILL PENDING, AND ARGUMENT, I SUSPECT, WILL BE HEARD

ON IT.

BUT IT'S NOT A DISAVOWAL.  IT'S NOT A COMPLETE CHANGE IN

THE POSITION.  I DON'T THINK IT MAKES A MATERIAL DIFFERENCE IN

TERMS OF WHAT THE TERM IN AND OF ITSELF MEANS.

IT DOES ADD IN JUST -- MORE POTENTIAL CONFUSION FOR IT,

AND OUR OBJECTION WAS REALLY TO A LOT OF THE OTHER LANGUAGE

THAT I IDENTIFIED, WHICH WENT TO "ALL COMPUTER OPERATIONS",

THE SUBSET, AND THEN THE INCLUSION "PRIOR TO THE LIST".  I

MEAN, THAT WAS REALLY THE HEART OF OUR OBJECTIONS THERE.

BUT THEIR BASIS IS THAT WE SOMEHOW DONE A DISCLAIMER OR

DISAVOWAL, AND THE DISAVOWAL IS SOMETHING YOU ARE GOING TO

GET -- IT'S GOING TO BE MUCH MORE DISTINCT.  I MEAN, YOU'RE

GOING TO SEE A STATEMENT SAYING THAT THIS IS NO LONGER WHAT WE

MEANT OR THIS IS WHAT'S IN THE PRIOR ART; THAT'S NOT WHAT'S

GOING ON HERE.  IT WAS JUST AN EXPLANATION AS TO WHAT THE

PLAIN AND ORDINARY MEANING IS WHICH ISN'T ANY DIFFERENT THAN

HOSTILE OR POTENTIALLY HOSTILE.

**THE COURT:**  OKAY.

**MS. KOBIALKA:**  AND TO ADDRESS SOME OF THE OTHER

1    ARGUMENTS REGARDING THE INDEFINITENESS.

2        "MALICIOUS" AND "MALICIOUS ACTIVITIES", THAT TERM IN AND

3    OF ITSELF IS USED THROUGHOUT THE SECURITY INDUSTRY, AND WE HAD

4    EVEN CITED PLACES WHERE BITDEFENDER THEMSELVES USE IT AS THEY

5    MARKET THEIR OWN PRODUCTS.  THEY TALK ABOUT SUSPICIOUS

6    ACTIVITIES.

7        IN TERMS OF THE PATENT DISCLOSURE ITSELF, THERE WAS A

8    REFERENCE MADE TO WHAT SUPPORT THERE WAS IN THE INTRINSIC

9    EVIDENCE.  AND IN THE SLIDES I PROVIDED, SLIDE 5, HE MADE

10   REFERENCE -- OPPOSING COUNSEL MADE REFERENCE TO AN EXAMPLE

11   LIST OF OPERATIONS DEEMED POTENTIALLY HOSTILE.  BUT HE DIDN'T

12   ACTUALLY READ THE VARIOUS OPERATIONS CORRECTLY.

13       IT WASN'T JUST READING A FILE.  THESE ARE OPERATIONS THAT

14   ARE COMING IN THAT MAY NOT BE VIEWED BY THE USER, YOU MAY NOT

15   BE AWARE THAT SOMEONE IS TRYING TO ACCESS INFORMATION OR

16   CHANGE INFORMATION ON YOUR COMPUTER.  SO THE LIST OF

17   POTENTIALLY HOSTILE OPERATIONS WOULD BE READING A FILE,

18   WRITING A FILE, DOING SOMETHING THAT YOU'RE NOT GOING TO BE

19   AWARE OF.

20       SO THERE IS SUFFICIENT DISCLOSURE.  IT'S NOT A COMPLETELY

21   INDEFINITE, AND ONE OF ORDINARY SKILL WOULD UNDERSTAND THAT.

22          **THE COURT:**  I CAN PROBABLY SAVE US TIME.  I DON'T

23   HAVE ANY QUESTION -- THE TURNING QUESTION WILL NOT BE

24   INDEFINITENESS.  IT WAS THE DISCUSSION WE JUST HAD.

25          **MS. KOBIALKA:**  FAIR ENOUGH, YOUR HONOR.  WE CAN MOVE

1    ON TO THE NEXT TERM BECAUSE I KNOW TIME IS PRECIOUS.

2        SO THE NEXT TERM AT ISSUE IS THE "DOWNLOADABLE SCANNER

3    COUPLED WITH SAID RECEIVER FOR DERIVING SECURITY PROFILE DATA

4    FOR THE DOWNLOADABLE".  I HAVE THE CONSTRUCTIONS COMPARED ON

5    SLIDE 6 IF YOU WOULD LIKE TO TAKE A LOOK AT THEM FOR YOUR

6    REFERENCE.

7        SO HERE THERE'S A DISPUTE AS TO WHETHER IT'S A

8    MEANS-PLUS-FUNCTION ELEMENT.  TO THE EXTENT IT'S NOT A

9    MEANS-PLUS-FUNCTION, WHAT IS, IN FACT, THE APPROPRIATE

10   CONSTRUCTION FOR THE TERM.

11       THE FIRST ANALYSIS IF YOU ARE EVER GOING TO SUGGEST IT IS

12   A MEANS-PLUS-FUNCTION ELEMENT, IS YOU'RE GOING TO LOOK TO THE

13   CLAIM LANGUAGE ITSELF AND YOU'RE GOING TO HAVE TO MAKE A

14   DETERMINATION AS TO WHETHER OR NOT THERE WAS A COMMONLY

15   UNDERSTOOD MEANING.

16       AND THE FOCUS THE DEFENDANTS HAVE MADE HERE IS ON THE WORD

17   "SCANNER".  THEY HAVE FOCUSED SPECIFICALLY ON THAT, AND THEY

18   HAVE NOT REALLY LOOKED AT THE REMAINING ELEMENTS OF THE CLAIM.

19   IT DOESN'T APPEAR THAT THEY HAVE EVEN CONSTRUED THAT IN THEIR

20   ALTERNATIVE CONSTRUCTION.

21       BUT "SCANNER" IS A WELL-KNOWN TERM.  EVEN THEIR EXPERT

22   UNDERSTOOD WHAT THAT TERM WAS AND HAD SAID THAT IT CAN BE

23   SOFTWARE OR HARDWARE WITH SOFTWARE.  SO IT'S SOFTWARE AND/OR

24   HARDWARE.  SO IT'S A COMMONLY WELL-KNOWN TERM.

25       AND IN THE SPECIFICATION ITSELF, THERE'S A REFERENCE, AND

1    THAT'S ON SLIDE 7 THAT WE PROVIDED THERE, JUST IN GENERAL THAT

2    THE ELEMENTS OF THE SYSTEM CAN BE IMPLEMENTED IN HARDWARE AND

3    SOFTWARE OR SOME SUITABLE COMBINATION THEREOF.  AND SO THAT'S

4    JUST WITHIN THE CONTEXT OF THE PATENT IN AND OF ITSELF.

5        WHAT'S REALLY IMPORTANT IS THAT YOU HAVE STRUCTURE.  IF

6    YOU LOOK TO THE CLAIM ITSELF, THE CLAIM PROVIDES THAT

7    STRUCTURE THAT YOU WOULD LOOK TO FOR THE DOWNLOADABLE SCANNER

8    ELEMENT OVERALL.

9        AND HERE IT'S NOT JUST A SCANNER, IT'S A DOWNLOADABLE

10   SCANNER.  SO YOU ARE GOING TO HAVE A SCANNER THAT WILL BE ABLE

11   TO SCAN AT THE VERY LEAST A DOWNLOADABLE.  IT'S GOING TO GO

12   THROUGH IT, AND IT DERIVES SECURITY PROFILE DATA FOR THE

13   DOWNLOADABLE THAT'S GOING TO INCLUDE THIS LIST OF SUSPICIOUS

14   COMPUTER OPERATIONS.  SO YOU HAVE A SPECIFIC TYPE OF STRUCTURE

15   HERE, SPECIFIC TYPE OF SCANNER, AND IT IS COUPLED WITH OTHER

16   ELEMENTS, SUCH AS THE RECEIVER AND THE DATABASE MANAGER.

17       IF YOU LOOK AT THE CLAIMS IN TOTAL OF THIS PATENT, YOU

18   HAVE ALL OF THESE ELEMENTS AND THE STRUCTURE THERE.  THIS IS

19   NOT JUST A FUNCTION -- THERE'S SOME FUNCTION IN IT, BUT THAT

20   IN AND OF ITSELF IS INSUFFICIENT TO SAY THAT IT SHOULD BE A

21   MEANS-PLUS-FUNCTION CLAIM ELEMENT.  YOU CAN'T MORPH IT INTO

22   THAT.

23       THERE WAS A RECENT DECISION THAT JUST CAME DOWN, I THINK A

24   DAY OR TWO AGO, AND THAT WAS THE *ZERO CLICK VERSUS APPLE* CASE.

25   AND THEY REINFORCED THIS NOTION THAT JUST BECAUSE YOU HAVE

```
1     FUNCTIONAL LANGUAGE, THAT DOESN'T MEAN SOMEHOW IT'S GOING TO

2     BE MEANS-PLUS-FUNCTION.  YOU'VE REALLY GOT TO FIND WHAT THEY

3     CALL THAT NONCE TERM.

4         AND THAT HAS NOT BEEN DONE HERE BECAUSE WITH RESPECT TO

5     "SCANNER", WHICH IS THE WORD THAT THEY ARE ATTEMPTING TO MAKE

6     A MEANS-PLUS-FUNCTION ELEMENT, IT'S WELL KNOWN IN THE ART

7     INCLUDING WITH RESPECT TO THEIR OWN EXPERT.  I BELIEVE AT

8     PARAGRAPH 30, DR. SCHAEFER INDICATES HE KNOWS WHAT A SCANNER

9     IS.  HE EVEN CITES TO A NUMBER OF DIFFERENT COMPUTER

10    DICTIONARIES.

11        SO THAT FIRST ANALYSIS THAT YOU WOULD HAVE IN ORDER TO

12    EVEN SUGGEST THAT YOU HAVE A 112(6) OR MEANS-PLUS-FUNCTION

13    CLAIM ELEMENT SIMPLY DOESN'T EXIST IN THIS PARTICULAR

14    INSTANCE, AND YOU HAVE TO REALLY READ IT WITHIN THE COMPLETE

15    CONTEXT OF THE CLAIM THAT GIVES THE ENTIRE STRUCTURE AS WELL

16    AS IN THE CONTEXT OF THE SPECIFICATION ITSELF.

17        NOW, THE ALTERNATIVE CONSTRUCTION THAT THEY HAVE IS "A

18    CODE SCANNER".  AND IT GOES ON, THAT PARSES TECHNIQUES AND

19    DOES DECOMPOSING CODE, AND WHATNOT.  IT INTRODUCES QUITE A FEW

20    OTHER LIMITATIONS THAT DON'T APPEAR IN THE PATENTS OR IN THE

21    CLAIMS THEMSELVES.  AND IT REALLY APPEARS TO JUST BE A

22    CONSTRUCTION OF THE WORD "SCANNER".  THEY DON'T SEEM TO BE

23    ADDRESSING DOWNLOADABLE.  THEY'RE NOT ADDRESSING THE RECEIVER

24    ELEMENT FOR DRIVING SECURITY PROFILE DATA FOR THE DOWNLOADABLE

25    EVEN THOUGH THAT IS THE CLAIM TERM IN DISPUTE.
```

1       AND THERE'S REALLY NO SUPPORT WHATSOEVER THAT THEY CAN

2   CITE FOR THIS IDEA OF PARSING AND DECOMPOSING.  BUT WHAT'S

3   MOST PROBLEMATIC IS IT'S ACTUALLY CONTRARY TO THE STIPULATED

4   CONSTRUCTION THAT WE HAVE.  YOU CAN'T HARMONIZE THE TWO UNLESS

5   YOU ARE SOMEHOW NARROWING NOW WHAT THE PARTIES HAVE AGREED

6   WOULD BE THE APPROPRIATE CONSTRUCTION FOR "DOWNLOADABLE".

7       LET ME EXPLAIN THAT.  SO FOR THE "DOWNLOADABLE"

8   CONSTRUCTION, IT WAS SUPPOSED TO INCLUDE EXECUTABLES, BINARY

9   EXECUTABLES LIKE WORD.  AND THOSE TYPICALLY DON'T REQUIRE

10  PARSING.  SO BY VIRTUE OF THIS ALTERNATE CONSTRUCTION, THEY

11  ARE ATTEMPTING TO REALLY NARROW THE ENTIRE CLAIM IN AND OF

12  ITSELF, AND THEY ARE IMPORTING THESE LIMITATIONS THAT JUST

13  DON'T EXIST.

14      THERE ISN'T SUPPORT IN THE SPECIFICATION OR ANYTHING FOR

15  PARSING OR DECOMPOSING CODE IN THE MANNER THAT THEY ARE TRYING

16  TO DO THAT.

17      DID YOU HAVE ANY --

18      **THE COURT:**  I DON'T OTHER THAN I KNEW YOU WOULD BE

19  DELIGHTED WITH THE TIMING OF THE *ZERO CLICK* DECISION.

20      **MS. KOBIALKA:**  THANK YOU.  I HAVE A COPY, TOO.  IT

21  SOUNDS LIKE YOU ARE WELL AWARE.

22      **THE COURT:**  I'VE GOT ONE.  THANKS.

23      WHY DON'T WE HEAR FROM THE DEFENDANT.

24      **MR. ELKHUNOVICH:**  YES, THANK YOU, YOUR HONOR.  YOUR

25  HONOR, A COUPLE OF ISSUES.

1    FIRST OF ALL, JUST A CLARIFICATION.  OUR EXPERT DID NOT

2  TESTIFY THAT A SCANNER IN THIS -- IN THE CONTEXT OF THIS

3  PATENT CAN BE SOFTWARE OR HARDWARE.  IN FACT, IT'S PRETTY

4  CLEAR IT CANNOT BE HARDWARE, AND FINJAN HAS PREVIOUSLY AGREED

5  TO AS MUCH BECAUSE IT HAS TO BE PROGRAM OR PROGRAMS.

6    BUT PUTTING THAT ASIDE, WE BRIEFED THE ISSUES OF CLAIM

7  CONSTRUCTION 112(6) AND OUR ALTERNATIVE CLAIM CONSTRUCTION.  I

8  THINK WE LAID IT OUT IN THE BRIEF, AND I WAS GOING TO TALK

9  ABOUT IT IN THE SAME ORDER, BUT I JUST WANT TO TAKE A STEP

10  BACK BECAUSE I THINK WE HAVE A REALLY INTERESTING KIND OF

11  CIRCUMSTANCE AS A RESULT OF MULTIPLE PARALLEL PROCEEDINGS AND

12  THE HISTORY OF THOSE PROCEEDINGS AND WHAT HAS HAPPENED HERE.

13    AND IN PARTICULAR, I'M REFERRING TO THE *BLUE COAT II* AND

14  THE *SOPHOS* 101 ORDERS.  ONE WAS IN THE CONTEXT OF A SUMMARY

15  JUDGMENT AND THE OTHER ONE, I THINK, WAS IN THE CONTEXT OF

16  POST-TRIAL MOTIONS.

17    THE *BLUE COAT II*, I BELIEVE, WAS FIRST, *SOPHOS* FOLLOWED

18  IT.  JUDGE ORRICK EFFECTIVELY INCORPORATED MUCH OF JUDGE

19  FREEMAN'S DECISION AND QUOTED ACTUALLY PAGES OF HER

20  DESCRIPTIONS AND HOLDINGS, SO WE CAN TALK ABOUT THEM AS ONE, I

21  THINK.  I DON'T THINK THERE'S ANY MATERIAL DIFFERENCE BETWEEN

22  THE TWO.

23    AND THE ISSUE THERE WAS WHETHER OR NOT THIS PATENT IS

24  ELIGIBLE UNDER *ALICE*.  AND BOTH COURTS FOUND THAT UNDER

25  STEP 1, THE PATENT CLAIMS WERE DRAWN TO AN ABSTRACT IDEA, AND

1    THEN THE PATENTS GOT SAVED THROUGH STEP 2.

2        AND IN ORDER TO SAVE THE PATENTS IN STEP 2, FINJAN ARGUED

3    FOR AN INVENTIVE CONCEPT CONTAINED IN THE PATENTS.  BECAUSE

4    THE CLAIMS ALONE AS THEY ARE WRITTEN ARE EXTREMELY BROAD, BUT

5    JUDGE FREEMAN FOUND TWO ASPECTS OF THE INVENTIVE CONCEPT HERE,

6    ONE SPACIAL AND ANOTHER TEMPORAL AS SHE CALLED IT.

7        AND THE TEMPORAL ASPECT -- THIS ON PAGE 11 OF HER

8    DECISION -- IS REALLY KEY HERE.  BECAUSE IN ORDER TO FIND THAT

9    THERE WAS AN INVENTIVE CONCEPT HERE, JUDGE FREEMAN CONSTRUED

10   THE TERM.  AND SHE CONSTRUED THE TERM BY EXPLAINING THAT --

11   AND THIS IS THE TEMPORAL PART ABOUT THIS -- IN THE PRIOR ART

12   AND IN THE MOST ABSTRACT SENSE, YOU HAD SCANNING SYSTEMS THAT

13   WOULD SCAN FILES IN YOUR COMPUTER.

14          **THE COURT:**  HOLD ON.  WE COULD GET PRETTY FAR AFIELD

15   ON THIS.  THOSE WERE, AS YOU'RE SAYING, 101 ISSUES.

16       RIGHT NOW WE'VE GOT AN INDEFINITE -- WE'VE GOT A

17   MEANS-PLUS-FUNCTION ISSUE AND THEN WE'VE GOT YOUR ALTERNATE

18   PROPOSED CONSTRUCTION IF I DISAGREE WITH YOU.

19       HOW DOES ANYTHING THAT HAPPENED IN *BLUE COAT* REALLY MATTER

20   IN THAT SENSE?

21          **MR. ELKHUNOVICH:**  SURE, YOUR HONOR.  THE REASON IT

22   MATTERS, I MEAN, FUNDAMENTALLY, BECAUSE JUDGE FREEMAN

23   CONSTRUED THE TERM --

24          **THE COURT:**  WHERE IN THE ORDER SPECIFICALLY DO YOU

25   CONTEND SHE CONSTRUED THE TERM?

1          **MR. ELKHUNOVICH:**  SO ON PAGE 11 OF THE ORDER?

2          **THE WITNESS:**  THIS IS THE JUNE 2ND, 2015 *BLUE COAT*

3    ORDER OR THE --

4          **MR. ELKHUNOVICH:**  THIS IS THE ONE SIGNED ON

5    DECEMBER 13TH, 2016.

6          **THE COURT:**  ALL RIGHT.  SO WHERE DO YOU CLAIM THAT

7    THERE WAS A CONSTRUCTION IN THAT ORDER?

8          **MR. ELKHUNOVICH:**  SO JUDGE FREEMAN SAID WITH

9    REFERENCE TO THE PROCESS DESCRIBED IN THE PATENT NEEDING TO

10   DECOMPOSE THE EXECUTABLE BEFORE SCANNING IT, SHE SAID:

11             "ALTHOUGH THIS PROCESS IS NOT LAID OUT IN THE CLAIMS

12             THEMSELVES, THE COURT FINDS THAT DERIVING SECURITY

13             PROFILE DATA, IF CONSTRUED IN LIGHT MOST FAVORABLE TO

14             FINJAN, AT LEAST REQUIRES A PROCESS OF PARSING

15             THROUGH A DOWNLOADABLE AND CREATING A LIST OF ALL

16             POTENTIALLY SUSPICIOUS COMPUTER OPERATIONS."

17         **THE COURT:**  BUT ISN'T THAT DIFFERENT?  THIS WAS A

18   SUMMARY JUDGMENT 101 QUESTION THAT WAS PRESENTED TO HER,

19   CORRECT?

20         **MR. ELKHUNOVICH:**  CORRECT.

21         **THE COURT:**  SO WHEN SHE SAID -- ISN'T THAT -- ISN'T

22   THAT JUST A VARIANT OF THE USUAL SUMMARY JUDGMENT STANDARD

23   THAT ALL INFERENCES ARE MADE IN THE NONMOVING PARTIES' FAVOR?

24       IS THERE ANY INDICATION THAT JUDGE FREEMAN, HERSELF,

25   THOUGHT THAT SHE WAS BEING ASKED TO ENGAGE IN A CLAIM

1    CONSTRUCTION EXERCISE?

2         **MR. ELKHUNOVICH:**  I THINK SO, YOUR HONOR, BECAUSE THE

3    CLAIM CONSTRUCTION IS AN ISSUE OF LAW.  WE WERE ACTUALLY

4    DEBATING, YOU KNOW, WHAT THIS PHRASE EVEN MEANT "IN LIGHT MOST

5    FAVORABLE TO FINJAN" BECAUSE SHE'S CONSTRUING THE TERM.  SO

6    WHETHER YOU DO IT IN THE LIGHT MOST FAVORABLE TO FINJAN OR

7    NOT, I'M NOT SURE THAT REALLY MATTERS, BUT IT CERTAINLY, I

8    DON'T THINK, HURTS THE POSITION.

9         BUT OUR POINT IS THAT SHE'S REFERRING HERE TO COLUMN 9,

10   LINES 20 TO 42 IN FIGURE 7 AND EXPLAINING THAT "THIS IS THE

11   ONLY EMBODIMENT THAT DISCLOSES THE PRECISE PROCESS FOR

12   DECOMPOSING CODE AND EXTRACTING OPERATIONS", I QUOTE, AND THEN

13   SHE CONCLUDES THAT... THAT DOES, A PERSON OF ORDINARY SKILL IN

14   THE ART WOULD UNDERSTAND DERIVING SECURITY PROFILE DATA TO

15   REFER TO THIS TYPE OF PROCESS.

16        AND BASED ON THAT, SHE CONCLUDES THAT THIS PROVIDED FOR A

17   BETTER, MORE EFFECTIVE MALWARE DETECTION, AND THIS WAS PART OF

18   THE INVENTIVE CONCEPT HERE.

19        SO IF WE READ --

20        **THE COURT:**  SO WE ALL KNOW THAT PRIOR COURT'S

21   CONSTRUCTIONS ARE SIGNIFICANT TO ME, ESPECIALLY IF THEY COME

22   FROM WITHIN THE DISTRICT, BUT IT SEEMS LIKE WE ARE SPENDING A

23   LOT OF TIME CHARACTERIZING THIS.

24        IT'S NOT CLEAR TO ME ON ITS FACE THAT THIS IS EVEN A

25   CONSTRUCTION.  THIS DIDN'T SEEM TO ME TO BE THE THRUST OF YOUR

1    BRIEF, WHICH WAS MEANS-PLUS-FUNCTION AND THEN YOU HAD AN

2    ALTERNATIVE CONSTRUCTION.

3        HOW DOES THIS ARGUMENT YOU ARE MAKING FIT INTO EITHER OF

4    THOSE BUCKETS?

5            **MR. ELKHUNOVICH:**  SO WE DID REFERENCE THIS DECISION,

6    AND BOTH SIDES DID, IN FACT, BUT THAT THE REASON THIS

7    MATTERS -- SO MAYBE -- MAYBE I SHOULDN'T HAVE REVERSED THE

8    ORDER OF MY ARGUMENT.

9            **THE COURT:**  RIGHT.

10       I WILL LOOK AT JUDGE FREEMAN'S DECISION THROUGH THE LENS

11   OF DECIDING IF I AGREE WITH YOU THAT I COULD READ IT AS A

12   CONSTRUCTION, AND THEN I WILL DECIDE THAT EVEN IF IT WAS A

13   CONSTRUCTION, WHETHER I WILL ADOPT IT OR NOT.

14       BUT IS THAT THE WHOLE POINT OF THIS?  BECAUSE I UNDERSTOOD

15   THAT TO BE --

16           **MR. ELKHUNOVICH:**  YEAH.

17           **THE COURT:**  -- THE ISSUE FROM YOUR PAPERS.

18           **MR. ELKHUNOVICH:**  YES, YOUR HONOR.

19       THE POINT WAS THAT, ONE, WE BELIEVE THE TERM WAS CONSTRUED

20   HERE.  TWO, IF IT IS CONSTRUED MORE BROADLY, EITHER IT'S

21   ABSTRACT -- WELL, WE KNOW IT'S ABSTRACT BASED ON THESE

22   DECISIONS, OBVIOUSLY THEY ARE NOT PRECEDENTIAL, BUT ASSUMING

23   FOR A SECOND THEY ARE PERSUASIVE, AND IN ORDER TO SAVE THE

24   CLAIMS, FINJAN ARGUED FOR THESE LIMITATIONS.  AND JUDGE

25   FREEMAN AND THEN JUDGE ORRICK FOUND THOSE ARGUMENTS PERSUASIVE

1    AND ACCEPTED THEM.

2        BUT GOING BACK TO THE SORT OF MORE TRADITIONAL CLAIM

3    CONSTRUCTION APPROACH, THE -- WHICHEVER WAY WE GO, WHETHER

4    IT'S MEANS-PLUS-FUNCTION OR THROUGH THE SPECIFICATION IN

5    TRYING TO UNDERSTAND THIS TERM "SCANNER", THE POINT IS TIED

6    BACK TO THIS FUNDAMENTAL FINDING THAT JUDGE FREEMAN MADE OF

7    WHAT THIS PATENT IS ABOUT.

8        AND WHAT THIS PATENT IS ABOUT IS NOT JUST ANY OLE SCANNING

9    THAT WAS KNOWN IN THE PRIOR ART OR THAT WOULD BE CONSISTENT

10   WITH THE DICTIONARY DEFINITION OF THE PRIOR ART AS A PERSON OF

11   ORDINARY SKILL IN THE ART WOULD UNDERSTAND IT, BUT QUITE

12   SOMETHING DIFFERENT WHERE INSTEAD OF PATTERN MATCHING FILES ON

13   YOUR COMPUTER, YOU HAVE FIRST DISASSEMBLING OR DECOMPOSING THE

14   EXECUTABLE INTO ITS COMPONENTS, AND THEN SCANNING THOSE

15   COMPONENTS.

16       AND THE CONSTRUCTION COMES DIRECTLY FROM THE

17   SPECIFICATION.  PATENT '194, COLUMN 5, 42 THROUGH 56,

18   DESCRIBES THE SCANNER IN A WAY THAT WE ARE PROPOSING TO DEFINE

19   IT.  AND WHETHER YOU DO IT THROUGH CLAIM CONSTRUCTION BY

20   REFERRING TO THE SPECIFICATION OR THROUGH 112(6) PROCESS, THE

21   RESULT WE ARE SEEKING IS THE SAME.

22           **THE COURT:**  AND THEY ARE ARGUING THAT, WITH SOME

23   PERSUASIVE FORCE, THAT YOU ARE TRYING TO IMPORT EXTRINSIC

24   LIMITATIONS FROM THE SPECIFICATION IN A WAY THAT'S NOT

25   PERMITTED UNDER FEDERAL CIRCUIT LAW.

1    AND SO I'LL HAVE TO DECIDE WHETHER I AGREE WITH THEM ON

2    THAT OR NOT.

3         **MR. ELKHUNOVICH:**  SURE.

4         **THE COURT:**  WHY, IN YOUR VIEW, IS THIS NOT SORT OF

5    VERY STRAIGHTFORWARD BLACK LETTER IMPORTATION OF EXTRINSIC

6    LIMITATIONS THAT DON'T APPEAR IN THE CLAIMS?

7         **MR. ELKHUNOVICH:**  SO WE HAVE TO THEN COME BACK TO

8    SCANNER, AND WHAT A PERSON OF ORDINARY SKILL IN THE ART AT THE

9    TIME WOULD UNDERSTAND SCANNER TO MEAN.

10    AND AT BEST, AS PROFESSOR SCHAEFER TESTIFIED, BY LOOKING

11    AT EXTRINSIC EVIDENCE AT THAT TIME, A PERSON OF ORDINARY SKILL

12    IN THE ART WOULD UNDERSTAND A SCANNER TO BE SOMETHING THAT

13    SCANS FILES IN THEIR COMPUTER FOR PATTERN MATCHING.

14    A PERSON OF ORDINARY SKILL IN THE ART WOULD NOT UNDERSTAND

15    THE SCANNER TO BE WHAT IS DESCRIBED HERE.  AND IF YOU LOOK AT

16    THE CLAIM ITSELF, YOU DON'T HAVE MUCH OTHER THAN THE SCANNER.

17    AND MR. -- I'M SORRY, PROFESSOR MEDVIDOVIC TESTIFIED

18    RECENTLY IN THE *CISCO* CASE.

19    "WHAT IS THE SCANNER?"

20    "A SCANNER IS SOMETHING THAT SCANS," HE SAID, QUOTE.

21    AND THEN WHEN ASKED WHAT THE SCANNER MEANS -- AND THEN HE

22    EXPLAINED THAT CONTEXT MATTERS.  AND DEPENDING ON WHAT YOU ARE

23    SCANNING, YOU HAVE TO DESCRIBE IT SOME MORE.

24    SO HE GAVE AN EXAMPLE OF PRE-EXISTING SCANNERS IN PRIOR

25    ART FOR COMPILING.  THOSE ARE ONE TYPE OF SCANNERS.  AND THEN

```
1    HE TALKED ABOUT THE SCANNER IN THE CONTEXT OF THIS INVENTION
2    AND HE REALLY TALKED SOLELY ABOUT NOT THE STRUCTURE OF THE
3    SCANNER, BUT HOW IT INTERACTS WITH OTHER COMPONENTS OF THE
4    SYSTEM.
5         AND OPPOSING COUNSEL'S ARGUMENT WAS, AS I UNDERSTOOD IT,
6    WAS ALL ABOUT THAT; THEY ARE TRYING TO FIND STRUCTURE FROM
7    MODIFICATION DOWNLOADABLE.  BUT THAT MODIFICATION DOESN'T GIVE
8    ANY STRUCTURE TO THE CLAIM, IT JUST EXPLAINS WHAT THE SCANNER
9    SCANS, A DOWNLOADABLE.
10        THEN THEY LOOK AT THE REST OF THE LANGUAGE.  BUT THAT
11   LANGUAGE, AGAIN, JUST SHOWS THE INTERACTION BETWEEN THE
12   SCANNER AND OTHER COMPONENTS.  SO THAT'S OUR
13   MEANS-PLUS-FUNCTION ARGUMENT.
14        AND --
15        THE COURT:  SO HOW DOES ZERO CLICK AFFECT THAT?
16        IT STRIKES ME THAT YOU WERE RELYING ON THE MEDIA RIGHTS
17   CASE, BUT THERE THE TERM "MECHANISM" WAS ONE OF THE ONES THAT
18   WILLIAMSON SPECIFICALLY CALLS OUT AS A NONCE WORD.  SCANNER
19   ISN'T THAT.
20        THE DISTRICT COURT IN ZERO CLICK WAS REVERSED FOR
21   INAPPROPRIATELY, IN THE FEDERAL CIRCUIT'S VIEW, FAILING TO
22   APPLY THE PRESUMPTION AGAINST MEANS-PLUS-FUNCTION APPLICATION
23   WHEN MEANS ISN'T USED.  SCANNER DOESN'T SOUND TO ME TO BE THAT
24   KIND OF NONCE WORD, AND IT SEEMS TO ME THAT ZERO CLICK
25   REINFORCES THAT INCLINATION ON MY PART.
```

1          MR. ELKHUNOVICH:  I CAN SEE WHY THAT WOULD BE.  I

2    WILL CONCEDE THAT *ZERO CLICK* HELPS FINJAN WITH THIS ARGUMENT.

3          HOWEVER, I DO NOT READ *ZERO CLICK* AS REQUIRING MEANS.  I

4    DO NOT READ IT AS REQUIRING, AS A FIRST STEP, A NONCE WORD

5    NECESSARILY.  I DON'T THINK *ZERO CLICK* OVERRULED *WILLIAMSON*

6    AND *MEDIA RIGHTS* IN THEIR HOLDING THAT THE BURDEN TO REBUT THE

7    PRESUMPTION IS NOT EXTREMELY HIGH.  AND I DON'T THINK IT

8    OVERRULED THEM IN THE SENSE THAT SUBSTANCE... FORM SHOULDN'T

9    BE ELEVATED OVER SUBSTANCE.

10         THAT SAID, WE HAVE A PRETTY UNIQUE TERM HERE, "SCANNER".

11   IT'S NOT A NONCE TERM LIKE MECHANISM OR... YOU KNOW, MEANS,

12   BUT IT'S FUNCTIONAL IN THAT IT SAYS WHAT IT DOES.  AND IT'S

13   BASED ON THE VERB TO SCAN WITH AN ADDITION OF ER TO MAKE IT A

14   NOUN, BUT THAT NOUN DOESN'T ADD ANYTHING BEYOND ITS

15   FUNCTIONALITY, WHICH IS TO SCAN.

16         NOW, TO BE SURE, THERE ARE OTHER TERMS -- THERE ARE OTHER

17   WORDS THAT CAN COME TO MIND THAT ARE LIKE THAT.  THEY ARE

18   NOT -- I WOULD AGREE ARE NOT NONCE TERMS.  FOR EXAMPLE, A

19   SCREWDRIVER.  WE ALL KNOW A PERSON OF ORDINARY SKILL IN THE

20   ART WOULD KNOW WHAT A SCREWDRIVER IS EVEN THOUGH IT IS DEFINED

21   BY ITS FUNCTION TO DRIVE SCREWS --

22          THE COURT:  WHEN DO I GET TO HEAR THE PATENT CASE

23   INVOLVING A SCREWDRIVER?

24                         (LAUGHTER)

25          MR. ELKHUNOVICH:  IT'S EXEMPLARY, YOUR HONOR.

1        BUT "SCANNER" HERE -- AND, YOU KNOW, WE HAVE EVIDENCE IN

2   THE RECORD THROUGH BOTH TESTIMONY OF MR. SCHAEFER AND

3   MR. MEDVIDOVIC, SCANNER IS A THING THAT SCANS.

4        **THE COURT:**  ALL RIGHT.  JUST FOR TIMING PURPOSES, WE

5   ARE ALREADY AT THREE WE.  HAVE GOTTEN THROUGH TWO TERMS.

6        IF THERE'S SOMETHING IN PARTICULAR YOU WANT TO AUGMENT

7   ABOUT YOUR PAPERS, I WILL GIVE YOU THE CHANCE TO DO IT, BUT I

8   UNDERSTAND THE ARGUMENT IN YOUR PAPERS AND I THINK ESSENTIALLY

9   NOW WE'RE TREADING IT AGAIN.

10        **MR. ELKHUNOVICH:**  UNDERSTOOD, YOUR HONOR.  I'M READY

11   TO MOVE ON.

12        **THE COURT:**  ALL RIGHT.

13        **MS. KOBIALKA:**  JUST REALLY BRIEFLY.

14        THERE WAS SOME REFERENCES TO DR. MEDVIDOVIC'S TESTIMONY IN

15   THE *CISCO* CASE.  IF YOU READ THE TESTIMONY, THEY WERE ASKING

16   VERY SPECIFIC QUESTIONS ABOUT SPECIFIC EMBODIMENTS IN THE

17   PATENTS, AND THEN IF YOU CAN APPLY THAT TO THE CLAIMS.

18        BUT THAT TESTIMONY IS IN CONNECTION WITH SPECIFIC

19   EMBODIMENTS.  THAT WASN'T THIS IS THE CONSTRUCTION OVERALL.

20   AND THERE WERE A LOT OF QUESTIONS ASKED IN THAT PARTICULAR

21   DEPOSITION THAT, FRANKLY, WERE DIRECTED TOWARDS SPECIFIC

22   EMBODIMENTS OF DQ'S PRODUCTS FOR CISCO.  I'M NOT SURE THAT THE

23   TESTIMONY THAT HE'S CITING TO IS GOING TO PROVIDE HIM WITH ANY

24   OF THE SUPPORT.

25        I HAVE TO NOTE THAT A LOT OF THE ARGUMENT THAT WAS MADE,

1    AND IN PARTICULAR THE SLIDE THAT WAS SHOWN, WASN'T CITED IN

2    THEIR BRIEFS.  A LOT OF THIS IS NEW AND DIFFERENT.

3    PARTICULARLY TRYING TO DRAW A CONNECTION THAT SOMEHOW THE 101

4    DECISIONS WAS A CONSTRUCTION.  THAT WAS A MOTION FOR JUDGMENT

5    ON THE PLEADINGS, AND SO IT WAS APPLYING THE STANDARD IN THAT

6    PARTICULAR CASE.

7         THAT COURT WENT ON LATER TO CONSTRUE THE '494 PATENT, AND

8    THERE WASN'T ANY CONCERNS THAT THE TERM AT ISSUE "DOWNLOADABLE

9    SCANNER" WAS SOMEHOW A MEANS-PLUS-FUNCTION ELEMENT, AND WE

10   ACTUALLY PROCEEDED ALL THE WAY THROUGH TRIAL WITH THAT

11   PARTICULAR PATENT AND THAT CONSTRUCTION.

12            **THE COURT:**  ALL RIGHT.  BUT JUDGE FREEMAN NEVER

13   CONSTRUED THIS PARTICULAR TERM.

14            **MS. KOBIALKA:**  THAT'S CORRECT.

15            **THE COURT:**  AS FAR AS YOU'RE CONCERNED.

16            **MS. KOBIALKA:**  THAT'S CORRECT.

17        SO TURNING TO THE NEXT TERM.  THIS IS THE "DATABASE

18   MANAGER" TERM.  WE, ONCE AGAIN, HAVE SAID THIS IS PLAIN AND

19   ORDINARY MEANING.  IT'S HARDWARE AND/OR SOFTWARE THAT CONTROLS

20   A DATABASE.

21        AND THE WHOLE BASIS FOR MOVING AWAY FROM THE PLAIN AND

22   ORDINARY MEANING THE DEFENDANTS HAVE RAISED IS THAT THERE

23   SOMEHOW HAS BEEN A DISAVOWAL, AN ATTEMPT TO RECAPTURE

24   SOMETHING HERE AND BASED ON STATEMENTS THAT WERE MADE IN THE

25   IPR PROCEEDINGS.

1      WE'VE SET FORTH IN THE BRIEF, I DON'T THINK I NEED TO

2  RE-ARGUE WHAT WE HAD IN THE BRIEF, BUT THERE IS NOTHING

3  INCONSISTENT WITH THE DESCRIPTION OR THE PLAIN AND ORDINARY

4  MEANING THAT WAS PROVIDED IN THE IPR FOR WHAT WE'RE TALKING

5  ABOUT HERE.

6      **THE COURT:**  WHY NOT?  A PERSON SKILLED IN THE ART AT

7  THE TIME WOULD UNDERSTAND "DATABASE MANAGER" TO MEAN A PROGRAM

8  OR PROGRAMS THAT CONTROL A DATABASE SO THAT THE INFORMATION IT

9  CONTAINS CAN BE STORED, RETRIEVED, UPDATED, AND SORTED.

10      WHY ARE YOU NOT COMMITTED TO THAT POSITION?

11      **MS. KOBIALKA:**  THE "CAN BE STORED", AND IF YOU READ

12  ON, TOO, IN MR. MEDVIDOVIC'S -- EXCUSE ME, DR. MEDVIDOVIC'S

13  DECLARATION, HE MAKES CLEAR THAT WHEN WE ARE TALKING ABOUT

14  CONTROLLING A DATABASE, THESE ARE THINGS THAT CAN BE DONE.

15  BUT WHAT MOST -- THE INDIVIDUALS OF ORDINARY SKILL IN THE ART

16  WOULD UNDERSTAND WOULD -- IT WOULD INCLUDE STORING AND

17  RETRIEVING.

18      THE PARTIES AGREE ON THAT PARTICULAR PORTION OF IT, THAT

19  BEING PART OF THE PLAIN AND ORDINARY MEANING, BUT IT'S NOT

20  MATERIALLY DIFFERENT WHEN YOU ARE -- BECAUSE IT'S A PROGRAM OR

21  PROGRAMS THAT ARE CONTROLLING A DATABASE.

22      PROGRAM OR PROGRAMS COULD INVOLVE BOTH HARDWARE OR

23  SOFTWARE OR BOTH.  THAT'S NOT SOMEHOW LIMITING.

24      BUT IN REALITY, IN THIS CASE, IT'S NOT GOING TO MAKE A

25  MATERIAL DIFFERENCE IN TERMS OF THE INFRINGEMENT CASE.  WE ARE

```
1    JUST TRYING TO BE CONSISTENT WITH ALL OF OUR CONSTRUCTIONS

2    WITH RESPECT TO THIS PARTICULAR CLAIM ELEMENT.

3         THE COURT:  ALL RIGHT.  SO WILL YOU CONCEDE THAT IF I

4    ADOPTED THEIR CONSTRUCTION, IN YOUR VIEW, IT IS NOT MATERIAL?

5    YOU DON'T -- YOU WOULD --

6         MS. KOBIALKA:  WE --

7         THE COURT:  -- ADMIT THAT THAT'S NOT PROBLEMATIC TO

8    YOUR CASE?

9         MS. KOBIALKA:  IT'S NOT PROBLEMATIC TO THE

10   INFRINGEMENT CASE.  THAT'S NOT -- THAT'S NOT OUR POSITION THAT

11   THAT'S THE PLAIN AND ORDINARY MEANING, TO BE CLEAR.  I AM JUST

12   TRYING TO TELL YOU REALISTICALLY WHAT IS GOING TO BE -- WHAT

13   THE ISSUE WAS.

14        THE COURT:  UNDERSTOOD.  I MEAN, THIS ONE I THINK

15   YOU'VE GOT THE TOUGHEST POSITION ON DISAVOWAL.

16      AGAIN, ON SOME LEVEL, UNDERSTANDING THAT THE THRESHOLD FOR

17   DISAVOWAL IS HIGH, YOU'VE GOT TO BE HELD TO SOME LEVEL OF

18   CONSISTENCY ACROSS PROCEEDINGS, AND THIS ONE STRUCK ME AS

19   RIGHT ON THAT LINE, IF NOT OVER IT.

20        MS. KOBIALKA:  WELL, AND THE STATEMENT, TOO, CAME OUT

21   OF A DISCUSSION WITH RESPECT TO A PRIOR ART REFERENCE IN WHICH

22   THEY DID NOT HAVE A DATABASE MANAGER THAT MANAGED AND

23   CONTROLLED THE STORAGE AND RETRIEVAL OF DATA IN THE DATABASE.

24   SO, ONCE AGAIN, THERE IS SOME CONTEXT FOR IT, BUT THE PLAIN

25   AND ORDINARY MEANING IS WHAT WE HAVE ARTICULATED HERE.
```

1          **THE COURT:**  ALL RIGHT.

2          **MR. ELKHUNOVICH:**  YOUR HONOR, I'M MINDFUL OF HAVING

3     TAKEN UP TOO MUCH TIME, SO I'LL JUST SAY TWO THINGS.

4          IF IT'S NOT MATERIALLY DIFFERENT, I DON'T KNOW WHY WE

5     SPENT ALL THE TIME BRIEFING IT.  WE COULD HAVE JUST AGREED ON

6     IT, ESPECIALLY GIVEN THAT THAT'S WHAT THEY ADVANCED BEFORE.

7          OTHER THAN THAT, I THINK THE ONLY OTHER ARGUMENT REALLY

8     MADE WAS THAT STORAGE AND RETRIEVAL AND OTHER FUNCTIONALITY

9     SHOULD BE "OR" AND NOT "AND".  THAT'S EXACTLY THE OPPOSITE OF

10    WHAT MR. MEDVIDOVIC SAID IN HIS DECLARATION AT PARAGRAPH 159,

11    WHERE WITH REFERENCE TO SWIMMER, HE SAID THE DATABASE MANAGER

12    MUST CONTROL BOTH STORAGE AND RETRIEVAL OF DATA FROM A

13    DATABASE.

14         THE CLAIM CONSTRUCTION THEY ADVANCE IS WORD-FOR-WORD WHAT

15    WE ARE ASKING FOR HERE.

16         THANK YOU.

17         **THE COURT:**  ALL RIGHT.

18         WHAT IS OUR NEXT TERM?

19         **MR. ELKHUNOVICH:**  I APOLOGIZE, YOUR HONOR, I DIDN'T

20    SAY IT AT THE BEGINNING.  WE ARE DIVIDING AND CONCURRING, SO

21    MY COLLEAGUES WILL COVER THE OTHER PATENTS.

22         **THE COURT:**  THAT SOUNDS FAIR.

23         **MS. KOBIALKA:**  YOUR HONOR, THE NEXT TERMS ARE IN THE

24    '780 PATENT.

25         SO THE NEXT TERM RELATES TO "PERFORMING A HASHING FUNCTION

1    ON THE DOWNLOADABLE AND THE FETCHED SOFTWARE COMPONENTS TO

2    GENERATE A DOWNLOADABLE I.D."

3        THIS PARTICULAR PATENT -- I DO HAVE A COUPLE JUST BRIEF

4    SLIDES ON THAT.  IF YOU LOOK AT SLIDE 10, WE REFERRED TO THIS

5    PATENT AS HASHING.  AND THIS HASHING DEALS WITH TAKING A FILE

6    OR DATA OBJECT AND PRODUCING A STRING OF BITS.  AND WHAT IT

7    DOES IS IT CREATES LIKE A FINGERPRINT FOR THE FILE OVERALL.

8        AND THERE ARE DIFFERENT TYPES OF HASHING FUNCTIONS THAT

9    YOU CAN HAVE.  MD5 IS ONE.  SHA IS ANOTHER.  AND IF YOU LOOK

10   AT SLIDE 12, WE'VE PROVIDED JUST A VISUAL OF WHAT THAT WOULD

11   LOOK LIKE.

12       SO A HASH CAN BE BUILT UP FROM MULTIPLE HASHES TO CREATE

13   THE DOWNLOADABLE I.D.  SO IN THE CONTEXT OF THIS PARTICULAR

14   CLAIM, WHEN YOU PERFORM THE HASHING FUNCTION, YOU WOULD DO IT

15   ON THE DOWNLOADABLE THAT COULD CREATE A SINGLE HASH.  THEN YOU

16   COULD DO IT ON THE FETCH SOFTWARE COMPONENTS.  THOSE COULD

17   CREATE HASHES.  THOSE COULD COME TOGETHER T CREATE THE

18   DOWNLOADABLE I.D., AND THAT'S WHAT'S SHOWN THERE ON SLIDE 12.

19       THE BRIEFING ON THIS PARTICULAR ISSUE GOT VERY TECHNICAL

20   AND GOT INCREDIBLY COMPLEX, PARTICULARLY FOR ME WITHOUT A

21   TECHNICAL BACKGROUND.  SO I REALLY TRIED TO UNDERSTAND WHAT

22   THE HEART OF THE ISSUE IS, WHAT TRULY IS THE DISPUTE.

23       AND FINJAN HAS DEALT WITH THIS TERM IN MULTIPLE CASES

24   WHERE THE PARTIES HAVE RECEIVED A CONSTRUCTION, IN FACT THE

25   VERY CONSTRUCTION THAT WE'VE PROPOSED, AND THE PARTIES HAVE

INTERPRETED IT AND APPLIED IT DIFFERENTLY, WHICH IS WHAT HAD

LED TO THE DECISION IN THE *BLUE COAT* CASE WHERE SHE -- JUDGE

FREEMAN SPECIFICALLY TALKS ABOUT WHAT IS MEANT BY THIS

PARTICULAR ELEMENT; AND THAT HASHING CAN BE BUILT UP FROM

MULTIPLE HASHES, AND THAT YOU CAN HAVE ONE OR MORE

DOWNLOADABLE I.D.'S, IT'S NOT JUST LIMITED TO ONE BECAUSE THAT

DISPUTE CAME UP IN CONNECTION WITH THE *BLUE COAT* CASE.

SEPARATELY WE HAD THE SAME ISSUE IN THE *SOPHOS* CASE.  AND

ON POST-TRIAL MOTIONS, JUDGE ORRICK INDICATED THAT *SOPHOS* WAS

APPLYING A DIFFERENT CONSTRUCTION AND -- A DIFFERENT MEANING,

INTERPRETING A DIFFERENT MEANING TO THE CONSTRUCTION ITSELF

THAN FINJAN HAD, BUT ULTIMATELY WE HAD PROVEN OUR CASE UNDER

BOTH INTERPRETATIONS.

SO OUR INTERPRETATIONS HAVE BEEN CONSISTENT WITH JUDGE

FREEMAN'S ORDER, WHICH IS THAT A HASH CAN BE BUILT UP WITH

MULTIPLE HASHES TO CREATE THAT DOWNLOADABLE I.D.  SO THAT IS

THE OVERALL HEART OF THIS PARTICULAR DISPUTE.

IF YOU TAKE A LOOK AT THE PROPOSED CONSTRUCTIONS, WHICH IS

SLIDE 11, I HAVE THEM SIDE BY SIDE.  WHAT'S HAPPENING HERE IS

THAT THE DEFENDANTS ARE ATTEMPTING TO CONSTRUE THIS TERM

CONTRARY TO JUDGE FREEMAN'S ORDER, WHICH IS THAT YOU CAN ONLY

HAVE ONE HASH TO AFFORD THE DOWNLOADABLE I.D.

**THE COURT:**  LET ME LEVEL SOMETHING BECAUSE THIS WAS

COMPLICATED AND, AGAIN, IT'S WOUND ITS WAY THROUGH THE *BLUE*

*COAT* CASE AND OTHERS.

1      ARE THE DEFENDANTS CORRECT THAT YOUR PROPOSED CONSTRUCTION

2   IS IDENTICAL TO JUDGE FREEMAN'S INITIAL CONSTRUCTION OF THE

3   TERM?  SO THAT'S STEP A.  RIGHT?  ARE THEY -- IS THAT CORRECT?

4      **MS. KOBIALKA:**  THE ONLY CONSTRUCTION OF THAT TERM.

5      **THE COURT:**  WELL, THAT'S NOT AT ALL SELF-EVIDENT.

6   BUT JUDGE FREEMAN ENTERED A CLAIM CONSTRUCTION ORDER INITIALLY

7   THAT HAD THIS CONSTRUCTION THAT YOU'RE PROPOSING, CORRECT?

8      **MS. KOBIALKA:**  YES.

9      **THE COURT:**  THEN, SHOCKINGLY, SHE GOT DOWN THE ROAD

10  AND REALIZED THAT THE CLAIM CONSTRUCTION DIDN'T RESOLVE THE

11  ISSUE AND THAT IT HAD BEEN KICKED DOWN THE ROAD AND,

12  THEREFORE, SHE HAD TO DO SOMETHING.  WHETHER YOU WANT TO CALL

13  IT A CLAIM CONSTRUCTION, I THINK THAT'S THE HEART OF IT.  THEY

14  ARE SAYING SHE HAD TO FURTHER CONSTRUE THE CLAIM.  I THINK

15  THEY MIGHT HAVE A SOLID ARGUMENT THERE.

16      BUT AT ANY RATE, YOU WILL AGREE THAT JUDGE FREEMAN

17  CONCLUDED THAT THE CONSTRUCTION THAT YOU'RE PROPOSING

18  ULTIMATELY DIDN'T RESOLVE THE ISSUE AND SHE HAD TO DO MORE.

19  AND MY IMMEDIATE THOUGHT IS, WHY ISN'T EXACTLY THAT THING --

20  SAME THING GOING TO HAPPEN IF I ADOPT THAT CONSTRUCTION HERE?

21      IT SEEMS THAT THERE WAS MORE THAT HAD TO GET DONE TO

22  RESOLVE THE DISPUTE.

23      **MS. KOBIALKA:**  THE CONSTRUCTION THAT ULTIMATELY WAS

24  PROVIDED TO THE JURY AT TRIAL AND THAT WAS USED WAS THE

25  CONSTRUCTION IN HER ORIGINAL ORDER.

1    WHAT HAPPENED ON SUMMARY JUDGMENT WAS THE APPLICATION OF

2    THE CONSTRUCTION, THE AGREED UPON CONSTRUCTION.  THAT'S WHAT

3    ENDED UP HAPPENING.

4    SO SHE HAD TO SAY, NO, LET ME TELL YOU WHAT THIS

5    CONSTRUCTION MEANS.  YOU CAN'T GO -- YOU KNOW, YOU CAN'T USE

6    THE CONSTRUCTION IN THE MANNER THAT YOU'RE USING IT, BLUE

7    COAT, BECAUSE THAT IS INCORRECT IN LIGHT OF THE PATENT.

8    AND SHE HAD MADE RULINGS PREVIOUSLY.  THAT'S WHY SHE HAD

9    SAID, FIRST, AS THE COURT ALREADY STATED, "THE '780 PATENT IS

10   NOT SO LIMITED THAT A HASHING FUNCTION MEANS A SINGLE HASH."

11   AND IT CONTINUES ON.

12   SHE'S BEING VERY CLEAR.  YOU CAN'T SUGGEST THAT THE

13   HASHING FUNCTION ONLY GENERATES ONE HASH FOR THE DOWNLOADABLE

14   I.D.  AND THAT'S WHAT THE DEFENDANTS IN THAT CASE WAS ARGUING.

15   SO SHE WAS MAKING SURE THAT THEY UNDERSTOOD THE CONTOURS

16   OF THE CONSTRUCTION ITSELF, AND THEY COULDN'T MISAPPLY IT FOR

17   PURPOSES OF TRIAL.

18   BUT SHE USED THIS VERY CONSTRUCTION THAT WE HAVE SET FORTH

19   HERE AT TRIAL.  THAT'S WHAT WAS READ TO THE JURY AND BLUE COAT

20   WAS NOT PERMITTED TO GO OUTSIDE OR MAKE AN NONINFRINGEMENT

21   ARGUMENT ABOUT IT.  SO THAT'S HOW THAT HAD SPECIFICALLY COME

22   UP.

23   **THE COURT:**  OKAY.  BUT SO -- AGAIN, I'LL HAVE TO

24   DETERMINE FOR MYSELF, A, WHAT I THINK THE IMPORT OF THE ORDER

25   WAS AND, B, WHETHER I AGREE WITH IT.

1        BUT WHEN JUDGE FREEMAN SAYS, "LURKING BENEATH THIS

2   APPARENT AGREEMENT ON WORDING IS A DISPUTE OVER WHAT THOSE

3   WORDS ACTUALLY MEAN."

4        IF WE'RE TALKING ABOUT WHAT THE WORDS ACTUALLY MEAN, THAT

5   SOUNDS LIKE CLAIM CONSTRUCTION TO ME.

6        **MS. KOBIALKA:**  UNDERSTOOD.  AND I THINK THIS IS THE

7   REASON WHY WE ARE HERE; BECAUSE LURKING UNDER THEIR

8   CONSTRUCTION, AND I CAN EXPLAIN THAT BECAUSE THEY'VE TAKEN

9   BITS AND PIECES OF HER ORDER HERE AND TRYING TO EXPLAIN WHAT

10  THE CONSTRUCTION MEANS, AND PUT IT TOGETHER TO DO THE VERY

11  THING SHE SAID YOU CAN'T DO; THAT THIS IS NOT WHAT THIS TERM

12  MEANS, WHICH IS TO SUGGEST THAT YOU ONLY HAVE A SINGLE HASH

13  FOR A DOWNLOADABLE, THAT YOU CAN ONLY HAVE ONE DOWNLOADABLE

14  IDENTIFIER.

15       IT'S THE SAME ISSUE.  AND THAT'S THE REASON WHY WE RAISED

16  IT.  WE WANT TO ENSURE THIS DOESN'T HAPPEN LATER ON DOWN THE

17  LINE BECAUSE WE HAVE NOW EXPERIENCED IT IN TWO OTHER CASES

18  WHERE THE PARTIES HAVE INTERPRETED THE CLAIMS VERY

19  DIFFERENTLY.

20       AND IT'S GOING TO BE VERY IMPORTANT FOR US THAT, YOU KNOW,

21  THAT WE ARE CONSISTENT WITH WHAT SHE HAS SAID, WHICH IS THAT

22  THE '780 IS NOT LIMITED.  THAT A HASHING FUNCTION MEANS A

23  SINGLE HASH.

24       THAT IS VERY -- AS WELL AS ONE OR MORE DOWNLOADABLE I.D.'S

25  FOR ONE OR MORE DOWNLOADABLES, IT'S NOT JUST A SINGLE

```
1    DOWNLOADABLE.  AND THE PROBLEM WITH THE CONSTRUCTION IS WHEN

2    THEY USE THESE WORDS, AND THEY HAVE TAKEN BITS AND PIECES OF

3    HER ORDER AND PUT THEM TOGETHER, IT'S NOT A VERBATIM QUOTE,

4    AND IT DOESN'T INCLUDE HER SPECIFIC HOLDINGS ON PAGE 7 OF THIS

5    DECISION, IT'S TALKING ABOUT OPERATING ACROSS THE COMBINATION

6    OF A DOWNLOADABLE TOGETHER WITH ITS FETCH SOFTWARES, THAT THAT

7    LANGUAGE IN ITSELF IS SUGGESTING ONE HASH.  THEN IT ALSO IS

8    TALKING ABOUT A UNIQUE AND REPRODUCIBLE I.D. FOR THAT

9    DOWNLOADABLE.

10        AND THIS IS ALSO SUGGESTING THAT WHAT WE'RE DISCUSSING IS

11   A SINGLE HASH OR A SINGLE DOWNLOADABLE I.D.  TO BE CLEAR, IN

12   THE CONTEXT OF COMPUTER SCIENCE, REPRODUCIBLE -- THIS MEANS

13   YOU HAVE THE SAME INPUT THAT'S GOING TO GENERATE THE SAME

14   OUTPUT.  YOU CAN STILL HAVE A HASH OF DIFFERENT SOFTWARE

15   COMPONENTS, BUT THAT'S WHAT THE REPRODUCIBLE PORTION THAT

16   SHE'S REFERRING TO IN HER ORDER, AND THEN SEPARATELY UNIQUE

17   CANNOT BE LIMITED TO A SINGLE HASH.

18        THAT'S THE REASON WHY SHE ADDED THAT STATEMENT AND SAID,

19   YOU KNOW, WITH THIS CLARITY, NOW WE MOVE ON TO WHETHER OR NOT

20   THE ACCUSED PRODUCT HAS THESE LIMITATIONS.

21            THE COURT:  WHERE IS THIS IN THE BLUE COAT ORDER?

22            MS. KOBIALKA:  IN THE BLUE COAT ORDER, PAGE 7, THE

23   START OF PAGE 7, THE FIRST PARAGRAPH SHE SAYS:

24        AFTER ALL OF THIS DESCRIPTION THAT I HAVE PROVIDED, THIS

25   IS WHAT, FIRST, YOU KNOW, THAT THE '780 IS NOT LIMITED TO A
```

1    SINGLE HASH, AND THAT THE MORE SENSIBLE READING WOULD BE THAT

2    THE I.D. GENERATOR PERFORMS ONE OR MORE HASHING FUNCTIONS TO

3    GENERATE ONE OR MORE DOWNLOADABLE I.D.'S FOR ONE OR MORE

4    DOWNLOADABLES.  AND YOU CAN'T TAKE IT OUT OF A VACUUM.

5        FINALLY, IT SAYS, "THUS CLARIFIED, THE COURT TURNS TO

6    WHETHER PLAINTIFF HAS EVIDENCE THAT PROXY AV PERFORMS THIS

7    LIMITATION."  AND THEN IT CONTINUES ON.

8        SO THE UNIQUE PORTION THAT WE'RE TALKING ABOUT RELATES TO

9    HAVING A DOWNLOADABLE I.D.  THEY HASH THAT IT'S GOING TO BE --

10   WHAT THE HASHES THAT MAKE UP, THE SINGLE HASH OR HASHES THAT

11   MAKE UP THE DOWNLOADABLE I.D., THAT RELATES TO THE UNIQUE

12   ASPECT.  THE REPRODUCIBLE HAS TO DO WITH THE SAME INPUT

13   GENERATING THE SAME OUTPUT.

14       BUT THE WAY THE DEFENDANTS ARE CONSTRUING IT, AND THIS IS

15   WHAT DR. MEDVIDOVIC POINTS OUT IN HIS DECLARATION, IS THAT

16   NOTHING IN THE PATENT SAYS THAT YOU HAVE TO HAVE THE SAME HASH

17   FOR DIFFERENT DOWNLOADABLES, AND THIS IS NOT A REQUIREMENT OF

18   THE PATENT.

19       SO HE'S TALKING ABOUT YOU CAN'T SAY THERE'S ONE HASH FOR

20   ONE DOWNLOADABLE I.D.  HE'S TRYING TO REALLY ADDRESS

21   SPECIFICALLY WHAT THE DEFENDANTS, HOW THEY ARE TRYING TO

22   INTERPRET THIS.

23       BUT JUDGE FREEMAN'S ORDER IS VERY CLEAR.  AND THIS DISPUTE

24   ALSO CAME UP IN *SOPHOS*.  SO WE ARE TRYING TO HEAD THAT OFF

25   RIGHT NOW BY BRINGING THIS PARTICULAR THING UP.

1    AND THERE HAVE BEEN FOUR COURTS THAT HAVE ADOPTED THIS

2    CONSTRUCTION, AND WE'VE CITED TO ALL THOSE.  BUT THE MOST

3    RECENT ONE IS IN THE *PALO ALTO NETWORKS* IPR, THE PTAB IN 2016

4    AND ADOPTED IT, AND THEN THE *ESET* COURT IN SOUTHERN CALIFORNIA

5    ALSO ADOPTED IT.

6         **THE COURT:**  IS THERE ANYTHING RELEVANT FROM A LEGAL

7    PERSPECTIVE ABOUT THE BROADEST REASONABLE INTERPRETATION

8    STANDARD IN THE PTAB OR -- WHAT WEIGHT, IF ANY, SHOULD I

9    ASSIGN TO THE FACT THAT THE PTAB APPLIED THAT DIFFERENT

10   STANDARD THAN ARGUABLY I AM TO APPLY?

11        **MS. KOBIALKA:**  IT'S -- I DON'T THINK -- LET ME MAKE

12   SURE.

13    I DON'T THINK IT IS -- THAT THERE IS A MATERIAL DIFFERENCE

14   IN TERMS OF THE BROADEST REASONABLE INTERPRETATION OF WHAT WE

15   HAVE HERE.

16        **THE COURT:**  ALL RIGHT.

17        **MR. ADAMSON:**  YOUR HONOR, GIVEN THAT THIS IS KIND OF

18   A COMPLICATED BACK AND FORTH DESCRIBING CONCEPTS, IF I COULD

19   DIRECT YOUR ATTENTION TO THE SCREEN.  I'VE INCLUDED A FEW

20   ANIMATIONS THAT SHOULD HELP ILLUSTRATE THESE CONCEPTS.

21    YOUR HONOR, FINJAN'S POSITIONS CONTRADICT THE CLAIM

22   LANGUAGE, THE VERY CASES THEY CITE, THE PURPORTED BENEFIT OF

23   THE INVENTION, THE SPECIFICATION, AND THE PROSECUTION HISTORY.

24    I'M GOING TO START AND DIRECT YOUR ATTENTION TO SLIDE 24.

25   THE '780 PATENT IS DESIGNED TO GENERATE A DOWNLOADABLE I.D.

NOW, THERE ARE THREE STEPS INVOLVED UNDER BOTH -- UNDER ALL
THREE OF THE RELEVANT CLAIMS HERE, CLAIMS 1, 9 AND 18.  THEY
ALL INCLUDE BASICALLY IDENTICAL LANGUAGE.

THE FIRST STEP IS OBTAINING A DOWNLOADABLE, BUT THIS ISN'T
JUST ANY DOWNLOADABLE, YOUR HONOR.  IF YOU LOOK TO SLIDE 25,
THIS IS A DOWNLOADABLE THAT MAKES REFERENCE TO COMPONENTS.

SO THROUGHOUT THIS PRESENTATION, THE STAR IS GOING TO
REPRESENT THE DOWNLOADABLE, THEN YOU HAVE THESE COMPONENTS
THAT ARE REFERENCED.

STEP 2, ON THE NEXT SLIDE, IS FETCHING THOSE COMPONENTS.

STEP 3, ON THE NEXT, IS THEN PERFORMING THE HASHING
FUNCTION ON THE DOWNLOADABLE AND THE FETCHED SOFTWARE
COMPONENTS TO GENERATE A DOWNLOADABLE I.D.

SO IN THIS CASE WE HAVE THE DOWNLOADABLE, GOES THROUGH THE
HASHING FUNCTION.  THE BASIC IDEA OF THE HASHING FUNCTION,
YOUR HONOR, AS YOU MAY KNOW, IS TO MAP A HIGH DIMENSIONAL
SPACE TO A LOW DIMENSIONAL SPACE, LIKE A DOWNLOADABLE TO A
NUMBER.

SO I HAVE AN EXAMPLE OF A VERY SIMPLE HASHING FUNCTION ON
SLIDE 28.  THERE'S MY NAME, ADAMSON.  AND A VERY SIMPLE
HASHING FUNCTION I CAN PERFORM ON MY NAME IS SIMPLY COUNTING
THE NUMBER OF LETTERS.  AND IF I PERFORM THAT COMPUTATION, I
GET THE NUMBER SEVEN.  BUT A HASHING FUNCTION CAN ALSO BE MORE
COMPLICATED.  I THINK THIS IS WHERE FINJAN IS A LITTLE BIT
CONFUSED ABOUT THE IMPLICATIONS OF JUDGE FREEMAN'S ORDER OR

1    SLIGHTLY MISCONSTRUING IT.

2        LET'S SAY WE ASSIGN A NUMBER VALUE AS A FIRST COMPUTATION

3    TO THE LETTERS IN MY NAME.

4            **THE COURT:**  I'LL GIVE YOU A LITTLE ROPE, BUT IT SEEMS

5    TO ME THERE'S JUST A CLEAR -- THE CORE OF THIS DISPUTE IS

6    CLEAR, I THINK.

7        AM I UNDERSTANDING IT RIGHT THAT REALLY WHAT YOU ARE

8    DISPUTING IS WHETHER A SINGLE DOWNLOADABLE, UNIQUE

9    DOWNLOADABLE I.D. MUST BE GENERATED OR WHETHER THE HASHING

10   FUNCTION CAN GENERATE SEPARATE DIFFERENT DOWNLOADABLE I.D.'S?

11           **MR. ADAMSON:**  I'M ALMOST THERE.  I'M ALMOST THERE.

12           **THE COURT:**  WELL, IF YOU CAN GET THERE BECAUSE THAT'S

13   WHERE THE DISPUTE IS, AND THAT'S WHAT I NEED TO FOCUS ON.

14           **MR. ADAMSON:**  DEFINITELY.  THIS NEXT POINT WILL GET

15   US THERE.

16       I WON'T GO THROUGH THE DIFFERENT COMPUTATIONS, BUT JUST

17   SUFFICE IT TO SAY, CONVERTING MY NAME ADAMSON INTO THE NUMBER

18   14 INVOLVES SEVERAL HASHES, SEVERAL COMPUTATIONS.  OKAY?

19       AND BITDEFENDER DOESN'T DISPUTE THAT HASHING FUNCTION CAN

20   INVOLVE A NUMBER OF HASHES OR A NUMBER OF COMPUTATIONS.  BUT

21   IF I CAN REFER YOU TO SLIDE 29.

22       JUDGE FREEMAN EXPLAINS THIS CONCEPT REALLY WELL.  SHE

23   SAYS:  TERM 4 "REQUIRES A COMPUTATION OR COMBINATION OF

24   COMPUTATIONS THAT TRANSMUTES THE DOWNLOADABLE AND ITS

25   COMPONENTS INTO A UNIQUE AND REPRODUCIBLE I.D. FOR THAT

1   DOWNLOADABLE."

2        SO WHETHER OR NOT YOU ARE PERFORMING MULTIPLE HASHES,

3   MULTIPLE COMPUTATIONS, THE END PRODUCT HAS TO BE THE UNIQUE

4   AND REPRODUCIBLE I.D. FOR THAT DOWNLOADABLE.

5        BITDEFENDER DOESN'T DISPUTE THAT YOU CAN HAVE A NUMBER OF

6   SUBCOMPUTATIONS OR A NUMBER OF SUBHASHES, BUT THE IMPORTANT

7   THING, AND THE ONLY HASHING FUNCTION COVERED BY THE CLAIMS IS

8   THE HASHING FUNCTION THAT TRANSMUTES THE DOWNLOADABLE AND ITS

9   COMPONENTS INTO A UNIQUE AND REPRODUCIBLE I.D. FOR THAT

10  DOWNLOADABLE.

11       NOW, YOUR HONOR, AS YOU NOTED, *BLUE COAT I* SUMMARY

12  JUDGMENT ORDER ACKNOWLEDGED THE CONSTRUCTION, THE AMBIGUITY OF

13  THE CONSTRUCTION.  AND FINJAN TOOK FULL -- ATTEMPTED TO TAKE

14  FULL ADVANTAGE OF THAT AMBIGUITY.  IF I CAN REFER YOU TO

15  SLIDE 31.

16       FINJAN ARGUED THAT THE TERM "TOGETHER WITH" MEANS MERELY

17  TOGETHERNESS IN TIME.

18       ON SLIDE 32, YOU CAN SEE THE IMPLICATIONS OF THIS, YOUR

19  HONOR.  THIS ONE MAY BE ONE WHERE IT WOULD BE HELPFUL TO SEE

20  THE ANIMATION.

21       SO HERE WE HAVE A DOWNLOADABLE AND ITS COMPONENTS.  AND IF

22  THE HASHING FUNCTION IS PERFORMED ON THE DOWNLOADABLE,

23  SEPARATE FROM THE FETCHED COMPONENTS, YOU ARE GOING TO GET

24  DIFFERENT DOWNLOADABLE I.D.'S.

25       MOVING ON TO 33.

1        YOUR HONOR, THEY ASSERT THAT WE DIDN'T VERBATIM PULL OUR

2   CONSTRUCTION FROM THE *BLUE COAT I* ORDER.  THAT'S NOT THE CASE.

3   ALL THE WORDS THAT WE USED WERE DIRECTLY FROM THE *BLUE COAT I*

4   ORDER.

5        **THE COURT:**  I DON'T THINK THAT'S WHAT THEY SAID.  I

6   THINK THEY SAID YOU TOOK VERBATIM WORDS FROM DIFFERENT PLACES

7   AND SPLICED THEM TOGETHER.

8        IS THAT TRUE?

9        **MR. ADAMSON:**  WE DID PULL FROM DIFFERENT PORTIONS,

10  BUT I BELIEVE -- I COULD HAVE BEEN WRONG, YOUR HONOR, ABOUT

11  THEM DISPUTING THAT IT WAS VERBATIM.

12       THEY ALSO DISPUTED -- THEY ALSO STATED THAT JUDGE FREEMAN

13  ABANDONED HER CONSTRUCTION.  NOW, FOR THAT PROPOSITION THEY

14  CITE A SINGLE PAGE FROM THE END OF THE JURY INSTRUCTIONS.

15  IT'S NOT CLEAR TO ME THAT THAT'S THE FULL EXTENT OF THE JURY

16  INSTRUCTIONS.

17       REGARDLESS, WE CAN SEE FROM THE *BLUE COAT* ORDER DENYING

18  JMOL, THIS IS DOCKET 543, PAGE 16, WE SEE AN EXAMPLE FROM

19  JUDGE FREEMAN APPLYING THE VERY CONSTRUCTION SHE ADOPTED IN

20  HER SUMMARY JUDGMENT ORDER.

21       THERE, SHE UPHELD THE JURY'S VERDICT ON THE SPECIFIC

22  GROUND THAT FINJAN'S EXPERT TESTIFIED THAT ALL THE INDIVIDUAL

23  HASHES IN THE ACCUSED PRODUCT THERE WERE COMBINED INTO A

24  SINGLE IDENTIFIER FOR A MULTI-PART DOWNLOADABLE.

25       **THE COURT:**  OKAY.  I'LL LOOK AT THAT.

1         WHAT AM I TO MAKE OF THE FACT THAT REGARDLESS OF WHAT

2    HAPPENED IN THE JMOL, THE CONSTRUCTION THAT WAS SUBMITTED TO

3    THE JURY WAS THE INITIAL CONSTRUCTION?

4         **MR. ADAMSON:**  YOUR HONOR, I FOUND SOME CASE LAW

5    SUGGESTING THAT WHEN AN AGREED UPON CONSTRUCTION IS ADOPTED --

6    AND THAT'S SOMETHING TO KEEP IN MIND, TOO, YOUR HONOR.  THE

7    COURT DID NOT ORDER THE CONSTRUCTION AT THE OUTSET.  THE

8    PARTIES AGREED TO IT.  SO THE COURT NEVER AFFIRMATIVELY

9    ORDERED THE CONSTRUCTION THE PARTIES AGREED TO.

10        THERE'S SOME CASE LAW I FOUND ON THIS THAT SUGGESTS THAT

11   ONCE YOU'VE AGREED TO A CONSTRUCTION, THAT'S WHAT GOES TO THE

12   JURY.  BUT, REGARDLESS, JUDGE FREEMAN DID NOT ABANDON HER

13   CONSTRUCTION, AND I THINK THAT'S CLEAR FROM HER ORDER DENYING

14   JMOL.

15        **THE COURT:**  I JUST WANT TO MAKE SURE I UNDERSTAND.

16   WHEN YOU SAY "ABANDONED THE CONSTRUCTION", YOU MEAN THE

17   CONSTRUCTION IN THE SUMMARY JUDGMENT ORDER --

18        **MR. ADAMSON:**  THAT'S CORRECT.

19        **THE COURT:**  -- AS OPPOSED TO THE CONSTRUCTION THAT

20   WAS IN THE CLAIM CONSTRUCTION ORDER AND THAT WAS SUBMITTED TO

21   THE JURY, CORRECT?

22        **MR. ADAMSON:**  YOU'RE RIGHT, YOUR HONOR, THE AGREED

23   UPON OR THE STIPULATED CONSTRUCTION AS OPPOSED TO THE ONE THAT

24   WAS LATER CLARIFIED.

25        AND, YOUR HONOR, MY COLLEAGUE JUST REMINDED ME THAT FINJAN

1    ABIDED BY THE EFFECT OF HER SUMMARY JUDGMENT ORDER IN ITS

2    TRIAL PRESENTATION AS WELL.

3        SO, YOUR HONOR, I'LL MOVE ON QUICKLY TO THE *PALO ALTO*

4    *NETWORK* IPR BECAUSE I THINK THAT'S A REALLY INTERESTING CASE

5    TO KEEP IN MIND.

6        THERE, WHEN THE VALIDITY OF FINJAN'S PATENTS WERE AT

7    STAKE, IT WAS PALO ALTO NETWORKS ARGUING THAT A SINGLE

8    DOWNLOADABLE COULD CORRESPOND WITH MULTIPLE DOWNLOADABLE

9    I.D.'S.

10       AND FINJAN SAID -- YOU ASKED EARLIER WHETHER THE BROADEST

11   REASONABLE INTERPRETATION IMPACTED THIS.  YEAH.  FINJAN ARGUED

12   THAT EVEN UNDER THE BROADEST REASONABLE INTERPRETATION THAT

13   WAS AN INAPPROPRIATE CONSTRUCTION.  AND THE COURT CITED WITH

14   FINJAN.

15       WE DETERMINED THE PETITIONER'S PROPOSED CONSTRUCTION, THE

16   PETITIONER WAS PALO ALTO NETWORKS, IS NOT CONSISTENT WITH THE

17   DESCRIPTION IN THE '780 PATENT SPECIFICATION.  AND THAT'S ON

18   PAGE 8 OF THE EXHIBIT 12.

19       YOUR HONOR, THE *ESET* CASE IS ANOTHER CASE ON WHICH THE

20   PLAINTIFF'S RELY.  THERE, FINJAN ARGUED FOR PLAIN AND ORDINARY

21   MEANING, AND THE COURT REJECTED THAT.  THE COURT ADOPTED THE

22   PTO CONSTRUCTION AND PRESUMABLY THE PTO'S REASONING, AS YOU

23   WILL SEE ON PAGE 37, FROM THE IPR OF THE '780 PATENT.  SO THE

24   SAME REASONING CARRIES THROUGH THERE.

25       AND, YOUR HONOR, I THINK IT'S SIGNIFICANT THAT THE --

1    BECAUSE FINJAN WAS ARGUING FOR PLAIN AND ORDINARY MEANING,

2    THEY DIDN'T HAVE AN OPPORTUNITY TO RAISE THE ARGUMENT THAT

3    THEY RAISED IN *BLUE COAT I*, WHICH IS THAT "TOGETHERNESS" MEANS

4    SIMPLY TOGETHERNESS IN TIME, WHICH IS AN IMPROPER EXPANSION OF

5    THE CLAIM SCOPE.

6         NOW, THE OTHER DECISION ON WHICH THEY RELY, THE *SECURE*

7    *COMPUTING* CASE.  THIS IS SLIDE 38.  THERE, IN FOOTNOTE 4 --

8    THIS IS BEFORE THE *BLUE COAT I* SUMMARY JUDGMENT ORDER, BY THE

9    WAY.

10        THE COURT CITED THE PATENT'S APPLICATION.  THEY SAID WE'RE

11   GOING TO ADOPT THIS TOGETHER LANGUAGE BECAUSE WE THINK IT

12   FORECLOSES THIS ARGUMENT -- THIS IS... I THINK I MENTIONED 38,

13   THIS -- "THE CONSTRUCTION REFLECTS HOW THE INVENTOR UNDERSTOOD

14   AND USED THE TERM, AS EVINCED BY THE PATENT'S PROSECUTION

15   HISTORY".  SO TO UNDERSTAND THE *SECURE COMPUTING* CASE, WE'VE

16   GOT TO UNDERSTAND WHAT THE INVENTOR THOUGHT ABOUT THE

17   INVENTION.

18        TURNING TO PAGE 39, THE INVENTOR SAYS:  "AN ADVANTAGE OF

19   THE PRESENT INVENTION IS THAT IT PRODUCES THE SAME I.D. FOR A

20   DOWNLOADABLE REGARDLESS OF WHICH SOFTWARE COMPONENTS ARE

21   REFERENCED AND WHICH ARE INCLUDED."

22        SO, YOUR HONOR, ON 40, WE HAVE AN EXAMPLE OF HOW THIS

23   PURPORTED BENEFIT PLAYS OUT.  WE HAVE FOUR DOWNLOADABLES EACH

24   WITH A DIFFERENT ARRANGEMENT OF MISSING COMPONENTS.

25        UNDER THE PATENT -- UNDER THE CLAIMS, THOSE COMPONENTS ARE

1   FETCHED.  AND THEN BECAUSE THOSE ARE FETCHED AND THEN BECAUSE

2   THE HASHING FUNCTION IS PERFORMED ACROSS THE DOWNLOADABLE AND

3   ITS FETCHED COMPONENTS, THE SAME UNIQUE AND REPRODUCIBLE I.D.

4   IS PRODUCED NO MATTER WHAT COMPONENTS ARE MISSING FROM THE

5   DOWNLOADABLE.  THE ENTIRE BENEFIT IS DESCRIBED BY THE

6   INVENTOR.

7        FINJAN NOW ARGUES THAT THE HASHING FUNCTION NEED NOT BE

8   PERFORMED ACROSS THE COMBINATION OF A DOWNLOADABLE AND ITS

9   FETCHED COMPONENTS.  THEY ARGUE THAT EACH DOWNLOADABLE CAN

10  HAVE MORE THAN ONE DOWNLOADABLE I.D.  BUT THAT COMPLETELY

11  DESTROYS THE PURPORTED BENEFIT OF THE INVENTION.

12       IF YOU WILL REFER BACK -- YOU RECALL I PUT UP THE EXAMPLE

13  WITH MY LAST NAME.  IF THERE ARE COMPONENTS MISSING FROM MY

14  LAST NAME AND YOU PERFORM A HASHING FUNCTION ON IT, YOU ARE

15  GOING TO GET A DIFFERENT OUTCOME AS A RESULT OF YOUR HASHING

16  FUNCTION.  THE SAME THING APPLIES WHEN YOU DO THAT WITH A

17  DOWNLOADABLE.

18       AS OUR EXPERT -- AS THE DEFENDANT'S EXPERT SCOTT SCHAEFER

19  STATED IN HIS DECLARATION, THE ONLY WAY TO ENSURE THAT A

20  HASHING FUNCTION YIELDS THE SAME DOWNLOADABLE I.D., REGARDLESS

21  OF WHAT SOFTWARE COMPONENTS ARE INCLUDED, AND WHICH ARE ONLY

22  REFERENCED IS IF THE HASHING FUNCTION IS PERFORMED ACROSS BOTH

23  THE DOWNLOADABLE AND ITS FETCHED COMPONENTS.

24       SO JUDGE FREEMAN IN HER SUMMARY JUDGMENT ORDER IS RIGHT.

25  YOU CAN PERFORM ANY NUMBER OF HASHES YOU WANT, BUT THE ONLY

1    HASHING FUNCTION THAT'S COVERED UNDER THE CLAIMS IS THE ONE

2    THAT'S PERFORMED ACROSS THE DOWNLOADABLE AND ITS FETCHED

3    COMPONENTS TO GENERATE A SINGLE DOWNLOADABLE I.D.

4        NOW, THERE'S MULTIPLE QUOTES FROM THE SPECIFICATION THAT

5    RUN CONTRARY TO FINJAN'S POSITIONS.  I WON'T ADDRESS THOSE

6    HERE.

7        BUT I WOULD LIKE TO REFER YOUR ATTENTION TO 48, WHICH IS

8    AN EXCERPT FROM THE PROSECUTION HISTORY.  THERE, IN THE

9    MIDDLE, THERE IS A REFERENCE WHERE IT SAYS "AS PER CLAIM 7 AND

10   17."  7 AND 17 CORRESPOND WITH PRESENT DAY CLAIMS 1 AND 9.

11   THERE'S A REFERENCE, APPERSON, THAT DISCLOSES OF PERFORMING A

12   FUNCTION OF A SHA-HASH ON THE EXECUTABLE CODE.

13       AS YOU WILL SEE THROUGHOUT THAT PAGE, THE TERM "EXECUTABLE

14   CODE" IS TREATED AS SYNONOMOUS WITH "DOWNLOADABLE".  THE

15   EXAMINER MADE IT CLEAR THAT SIMPLY PERFORMING THE HASHING

16   FUNCTION ON A DOWNLOADABLE WITHOUT THE FIRST FETCHING, WITHOUT

17   PERFORMING THE FETCH COMPONENTS ACROSS THE DOWNLOADABLE AND

18   ITS FETCH COMPONENTS, WAS NOT SOMETHING THAT WAS COVERED --

19   NOT SOMETHING THAT WAS PATENTABLE.  IT WAS OLD NEWS.

20       SO, YOUR HONOR, BECAUSE FINJAN HAS TAKEN POSITIONS

21   CONTRARY TO THE ONES TAKEN HERE AS TO CLAIM SCOPE HAS SHOWN

22   THROUGH EXPERIENCE THAT IT WILL EXPLOIT AMBIGUITIES IN ORDER

23   TO REVIVE REJECTED CLAIM SCOPE --

24           **THE COURT:**  AND SO WOULD YOU IF YOU HAD THE CHANCE.

25           **MR. ADAMSON:**  YOU KNOW, YOUR HONOR, I WOULD HOPE THAT

1    WE WOULD NOT SWITCH POSITIONS IN THAT WAY.

2        BUT IN ANY CASE, I THINK THAT, YOU KNOW, THAT'S AN

3    IMPORTANT... ROLE FOR THE COURT IN THIS SITUATION.

4    BITDEFENDER WOULD ARGUE AS TO NOT -- IS TO FORECLOSE THOSE

5    THAT ARE ESPECIALLY EGREGIOUS AS HERE.

6            **THE COURT:**  LET ME ASK YOU THIS:  AM I, IN ESSENCE,

7    DECIDING BETWEEN THE *BLUE COAT* SUMMARY JUDGMENT STAGE

8    CONSTRUCTION THAT YOU ARE ADVOCATING AND THE PTAB

9    CONSTRUCTION?  ARE THOSE TWO IRRECONCILABLE?  DO I HAVE TO

10   PICK ONE?

11           **MR. ADAMSON:**  I DO THINK YOU HAVE TO PICK, YOUR

12   HONOR.  AND THE REASON IS BECAUSE THOSE OTHER CASES THAT

13   ADOPTED THIS CONSTRUCTION DID NOT ANTICIPATE BECAUSE IT WASN'T

14   BROUGHT BEFORE THEM.

15       THIS ARGUMENT THAT FINJAN CAME UP WITH, WHICH IS VERY

16   CREATIVE BUT VERY WRONG, THAT "TOGETHER" CAN MEAN SIMPLY

17   TOGETHERNESS IN TIME.  BECAUSE THEY HAVE COME UP WITH THAT

18   ARGUMENT BECAUSE THAT IS NOT SOMETHING THE OTHER COURTS

19   CONSIDERED, AND KEEP IN MIND THAT FINJAN WAS ON THE OPPOSITE

20   POSITION IN THE *PALO ALTO NETWORKS* IPR, IT'S VERY IMPORTANT

21   FOR THE COURT TO CUT OFF THAT NEW AND CREATIVE ARGUMENTS THAT

22   THESE OTHER COURTS DID NOT ANTICIPATE.

23           **THE COURT:**  ALL RIGHT.

24           **MS. KOBIALKA:**  SO THAT ARGUMENT WAS A LITTLE BIT ODD

25   TO ME BECAUSE THEIR BRIEF FOCUSED ON HOW JUDGE FREEMAN'S ORDER

1    WAS THE BASIS FOR THEIR CONSTRUCTION, YET THEY TAKE ISSUE WITH

2    HER CONCLUSION AS TO WHAT IT ACTUALLY MEANS WHEN SHE

3    SPECIFICALLY SAYS THAT THE '780 PATENT IS NOT SO LIMITED.

4         **THE COURT:**  AGAIN, AND THIS WILL BE... JUST SORT OF

5    OPAQUE QUALITY BUT NOT ANY CRITICISM AT ALL OF JUDGE FREEMAN,

6    JUST THAT THE SUBJECT MATTER IS OPAQUE; THERE IS A STATEMENT

7    ON PAGE 6 OF THE *BLUE COAT* ORDER THAT SAYS, "ACCEPTING THAT A

8    HASHING FUNCTION IS AN OPERATION THAT TRANSMUTES A FILE OF

9    INDETERMINATE SIZE OR LENGTH... THERE IS AMPLE DISCLOSURE IN

10   THE '780 PATENT TO SUPPORT DEFENDANT'S ARGUMENT THAT A HASHING

11   FUNCTION PERFORMED ON A DOWNLOADABLE TOGETHER WITH ITS

12   REFERENCED COMPONENTS MUST OPERATE ACROSS THE COMBINATION OF A

13   DOWNLOADABLE AND ITS FETCHED COMPONENTS."

14        THAT SEEMS TO ME TO BE WHAT DEFENDANTS ARE SAYING.  AND IS

15   IT YOUR POSITION THAT THE LANGUAGE YOU WERE TALKING ABOUT

16   BEFORE SUPERSEDES THAT?  IS IT INTERNALLY INCONSISTENT?  WHY

17   DOES THAT LINE THAT I JUST READ NOT DETERMINE THE ISSUE?  IF I

18   AGREE THAT THAT'S THE CONSTRUCTION THAT WAS ULTIMATELY SETTLED

19   UPON.

20        **MS. KOBIALKA:**  BECAUSE SHE PROVIDES THAT FULL

21   EXPLANATION AND THEN SUMS IT UP ON PAGE 7 SAYING:  SO I'VE

22   PROVIDED ALL OF THIS MEANING -- BECAUSE THIS IS HARD

23   TECHNOLOGY, THIS ISN'T SOMETHING THAT COMES EASILY TO YOUR

24   FINGERPRINTS -- SO LET ME BE VERY CLEAR.  THE '780 PATENT IS

25   NOT SO LIMITED THAT A HASHING FUNCTION MEANS A SINGLE HASH.

1          SHE'S EXPLICIT ABOUT THAT PARTICULAR TERM AFTER RECEIVING

2     ALL THE PAPERS AND UNDERSTANDING ALL THE VARIOUS ARGUMENTS,

3     AND SHE HAD BEEN PRETTY FAR INTO THE CASE, YOU KNOW, AT THIS

4     POINT.  AS WELL AS THE ARGUMENT THAT THE MORE SENSIBLE READING

5     WOULD BE THAT AN I.D. GENERATOR PERFORMS ONE OR MORE HASHING

6     FUNCTIONS TO GENERATE ONE OR MORE DOWNLOADABLE I.D.'S FOR ONE

7     OR MORE DOWNLOADABLES.

8          AND SO THOSE EXPLICIT DESCRIPTIONS OF WHAT IS NOT BY THIS

9     CONSTRUCTION, WAS WHAT WE ABIDED TO.  AND IT WAS AN ISSUE, YOU

10    KNOW, THAT WE -- THAT THE PARTIES HAD TO ADDRESS.  IT CAME UP

11    MULTIPLE TIMES THROUGHOUT THE CASE.  BUT THAT WAS THE HOLDING

12    THAT SHE HAD.  AND THEN THE PTAB ADOPTED IT.

13         SO THE EXHIBIT AT PAGE 8, AND I CAN GET YOU THE EXHIBIT

14    NUMBER, BUT ON PAGE 8, THE DISCUSSION THAT COUNSEL WAS

15    REFERRING TO WAS SAYING THAT THE PETITIONER'S PROPOSED

16    CONSTRUCTION IS NOT CONSISTENT.  NOT THE PATENTEE'S, BUT THE

17    PETITIONER'S WAS NOT CONSISTENT WITH THE '780 PATENT, AND

18    THEY, THEREFORE, CONSTRUE THE "PERFORMING THE HASHING

19    FUNCTION" BASED ON HOW THE COURT HAD DONE IT IN THE *BLUE COAT*

20    CASE.

21         SO THEY HAD THAT DECISION, THIS PTAB DECISION THAT WE HAVE

22    CAME AFTERWARDS, AFTER JUDGE FREEMAN'S ORDER.

23         DO YOU HAVE THE EXHIBIT NUMBER?

24         SORRY.  IT'S EXHIBIT 12.  MY APOLOGIES.  I HAD IT IN MY

25    HAND.

1       THE OTHER ISSUE, TOO, IS THAT WE WANT TO BE VERY CAREFUL

2   THAT YOU ARE NOT LIMITING THE WAY THAT THEY ARE USING THIS

3   TERMINOLOGY.  THEY DON'T DISPUTE IT, THAT THE HEART OF THE

4   ISSUE GOES TO WHETHER OR NOT THERE'S ONE HASH AND THE ONE OR

5   MORE DOWNLOADABLE IDENTIFIERS, AND SO THEIR CONSTRUCTION

6   IMPLIES THAT YOU HAVE TO PERFORM BOTH A DOWNLOADABLE AND THE

7   FETCH COMPONENTS IN A SPECIFIC MANNER.

8       SO WE WANT TO GET THIS ISSUE VETTED NOW WHICH IS WHY WE

9   HAVE RAISED IT, AND WE WANT TO ENSURE IT DOESN'T COME UP AGAIN

10  BECAUSE WE HAVE FACED THIS PARTICULAR ARGUMENT WITH THIS

11  CONSTRUCTION IN THE PAST.

12          **THE COURT:**  BUT, AGAIN, WE KNOW THAT YOUR

13  CONSTRUCTION HAS LED TO FURTHER DISPUTES BECAUSE THAT'S WHAT

14  HAPPENED IN *BLUE COAT*.  HOW IS YOUR CONSTRUCTION PUTTING IT TO

15  REST?

16          **MS. KOBIALKA:**  BY EXPLAINING THAT WHEN -- THAT

17  CONSTRUCTION DOES NOT MEAN IT'S LIMITED TO A SINGLE HASH.  YOU

18  CAN'T BUILD A DOWNLOADABLE IDENTIFIER BASED ON JUST ONE HASH.

19      AND THIS ALSO GOES TO THE FETCHING ARGUMENT, WHICH IS

20  NEXT, BUT YOU HAVE THE DOWNLOADABLE.  THEY ARE GOING TO HAVE

21  FETCHED SOFTWARE COMPONENTS.  THERE WILL BE HASHES OF THOSE

22  MADE.  YOU TAKE THOSE HASHES TOGETHER TO CREATE A DOWNLOADABLE

23  I.D.  IT DOESN'T HAVE TO BE A SINGLE HASH.

24      AND THAT IS THE DISPUTE.  THAT'S THE ISSUE THAT WE TAKE

25  WITH THEIR LANGUAGE BECAUSE THEY ARE SAYING YOU HAVE ONE HASH

1    AND ONE DOWNLOADABLE IDENTIFIER.

2           **THE COURT:**  NOW UNDERSTOOD.  IT SOUNDS AS THOUGH TO

3    ME, IF I WERE GOING TO ADOPT YOUR CONSTRUCTION, AND I AM NOT

4    SAYING I'M GOING TO, BUT IT WOULD NEED MORE.  IT WOULD NEED

5    SOMETHING TO THE EFFECT THAT, AND FURTHER, IT'S NOT LIMITED IN

6    THE WAY THAT BITDEFENDER SAYS.  OTHERWISE WE WILL JUST BE

7    LITIGATING THIS LIKE IN *BLUE COAT*.

8        IT SEEMS TO ME, BASED ON THE COURSE OF THE LITIGATION IN

9    *BLUE COAT*, THAT YOUR CONSTRUCTION ON ITS FACE WAS NOT

10   CONCLUSIVE AS TO THIS QUESTION, WHICH IS WHY THERE WAS THE

11   FURTHER LITIGATION AND THE EXPLAINING ORDER.

12       AND SO WOULD YOU AGREE THAT IF I SIMPLY ADOPTED YOUR

13   PROPOSED CONSTRUCTION I'M JUST INVITING THE EXACT SAME FIGHT

14   THAT YOU HAD IN *BLUE COAT*?

15          **MS. KOBIALKA:**  UNLESS YOU CITE TO HER ORDER WHERE SHE

16   EXPLICITLY SAYS IT'S NOT SO LIMITED TO A SINGLE HASH, AND THAT

17   THE I.D. GENERATOR PERFORMS ONE OR MORE HASHING FUNCTIONS TO

18   GENERATE ONE OR MORE DOWNLOADABLE I.D.'S FOR ONE OR MORE

19   DOWNLOADABLES.  THOSE WERE -- THAT WAS THE FINALE OVERALL TO

20   HER DISCUSSION ABOUT WHAT THIS TERMINOLOGY MEANT.

21       AND THIS WAS -- WE HAD NO ISSUES WITH IT.  IT'S BEEN

22   ADOPTED.  IT WAS APPLIED BY THE PTAB.  SO I THINK THAT

23   ACTUALLY GIVES THE CONSISTENCY ACROSS ALL THE VARIOUS MATTERS.

24          **THE COURT:**  ALL RIGHT.  I THINK AS MUCH LIGHT HAS

25   BEEN SHED ON THIS ONE AS CAN BE SHED.

1    WHAT'S OUR NEXT TERM?

2          **MS. KOBIALKA:**  YOUR HONOR, THE NEXT TERM HAS TO DO

3    WITH "FETCHING".  AND IT IS JUST A TERM THAT APPEARS IN

4    CLAIMS 1 AND 18.

5        SO WE'VE -- THE PLAIN AND ORDINARY MEANING IS APPROPRIATE

6    FOR FETCHING.  IT'S JUST RETRIEVING.  WE HAVE PROVIDED WHAT

7    THAT MEANS.  THERE'S NOT A MYSTERY TO IT.

8        THE BITDEFENDER PROPOSAL GOES FAR BEYOND THAT BECAUSE IT

9    SUGGESTS THAT THE SOFTWARE COMPONENT THAT'S BEING RETRIEVED

10   CANNOT BE INCLUDED IN THE DOWNLOADABLE.  BUT THIS IS DIRECTLY

11   CONTRARY, ACTUALLY, TO THE INTRINSIC EVIDENCE AND THE

12   SPECIFICATION OF THE '780.

13       SO IF YOU TURN TO... I PROVIDED SLIDE 14.  WE ACTUALLY

14   CITE A PORTION, COLUMN 4, LINES 56 THROUGH 61.  "THE I.D.

15   GENERATOR PREFERABLY PRE-FETCHES ALL COMPONENTS EMBODIED IN OR

16   IDENTIFIED BY THE CODE FOR DOWNLOADABLE I.D. GENERATION."

17       SO, HERE, WHAT THEY ARE TALKING ABOUT IS THAT IT COULD BE

18   EMBODIED INSIDE THE DOWNLOADABLE, THE FETCHED SOFTWARE

19   COMPONENTS, OR IT COULD BE OUTSIDE THE DOWNLOADABLE.  IT'S NOT

20   LIMITED TO THE CONSTRUCTION THAT THE SOFTWARE COMPONENT CANNOT

21   BE INCLUDED WITHIN THE DOWNLOADABLE.  LIKE THE SPECIFICATION

22   HAS AN EMBODIMENT THAT SAYS OTHERWISE.

23       AND THERE'S NO DISCLAIMER ABOUT THIS.  THEY CITE TO

24   PROSECUTION HISTORY, BUT THAT'S TALKING ABOUT SOMETHING

25   DIFFERENT.  IT'S ABOUT DIGITAL SIGNATURES AND AUTHENTICATING

1    WEB CONTENT.

2         THEY ACTUALLY CHOP UP SOME CITATIONS FROM FINJAN'S

3    PRELIMINARY RESPONSE AND IPR TO SOMEHOW SUGGEST THAT WE'VE

4    TAKEN OTHER POSITIONS.  WE SET THAT FORTH PRETTY CLEARLY IN

5    OUR REPLY BRIEF; THAT THEY ACTUALLY REMOVED SOME OF THE KEY

6    LANGUAGE IN THE DISCUSSION THAT WE WERE TALKING ABOUT WITH

7    RESPECT TO THE PRIOR ART, BUT THEY HAD REMOVED VERIFYING

8    WHETHER THE CONTENT OF THE DOCUMENT IS NOT CORRECTED TO

9    SOMEHOW SUGGEST THAT WE WERE TAKING A POSITION REGARDING THE

10   FETCHING SOFTWARE, WHETHER OR NOT THE SOFTWARE COMPONENTS

11   COULD ALSO BE INCLUDED INSIDE THE DOWNLOADABLE.

12        AND THE ONLY WAY THEY WERE ABLE TO CONSTRUCT THIS

13   CONSTRUCTION THAT THEY HAD WAS BY, FRANKLY, JUST

14   MISCHARACTERIZING WHAT HAD OCCURRED.  AND I THINK WE LAID THAT

15   OUT IN FAIR DETAIL AS TO THE PROBLEMS WITH WHAT THEY WERE

16   STATING HAD HAPPENED PREVIOUSLY.

17        THE PATENT ITSELF DOES NOT LIMIT, IT SUGGESTS THAT THE

18   FETCH COMPONENTS HAVE TO BE OUTSIDE THE DOWNLOADABLE, AND

19   THAT'S REALLY THE NATURE OF THE DISPUTE.  AND IT SHOULDN'T GO

20   BEYOND; FETCHING SHOULD JUST BE RETRIEVING.

21             **THE COURT:**  ALL RIGHT.  THIS IS ANOTHER ONE,

22   THOUGH... I KNOW THE FEDERAL CIRCUIT'S PRECEDENCE SAYS THAT

23   EVEN WITH A PLAIN AND ORDINARY MEANING CONSTRUCTION, I NEED TO

24   ACTUALLY RESOLVE THE DISPUTE.

25        AND HERE IT WOULD SEEM TO ME I WOULD HAVE TO SAY SOMETHING

1    TO THE EFFECT OF ITS PLAIN AND ORDINARY MEANING, THAT PLAIN

2    AND ORDINARY MEANING IS RETRIEVING AND IT IS NOT LIMITED IN

3    THE MANNER THAT IS BEING PROPOSED, AND THAT WOULD, IN YOUR

4    VIEW, TAKE CARE OF IT?

5            **MS. KOBIALKA:**  THAT WOULD BE FINE.

6            **THE COURT:**  ALL RIGHT.  WHY DON'T I HEAR FROM THE

7    DEFENDANT.

8            **MR. ADAMSON:**  YOUR HONOR, IF I COULD, I WOULD LIKE TO

9    MAKE A CORRECTION IN THE RECORD, IF YOU WILL ALLOW IT, WITH

10   REGARD TO WHAT OPPOSING COUNSEL SAID ABOUT THE FINALE IN THE

11   *BLUE COAT* SUMMARY JUDGMENT ORDER.

12       REFERRING TO PAGE 11, THERE'S A PARAGRAPH THAT SAYS:

13   "FINALLY", SO IT SUGGESTS THIS IS THE FINALE.  WHEN A HASHING

14   FUNCTION IN A DOWNLOADABLE I.D. ARE TAKEN OUT OF A VACUUM AND

15   CONSIDERED IN THE CONTEXTS OF A SPECIFIC DOWNLOADABLE BEING

16   PROCESSED, IT IS CLEAR THAT THE PHRASE "PERFORMING A HASHING

17   FUNCTION ON THE DOWNLOADABLE TOGETHER WITH ITS FETCHED

18   SOFTWARE COMPONENTS TO GENERATE A DOWNLOADABLE I.D." REQUIRES

19   A COMPUTATION OR A COMBINATION OF COMPUTATIONS.

20       SO, YES, THERE CAN BE MULTIPLE HASHES THAT TRANSMUTES THE

21   DOWNLOADABLE AND ITS COMPONENTS INTO A UNIQUE AND REPRODUCIBLE

22   I.D. FOR THE DOWNLOADABLE.

23       FINJAN'S SUGGESTION THAT JUDGE FREEMAN STATED THAT YOU CAN

24   HAVE MULTIPLE DOWNLOADABLE I.D.'S FOR A SINGLE DOWNLOADABLE IS

25   NOT ACCURATE.

1          **THE COURT:**  OKAY.  I'M SURE I'M GOING TO BE SPENDING

2     A LOT OF TIME PARSING THE ORDER, BUT I TAKE YOUR POINT.

3          **MR. ADAMSON:**  YOUR HONOR, MOVING ON TO TERM 5.

4       FINJAN'S POSITIONS HERE, MUCH LIKE ON THE PREVIOUS TERM,

5     CONTRADICT THE SPECIFICATION AND THE PROSECUTION HISTORY.

6       51 IS ANOTHER ILLUSTRATION OF WHAT FETCHING LOOKS LIKE.

7     AND THE REASON WE KNOW THAT, YOUR HONOR, IS FIGURE 8 FROM THE

8     '780 PATENT.

9       FIGURE 8 DESCRIBES FIVE DISCRETE STEPS TOWARD THE

10    GENERATION OF A DOWNLOADABLE I.D.  THE SECOND STEP IS TO FETCH

11    DOWNLOADABLE COMPONENTS.  THE NEXT STEP IS TO INCLUDE THOSE

12    FETCHED COMPONENTS IN THE DOWNLOADABLE.

13      YOUR HONOR, IF DOWNLOADABLE COMPONENTS ARE ALREADY

14    INTERNAL TO THE DOWNLOADABLE, HOW CAN THE I.D. GENERATOR

15    INCLUDE THEM AFTER FETCHING THEM?

16      THIS IS A DIRECT CONTRADICTION OF THE SPECIFICATION, AND I

17    THINK IT WOULD, FRANKLY, CONFUSE THE JURY IF THEY WERE ALLOWED

18    TO ARGUE THAT FETCHING COULD REFER TO SOMETHING INTERNAL TO

19    THE DOWNLOADABLE.

20      NOW, WITH REFERENCE TO SLIDE 54, FINJAN'S POSITIONS ALSO

21    CONTRADICT THE PROSECUTION HISTORY.  THIS IS PAGE 5 FROM THE

22    FEBRUARY 25TH, 2004 AMENDMENT AND RESPONSE.

23          **THE COURT:**  WHY DON'T YOU, BEFORE WE GET TO THE

24    DISCLAIMER ARGUMENT --

25          **MR. ADAMSON:**  SURE.

1          **THE COURT:**  THE SLIDE THAT MS. KOBIALKA WAS

2     DISCUSSING IS REFERRING TO COLUMN 4, LINE 60 THROUGH 65, AND

3     THERE'S A REFERENCE THERE TO "PREFETCHING ALL CLASSES EMBODIED

4     IN OR IDENTIFIED BY THE JAVA".

5        WHY DOESN'T THAT EMBODIMENT SHOW THAT COMPONENTS IN THE

6     DOWNLOADABLE COULD BE FETCHED AND RETRIEVED?

7          **MR. ADAMSON:**  YOUR HONOR, I'LL REFER YOU TO SLIDE 55

8     WHERE THAT QUOTE IS IDENTIFIED.

9        AND THE REASON THAT THAT EMBODIED LANGUAGE DOES NOT MEAN

10    WHAT FINJAN PURPORTS IS BECAUSE JAVA CLASSES CAN NEVER

11    PHYSICALLY CONTAINED EACH OTHER.  SO IN THIS CONTEXT, JAVA

12    CLASSES CANNOT BE EMBODIED IN THE SENSE THAT ONE JAVA CLASS IS

13    IN ANOTHER.

14         **THE COURT:**  IS THAT FROM THE SPECIFICATION?  IS THAT

15    YOUR EXPERT'S -- WHAT IS THE BASIS FOR THAT ARGUMENT?

16         **MR. ADAMSON:**  THAT BASIS -- THAT'S BASED ON A

17    DISCUSSION I HAD WITH THE EXPERT, AND THAT WOULD BE SOMETHING

18    THAT BITDEFENDER WOULD BE HAPPY TO FILE A SUPPLEMENTARY

19    DECLARATION TO THAT EFFECT.

20         **THE COURT:**  WELL, NO.  IF IT'S NOT IN THE RECORD NOW

21    THE FACT THAT YOU'RE COMING UP WITH IT AND SAYING IT'S

22    DISPOSITIVE TELLS ME A LOT.

23        YOU'RE SAYING YOU DON'T HAVE ANYTHING IN THE RECORD ON

24    THIS POINT RIGHT NOW FROM YOUR EXPERT?

25         **MR. ADAMSON:**  THE FIRST TIME FINJAN RAISED THIS

1  ARGUMENT WITH RESPECT TO THE... TO THIS PARTICULAR POINT WAS

2  IN ITS REPLY BRIEF.  SO WE HAD NO OCCASION ON WHICH TO RESPOND

3  TO THAT POINT.

4      THEY DO RAISE ANOTHER ARGUMENT WITH RESPECT TO JAVA, BUT

5  THAT HAD TO DO WITH JAR FILES.  AND BITDEFENDER'S EXPERT

6  SCHAEFER DID DISPUTE THE POINT WITH RESPECT TO JAR FILES.

7      THERE, IF I'LL REMIND YOU, FINJAN WAS ARGUING THAT THIS

8  EMBODIMENT MUST MEAN THAT COMPONENTS INTERNAL TO A

9  DOWNLOADABLE COULD BE FETCHED BECAUSE JAVA COMPONENTS CAN

10  IMPLEMENT -- CAN BE EMBEDDED INTO HTML USING A JAR FILE

11  WHEREIN COMPONENTS ARE SELF-CONTAINED WITHIN THE JAR FILE.

12      **THE COURT:**  ALL RIGHT.  BUT, LOOK, I'M LOOKING AT

13  THEIR OPENING CLAIM CONSTRUCTION BRIEF.  THEY RAISE THE EXACT

14  ARGUMENT THAT WE ARE TALKING ABOUT.

15      I DON'T THINK IT'S ACCURATE TO SAY THAT THEY ONLY RAISED

16  IT IN REPLY.  IF YOU HAD A RESPONSE FROM YOUR EXPERT, I THINK

17  YOU WERE ON NOTICE THAT YOU NEEDED TO PROVIDE IT.  AND I DON'T

18  THINK THAT SUPPLEMENTING THE RECORD AT THIS POINT IS

19  APPROPRIATE.  YOU HAD A FAIR OPPORTUNITY TO MEET THE ARGUMENT.

20      **MR. ADAMSON:**  YOUR HONOR, I THINK IF YOU LOOK CLOSELY

21  AT THE... AT SCHAEFER'S DECLARATION, ALTHOUGH IT WAS

22  RESPONDING TO A SLIGHTLY DIFFERENT POINT, I THINK YOU WILL GET

23  TO THE SAME CONCLUSION THAT JAVA CLASSES CANNOT CONTAIN OTHER

24  JAVA CLASSES.

25      **THE COURT:**  ALL RIGHT.

```
1          MR. ADAMSON:  SO PROPERLY UNDERSTOOD, GIVEN THE

2    CONTEXT, A PERSON OF ORDINARY SKILL IN THE ART WOULD

3    UNDERSTAND THIS PHRASE TO MEAN EMBODIED IN OR STRICTLY

4    SPEAKING IDENTIFIED BY.

5          NOW, YOUR HONOR, IN ADDITION THERE'S FEDERAL CIRCUIT CASE

6    LAW THAT SUGGESTS THAT WHERE AN EMBODIMENT IS EXPLICITLY

7    DISCLAIMED, THAT THOSE EMBODIMENTS SHOULD BE NOT TAKEN INTO

8    ACCOUNT FOR CONSTRUING THE CLAIMS, WHICH LEADS ME TO MY

9    DISCLAIMER ARGUMENT.

10          IN THE FEBRUARY 25TH, 2004 AMENDMENT AND RESPONSE, PAGE 5,

11    I'VE HIGHLIGHTED THERE IN THE MIDDLE, THE APPERSON REFERENCE,

12    WHICH IS THE ONE I REFERRED TO EARLIER.  THAT'S THE ONE WHERE

13    APPERSON SAID SIMPLY PERFORMING A HASHING FUNCTION ON A

14    DOWNLOADABLE IS NOT SOMETHING THAT WAS PATENTABLE.  IT'S OLD

15    NEWS.

16          THIS IS THE INVENTOR ATTEMPTING TO DISTINGUISH APPERSON.

17    SAYS, "THE APPERSON REFERENCE DOES NOT GENERATE DOWNLOADABLE

18    I.D.'S BASED ON THE FETCHED EXECUTABLE COMPONENTS."  THEN

19    LATER IT REFERS TO THESE FETCHED EXECUTABLE COMPONENTS AS

20    ADDITIONAL COMPONENTS.

21          SO THERE'S A CLEAR INDICATION THAT THE FETCHING IS WITH

22    REFERENCE TO THINGS THAT ARE EXTERNAL TO THE DOWNLOADABLE.

23    AND THEY MADE THIS CLEAR BECAUSE THE EXAMINER ORIGINALLY SAID,

24    WHOA, WHOA, WHOA.  TO THE EXTENT YOU ARE ARGUING YOU CAN JUST

25    HASH A DOWNLOADABLE AND THE COMPONENTS INTERNAL THERETO,
```

```
1    THAT'S SOMETHING THAT'S ALREADY BEEN DONE.  THEY SAID, NO, NO,

2    NO, THESE FETCH COMPONENTS ARE ADDITIONAL COMPONENTS.

3         SO IT'S A VERY CLEAR DISCLAIMER, YOUR HONOR.

4         AND I HAVE NO FURTHER POINTS AT THIS TIME.  IF YOU HAVE

5    ANY QUESTIONS.

6              THE COURT:  I'M JUST LOOKING....

7              MR. ADAMSON:  YOUR HONOR --

8              THE COURT:  I'M LOOKING TO SEE, DID YOU CITE THIS

9    FEBRUARY 25TH, 2004 DOCUMENT IN YOUR BRIEF?

10             MR. ADAMSON:  YOUR HONOR, THERE'S A CITATION... I

11   HAVE A COPY OF THAT, YOUR HONOR.

12        THERE'S A CITATION IN OUR BRIEF THAT WAS AN ID. CITATION.

13   AND I BELIEVE IT'S ON PAGE 12.  AND, UNFORTUNATELY, BECAUSE IT

14   WAS AN ID., AS WE WERE RUNNING THROUGH OUR REVISIONS, I

15   BELIEVE THAT EXHIBIT WAS EXCLUDED, BUT I DID BRING COPIES OF

16   THIS FROM THE FILE HISTORY.

17             THE COURT:  BUT, AGAIN, I JUST DON'T -- YOUR SLIDE 54

18   IS REFERRING TO A FEBRUARY 25TH, 2004 DOCUMENT, CORRECT?  THAT

19   WAS THE ARGUMENT YOU JUST FOCUSED ON.

20             MR. ADAMSON:  THAT'S CORRECT.

21             THE COURT:  WHERE IS THAT DOCUMENT DESCRIBED IN YOUR

22   BRIEF?

23             MR. ADAMSON:  INITIALLY, WHEN I WAS COMPILING THE

24   BRIEF, I HAD A 160-PAGE DOCUMENT THAT INCLUDED THE ENTIRE FILE

25   HISTORY.  AT KIND OF THE LAST MINUTE WE DECIDED TO
```

```
 1   DISAGGREGATE THAT AND BREAK IT UP INTO ITS INDIVIDUAL
 2   COMPONENTS.  SO THERE IS A CITATION ON PAGE 11, YOUR HONOR, I
 3   BELIEVE.
 4       I'M LOOKING AT THE WRONG BRIEF.
 5           THE COURT:  WOULD YOU AGREE --
 6           MR. ADAMSON:  IT'S ON PAGE 12.  IT SAYS, IN THE
 7   PARAGRAPH THAT STARTS "THE MOST DEFINITIVE REJECTION", SO
 8   STARTING WITH, "TO DISTINGUISH THE PRIOR ART, THE APPLICANT
 9   LATER EMPHASIZED THAT PRIOR ART DOES NOT GENERATE DOWNLOADABLE
10   I.D. BASED ON THE FETCHED EXECUTABLE COMPONENTS, WHICH ARE
11   ADDITIONAL COMPONENTS."
12           THE COURT:  WHERE ARE YOU LOOKING?
13           MR. ADAMSON:  THIS IS IN THE FIRST FULL PARAGRAPH ON
14   PAGE 12 OF BITDEFENDER'S OPENING -- RESPONSIVE BRIEF.
15           THE COURT:  WHAT I'M SAYING IS A REFERENCE TO AN
16   OCTOBER 13TH, 2013 OFFICE ACTION RESPONSE.
17           MR. ADAMSON:  THAT'S RIGHT, YOUR HONOR.
18       THEN I HAD AN ID. CITATION.  AND WHAT HAPPENED THERE, IS
19   THERE WAS AN ID. REFERRING BACK TO A DOCUMENT THAT WAS
20   INITIALLY THE FULL FILE HISTORY.
21           THE COURT:  OKAY.  CAN YOU AGREE WITH ME THAT YOU
22   DIDN'T GIVE THEM NOTICE UNTIL THIS SLIDE YOU JUST STARTED
23   TALKING ABOUT OF YOUR RELIANCE ON THIS FEBRUARY 25TH, 2004
24   DOCUMENT?  CORRECT?
25           MR. ADAMSON:  I DON'T KNOW IF THAT'S ENTIRELY CLEAR
```

1    BECAUSE THE FILE HISTORY ON WHICH I BASE THIS WAS ACTUALLY A

2    FINJAN EXHIBIT.  AND I THINK IT SHOULD HAVE BEEN --

3            **THE COURT:**  THINK ABOUT YOUR CREDIBILITY, BIGGER THAN

4    THIS CASE.

5            **MR. ADAMSON:**  I UNDERSTAND, YOUR HONOR.

6            **THE COURT:**  THE IDEA THAT IT WAS SOMEWHERE IN THE

7    FILE, YOU'RE NOW FOCUSING ON A DOCUMENT, AND REALLY RELYING

8    MOST HEAVILY ON A DOCUMENT THAT YOU DID NOT RAISE IN YOUR

9    BRIEF, CORRECT?

10           **MR. ADAMSON:**  I THINK THAT'S CORRECT, YOUR HONOR.

11           **THE COURT:**  SO I DON'T NEED TO HAVE IT SUBMITTED

12   BECAUSE IT SHOULD HAVE BEEN IN THE RECORD THAT WAS PROPERLY

13   PUT IN FOR PURPOSES OF THE CLAIM CONSTRUCTION HEARING SO THAT

14   THEY WOULD HAVE A CHANCE TO RESPOND TO IT IN PARTICULAR IF YOU

15   THOUGHT IT WAS IMPORTANT.

16           **MR. ADAMSON:**  YOUR HONOR, I RESPECT THAT DECISION,

17   YOUR HONOR.

18           **THE COURT:**  ALL RIGHT.

19      SO WE'RE HALFWAY THROUGH.  WHY DON'T WE TAKE JUST A

20   FOUR-MINUTE LEG-STRETCHING BREAK AND COME BACK.

21       (RECESS TAKEN AT 3:52 P.M.; RESUMED AT 3:57 P.M.)

22           **THE COURT:**  ALL RIGHT.  WHY DON'T WE PROCEED TO THE

23   REST.  IT IS FIVE MINUTES TO FOUR, AND I WOULD LIKE TO AIM TO

24   HAVE THE HEARING DONE BY FIVE OR NOT TOO LONG AFTER.  SO WHY

25   DON'T WE TAKE THAT INTO ACCOUNT IN CALIBRATING.

1        **MS. KOBIALKA:**  CAN I MAKE ONE VERY BRIEF POINT?  I

2    THINK I CAN DO IT IN THREE SENTENCES ABOUT THE LAST TERM?

3        **THE COURT:**  YES.

4        **MS. KOBIALKA:**  FINJAN IS NOT TAKING THE POSITION THAT

5    THE FETCH SOFTWARE COMPONENTS HAVE TO BE INSIDE OR OUTSIDE.

6    IT COULD BE EITHER.  WE'RE JUST SAYING IT CAN'T BE LIMITED TO

7    JUST BEING OUTSIDE OF THE DOWNLOADABLE.

8        **THE COURT:**  THAT I UNDERSTOOD.

9        **MS. KOBIALKA:**  OKAY.  THANK YOU, YOUR HONOR.

10       SO THE NEXT PATENT IS THE '154 PATENT.  AND THE FIRST TERM

11   WE HAVE IS "A CONTENT PROCESSOR".  I'M HOPING THIS ISN'T GOING

12   TO BE A LONG ONE AS YOU SHOULD BE FAMILIAR WITH IT FROM

13   PREVIOUS MATTERS AND CONSTRUCTIONS.

14       I'LL JUST HIGHLIGHT, YOU KNOW, A COUPLE POINTS ON IT, AND

15   THEN IF YOU HAVE ANY QUESTIONS, I'LL LET YOU DIRECT THE

16   ARGUMENT HERE BECAUSE I DON'T WANT TO REHASH ANYTHING.

17       **THE COURT:**  THIS ONE, AS YOU'RE SAYING, I HAVE

18   CONSTRUED IT BEFORE.  THE DEFENDANTS' ARGUING THAT I SHOULD

19   RECONSIDER THAT IN LIGHT OF *MEDIA RIGHTS*, AND SO WHY DON'T WE

20   JUST FOCUS ON THAT.  IT DIDN'T SEEM TO ME THAT THAT'S

21   SELF-EVIDENT, BUT WHAT'S YOUR REBUTTAL TO THAT?

22       **MS. KOBIALKA:**  SO *MEDIA RIGHTS* ISN'T A SHIFT IN THE

23   LAW.  IN FACT, IN THE *PROOFPOINT* CASE, IF YOU RECALL, YOU

24   SPECIFICALLY REQUESTED, ONCE THE *WILLIAMSON* CASE CAME OUT,

25   WHICH DID ACTUALLY HAVE A CHANGE IN THE LAW IN TERMS OF HOW

YOU LOOK AT THESE PARTICULAR CLAIMS, HAD SOME BRIEFING.  AND

THEN BASED ON THAT BRIEFING, YOU THEN ISSUED THE ORDER IN

*PROOFPOINT*.

AND WHAT I NOTE IS THAT THE *PROOFPOINT* ORDER WAS IN

DECEMBER OF 2015.  THE *MEDIA RIGHTS* DECISION WAS ACTUALLY SOME

THREE MONTHS EARLIER.  AND I SUSPECT THAT THAT WAS PART OF

YOUR CONSIDERATION, IT WASN'T NECESSARILY CITED, BUT GIVEN THE

CITATIONS THAT YOU HAD TO THE *WILLIAMSON* CASE AND

UNDERSTANDING YOU APPLIED THE APPROPRIATE STANDARD UNDER THAT

PARTICULAR CASE, *MEDIA RIGHTS* HAS NO REAL IMPACT IN THIS

PARTICULAR CASE.

AND, ONCE AGAIN, THERE'S NO NONCE TERM.  THERE HASN'T BEEN

THAT KIND OF A DETERMINATION HERE WITH RESPECT TO THIS CLAIM

ELEMENT OF "A CONTENT PROCESSOR".  AND THIS WAS SOMETHING YOU

DEALT WITH IN THE PREVIOUS CASE AND YOU HAD MADE NUMEROUS

CITATIONS ACTUALLY WITHIN THE *PROOFPOINT* ORDER, PAGE 11, TO

THE SPECIFICATION ABOUT THE NATURE OF THE STRUCTURE AND THE

LOCATION OF IT.  YOU KNOW, TO ADD TO ALL OF THIS, THE

TERMINOLOGY IS ONE THAT IS COMMONLY KNOWN BY THOSE SKILLED IN

THE ART AS WELL AS THE PROCESSOR NETWORK CONTENT ELEMENTS AS

WELL.

SO THERE REALLY ISN'T ANYTHING HERE.  I CAN DISTINGUISH

*MEDIA RIGHTS* IF YOU WANT ME TO SPECIFICALLY ON THOSE

PARTICULAR FACTS, BUT I DO THINK THAT THE *ZERO CLICK VERSUS*

*APPLE* CASE JUST CONFIRMS THAT WHAT WE HAVE AND THE MANNER IN

1    WHICH YOU DID YOUR ANALYSIS WAS APPROPRIATE IN THE *PROOFPOINT*

2    CASE.

3        SO WITH THAT, I WOULD LIKE TO TURN TO THEIR ALTERNATIVE

4    CONSTRUCTION, WHICH IS THAT IT SHOULD BE LIMITED TO "A WEB

5    BROWSER".

6        SO THEY CITE TO A NUMBER OF PLACES WHERE THEY TALK ABOUT

7    ONE EMBODIMENT, SUCH AS A WEB BROWSER, BUT IT'S NOT SO

8    LIMITED.  AND, IN FACT, I HAVE A SLIDE, SLIDE 18 WHICH I'VE

9    PROVIDED TO YOU, AND IT CITES TO THE '154 PATENT, COLUMN 13,

10   LINES 64 THROUGH COLUMN 14 LINE 1, WHICH EXPLICITLY DESCRIBES

11   HOW THE CONTENT PROCESSOR CAN BE A WEB BROWSER OR A JAVA

12   VIRTUAL MACHINE.  IT CAN BE AN APPLICATION, IN ESSENCE.

13       SO IT'S NOT LIMITED TO A WEB BROWSER.  AND SO AS A RESULT,

14   THERE REALLY ISN'T ANY APPROPRIATE -- IT'S NOT APPROPRIATE TO

15   BASICALLY TAKE THAT EMBODIMENT AND IMPORT IT INTO THE

16   CONSTRUCTION HERE GIVEN THE BREADTH --

17             **THE COURT:**  ALL RIGHT.

18             **MS. KOBIALKA:**  -- OF THE DESCRIPTION.

19             **THE COURT:**  WHY DON'T WE HEAR FROM THE DEFENSE ON

20   THAT ONE.

21             **MR. CROSBY:**  SO, YOUR HONOR, WHETHER OR NOT THE COURT

22   EXPRESS -- HAD *MEDIA RIGHTS* IN FRONT OF IT WHEN IT DECIDED THE

23   CLAIM CONSTRUCTION IN *PROOFPOINT*, THE FACT OF THE MATTER IS

24   THAT *MEDIA RIGHTS* WAS NOT CITED OR DISTINGUISHED IN THE

25   COURT'S DECISION.

1          **THE COURT:**  SO WHAT?  NEITHER WAS *ZERO CLICK* WHICH

2     NOW HAS SPOKEN TO THE ISSUE AGAIN.

3        I THINK YOU CAN GET TO YOUR POINT PRETTY QUICKLY.  IS

4     THERE SOMETHING YOU WANT TO AUGMENT IN YOUR PAPERS?  I GET THE

5     ARGUMENT IN YOUR PAPERS.

6          **MR. CROSBY:**  YES, YOUR HONOR.  SORRY.

7        THE COURT'S RULE OF DECISION IN *PROOFPOINT* EXPRESSLY

8     CONTRADICTS THE READING OF THE LAW THAT *MEDIA RIGHTS* SAID WAS

9     CORRECT.

10         **THE COURT:**  OKAY.  SO IN THAT -- IF THAT'S YOUR

11    POSITION, YOU WILL HAVE THAT PRESERVED FOR APPEAL.  RIGHT?

12         **MR. CROSBY:**  WE WILL --

13         **THE COURT:**  WHAT YOU ARE SAYING IS, MY CONSTRUCTION

14    WAS LEGALLY INCORRECT.  IF I FOLLOW IT AGAIN HERE, YOU WILL BE

15    ABLE TO APPEAL THAT, CORRECT?

16         **MR. CROSBY:**  YES, YOUR HONOR.  BUT IT WOULD BE

17    UNNECESSARY IF THE COURT WERE TO RECONSIDER.  THE CASE WAS NOT

18    BROUGHT TO THE COURT'S ATTENTION BY ANY OF THE PARTIES.  THERE

19    WAS NO NOTICE OF SUPPLEMENTAL AUTHORITY.

20         **THE COURT:**  I DO NOT THINK THAT *MEDIA RIGHTS*

21    ESTABLISHES THAT MY EARLIER CONSTRUCTION WAS LEGALLY

22    INCORRECT.  I THINK THAT *ZERO CLICK* AFFIRMS IT.  AND I

23    UNDERSTAND THAT YOUR POSITION IS TO THE CONTRARY.

24         **MR. CROSBY:**  ALL RIGHT, YOUR HONOR.  WELL, I WON'T

25    BELABOR THE POINT IF YOU'VE MADE UP YOUR MIND.  WE HAVE

1    PRESERVED THE ISSUE FOR APPEAL.

2         WITH RESPECT TO THE ALTERNATIVE CONSTRUCTION, THE

3    ALTERNATIVE CONSTRUCTION WAS BASED ON WHAT WE BELIEVE WOULD BE

4    NECESSARY TO FIND STRUCTURE TO AVOID THE APPLICATION OF

5    112(6), AND SO WE'LL WITHDRAW THE ALTERNATIVE CONSTRUCTION ON

6    THAT BASIS.

7              THE COURT:  ALL RIGHT.

8              MS. KOBIALKA:  YOUR HONOR, THE NEXT TWO TERMS IN THE

9    '154, I THINK WE CAN DO THEM TOGETHER, "A CALL TO A FIRST

10   FUNCTION" AND "A SECOND FUNCTION" IF THAT WOULD BE OKAY?

11             THE COURT:  THAT'S FINE.

12             MS. KOBIALKA:  SO IN BOTH INSTANCES, HERE THE DISPUTE

13   IS JUST WHETHER OR NOT THE PLAIN AND ORDINARY MEANING SHOULD

14   APPLY.  AND I HAVE, FOR YOUR REFERENCE, SLIDES 19 AND 20 WHICH

15   SET FORTH THE CONSTRUCTION.

16        WE HAVE PLAIN AND ORDINARY MEANING.  BITDEFENDER HAS, YOU

17   KNOW, VERY LENGTHY PROPOSED CONSTRUCTION THAT THEY HAVE

18   PROPOSED.  ONE FOR A CALL TO THE FIRST FUNCTION.  IT STARTS

19   OUT "A PROGRAMMATIC STATEMENT" AND CONTINUES ON.  AND THEN A

20   SECOND FUNCTION TALKS ABOUT THE "ORIGINAL FUNCTION".

21        SO IN AN EFFORT TO REALLY CUT TO THE CHASE HERE, THEIR

22   WHOLE ARGUMENT RESTS ON SOME DISAVOWAL THAT THEY ARE SAYING

23   OCCURRED BECAUSE THERE WAS A REFERENCE TO ONE DESCRIPTION OF

24   THE PRESENT INVENTION.  AND WHAT THEY ARE ESSENTIALLY TRYING

25   TO DO IS REWRITE THE CLAIMS OR LIMITATIONS.  THERE'S LOTS OF

1    DESCRIPTIONS IN THE PATENT ABOUT WHAT THE PRESENT INVENTION

2    CAN RELATE TO IN THE VARIOUS EMBODIMENTS.

3        THE TYPES OF CASES THAT THEY ARE CITING TO AND THEY'RE

4    RELYING UPON ARE THOSE INSTANCES WHERE IT TALKS ABOUT THE

5    PRIOR ART DOES X, Y, AND Z.  THE PRESENT INVENTION IS ABOUT A,

6    B, AND C.  SO THAT'S THE KIND OF DISAVOWAL YOU WOULD HAVE, BUT

7    THAT IS NOT WHAT HAS OCCURRED IN THESE PATENTS.  AND WE

8    PROVIDED CITATIONS IN OUR BRIEF, WHICH I'M NOT GOING TO

9    REPEAT.

10       WHAT WE WOULD REALLY LIKE TO FOCUS THE COURT ON, THOUGH,

11   THE HISTORY OF THIS PATENT MATTERS.  AND WE DID TALK ABOUT IT

12   IN OUR BRIEF THAT THERE IS -- THIS WAS A BROADENING

13   CONTINUATION OF AN EARLIER PATENT THE '289.  AND THE '289 IS

14   NOT AT ISSUE HERE.

15       THAT PARTICULAR PATENT WITH THE EARLIER '289 PATENT WAS

16   MUCH NARROWER.  AND THE CONTINUATION, WHICH TURNED OUT INTO

17   THE '154 IS MUCH BROADER BECAUSE THE PATENT OFFICE DETERMINED

18   THAT WE WOULD BE ABLE TO ENSURE THAT WE WEREN'T AS NARROW WITH

19   RESPECT TO THE '289.

20       SO IF YOU TURN TO SLIDE 21, WE'VE TAKEN SOME OF THE CLAIM

21   LANGUAGE OUT OF THE '289 PATENT TO DEMONSTRATE THAT'S REALLY

22   WHAT THE DEFENDANTS ARE TRYING TO DO IN REWRITING THE CLAIMS

23   TO MAKE IT REALLY NARROW TO LOOK LIKE THE '289 PATENT.  AND WE

24   DID ATTACH THE '289 PATENT TO OUR PAPERS.  IT IS ONE OF THE

25   EXHIBITS, WE JUST DIDN'T CALL OUT THE CLAIMS GIVEN THE PAGE

1    LIMITATION.

2         IF YOU COMPARE THEIR PROPOSED CONSTRUCTION, THAT'S WHERE

3    THEY ARE GETTING THESE TERMS LIKE "AT THE GATEWAY COMPUTER",

4    THE "SUBSTITUTE FUNCTION", THE "ORIGINAL FUNCTION", YOU KNOW,

5    THE VARIOUS THINGS THAT WE HAVE HAD OBJECTIONS TO WITH RESPECT

6    TO THEIR CLAIM CONSTRUCTION, AND IT'S REALLY NOT NECESSARY IN

7    THIS CONTEXT.

8         WHAT IS CLEAR IS THAT BECAUSE WE DID FILE, IN FACT, A

9    BROADENING CONTINUATION, WE MADE A CONSCIOUS DECISION NOT TO

10   USE THOSE TERMS, "ORIGINAL FUNCTION" IN THE CLAIMS OR

11   "SUBSTITUTE FUNCTION" LIKE WE HAD IN THE '289 PATENT, THE

12   EARLIER ONE.  WE WERE VERY CONSCIENCE TO TALK ABOUT THE FIRST

13   FUNCTION AND THE SECOND FUNCTION AND NOT LIMIT IT IN THE WAY

14   THAT THE DEFENDANTS ARE PROPOSING, WHICH IS MUCH MORE NARROW

15   AND IS JUST REWRITING ULTIMATELY WHAT THE CLAIMS WERE IN THIS

16   PARTICULAR CASE.

17        THEY ATTEMPT TO SUGGEST THAT THEIR CONSTRUCTION IS BASED

18   ON THE PTAB PROCEEDINGS FROM THE *PALO ALTO NETWORKS* IPR.  AND,

19   YOU KNOW, TO THE CREDIBILITY POINT, IF THEY WERE GOING TO

20   UTILIZE THE CONSTRUCTION, THEY SHOULD HAVE ACTUALLY UTILIZED

21   THE CONSTRUCTION IN THE FINAL WRITTEN DECISION ON REHEARING IN

22   WHICH THE PTAB DID, IN FACT, CONSTRUE THESE TERMS.  THEY USED

23   THE PLAIN MEANING.  THERE WAS A DESCRIPTION OF WHAT THAT PLAIN

24   MEANING IS, BUT THEY DIDN'T ADDRESS THAT.  THEY ADDRESSED ALL

25   THE OTHER THINGS IN BETWEEN.

1      **THE COURT:**  AGAIN, JUST... SO DO YOU THINK THAT I

2   SHOULD ADOPT THE PTAB'S AUGMENTED DESCRIPTION OF WHAT THE

3   PLAIN AND ORDINARY MEANING IS?  AND IF NOT, WHAT'S THE POINT

4   OF THIS?

5      **MS. KOBIALKA:**  IT'S A CREDIBILITY POINT, WHICH IS,

6   THEY ADDED -- THEY CITED TO A LOT OF DIFFERENT THINGS THAT

7   HAPPENED IN THE PTAB.  IT WAS VERY CONFUSING.  AND THEY

8   CONFLATED A LOT OF ISSUES TOGETHER TO COME UP WITH THEIR

9   CONSTRUCTION.  I MEAN, THEY REALLY TORE UP BITS AND PIECES OF

10  VARIOUS THINGS AND PUT IT TOGETHER.

11     SO MY POINT IS, IF YOU ARE REALLY GOING TO GO WITH SOME

12  CONSTRUCTION, THEN YOU PROBABLY SHOULD HAVE INCLUDED THAT, BUT

13  THEY DIDN'T.  SO THAT IS MY ONLY POINT.

14     **THE COURT:**  WHAT WOULD BE WRONG, FROM YOUR

15  PERSPECTIVE, WITH ME SAYING ITS PLAIN AND ORDINARY MEANING,

16  AND HERE'S WHAT THAT MEANS FOLLOWING WHAT THE PTAB DID?

17     **MS. KOBIALKA:**  THERE WOULDN'T BE A PROBLEM.

18     **THE COURT:**  ALL RIGHT.

19     **MS. KOBIALKA:**  WOULD YOU LIKE ME TO ADDRESS WHEN THE

20  FIRST FUNCTION IS INVOKED JUST BRIEFLY?  IT ALL KIND OF TIES

21  IN OR DO YOU WANT TO HEAR FROM THEM?

22     **THE COURT:**  IS THIS THE NEXT TERM?

23     **MS. KOBIALKA:**  YES.

24     **THE COURT:**  WE WILL GO TERM BY TERM.  WE WILL TAKE

25  THOSE TWO, AND THEN COME BACK.

1          **MR. CROSBY:**  IS THERE A WAY I CAN SEE THE SLIDES

2    RIGHT HERE?

3          **THE CLERK:**  BRING YOUR LAPTOP UP.

4          **MR. CROSBY:**  OKAY.  OH YOU SEE THEM ON THE SCREEN.

5    ALL RIGHT.  GREAT.

6        SO I'M IN THE ENVIABLE POSITION AGAIN OF ARGUING THAT THE

7    COURT'S DECISION NOT TO CONSTRUE THIS CLAIM IN *PROOFPOINT*

8    SHOULD BE REVISITED.  HOPEFULLY THE GROUNDS WILL BE A LITTLE

9    MORE WELCOME.

10       SO OUR CONSTRUCTION THAT WE ARE ARGUING HERE IS THE

11   OPPOSITE OF THE CONSTRUCTION THAT THE COURT REJECTED IN

12   *PROOFPOINT*.  WE ARE CLAIMING THAT THE PATENT'S DESCRIPTION

13   REFERENCE TO THE PRESENT INVENTION AS INVOLVING THE USE OF A

14   SUBSTITUTE FUNCTION IN THE ROLE OF THE FIRST FUNCTION OF THE

15   CLAIMS REQUIRES THAT THAT FIRST FUNCTION BE A SUBSTITUTE

16   FUNCTION THAT IT OPERATES THE DISCLAIMER.  THE CLAIM

17   CONSTRUCTION THAT WAS OFFERED THAT THE COURT REJECTED IN

18   *PROOFPOINT* WAS THE OPPOSITE; THAT THE FIRST FUNCTION HAD TO BE

19   THE ORIGINAL FUNCTION.

20       AND THE COURT RIGHTLY SAID THAT'S INCONSISTENT WITH THE

21   EMBODIMENTS AND THE SPECIFICATION.  IN FACT, IT'S INCONSISTENT

22   WITH THE PATENTEE'S DESCRIPTION OF THE PRESENT INVENTION.

23       THE SECOND REASON THAT THE COURT'S DECISION NOT TO

24   CONSTRUE THIS AND *PROOFPOINT* SHOULD BE REVISITED IS BECAUSE

25   SINCE THAT DECISION, *PROOFPOINT* -- I'M SORRY, FINJAN HAS MADE

1  A NUMBER OF SPECIFIC REPRESENTATIONS ABOUT THE MEANING OF THE

2  WORD "CALL" THAT'S PART OF THE TERM "CALL TO A FIRST FUNCTION"

3  THAT ARE BINDING DISCLAIMERS AND THAT IT SHOULD NOT BE ALLOWED

4  TO RUN AWAY FROM HERE.

5      SO IF WE CAN GO TO SLIDE 70.  SO THE PATENT -- THE CLAIM

6  ELEMENT THAT COMPELS THE... THAT COMPELS THE FINDING OF A

7  DISCLAIMER WITH RESPECT TO THE DESCRIPTION OF THE PRESENT

8  INVENTION IS TRANSMITTING THE INPUT TO A SECURITY COMPUTER FOR

9  INSPECTION WHEN THE FIRST FUNCTION IS INVOKED.

10     THE SPECIFICATION AT COLUMN 4, LINES 55 TO 60 SPECIFICALLY

11  DESCRIBES THIS FUNCTION AS BEING PERFORMED BY USE OF A

12  SUBSTITUTE FUNCTION THAT IS A REPLACEMENT FOR AN ORIGINAL

13  FUNCTION IN THE PRESENT INVENTION.

14     THIS IS THE PRESENT INVENTION:  OPERATES BY REPLACING

15  ORIGINAL FUNCTION CALLS WITH SUBSTITUTE FUNCTION CALLS WITHIN

16  THE CONTENT, AT A GATEWAY COMPUTER, PRIOR TO THE CONTENT BEING

17  RECEIVED AT THE CLIENT COMPUTER.

18     THAT IS THE PATENTEE'S DESCRIPTION OF THE PRESENT

19  INVENTION.

20     NOW, THE FEDERAL CIRCUIT HAS SAID AGAIN AND AGAIN THAT A

21  PATENTEE'S REFERENCE TO WHAT THE PRESENT INVENTION IS SHOULD

22  BE TAKEN AT THE PATENTEE'S WORD ABSENT SOME COUNTERVAILING

23  CONSIDERATION.  WITHOUT MORE, SIMPLY REFERRING TO SOMETHING AS

24  THE PRESENT INVENTION OPERATES AS A DISCLAIMER.

25     AND SO WE'VE CITED NUMEROUS CASES THAT MAKE THAT CLEAR

1    THAT THAT IS THE RULE; THAT THERE IS NO FURTHER FINDING THAT

2    IS NECESSARY IN ORDER FOR A DISCLAIMER TO APPLY.

3         **THE COURT:**  ALTHOUGH THE PLAINTIFF'S CITED A NUMBER

4    OF REFERENCES IN THE SPECIFICATION TO A PREFERRED EMBODIMENT

5    THAT INCLUDED "CALL TO A FIRST FUNCTION" AND "INVOKING SECOND

6    FUNCTION" BUT DIDN'T IN THOSE INSTANCES SAY "ORIGINAL" AND

7    "SUBSTITUTE".

8      SO, GIVEN THAT, IS THE DISCLAIMER CLEAR WITHIN THE MEANING

9    OF THESE CASES THAT YOU'RE TALKING ABOUT?

10        **MR. CROSBY:**  YES, YOUR HONOR.

11     SO ONE OF THE EXTENUATING CIRCUMSTANCES CAN BE WHEN THERE

12   IS AN INCONSISTENT USAGE WITHIN THE REST OF THE PATENT.  BUT

13   *HONEYWELL* SAYS THAT WHEN YOU ARE LOOKING TO DETERMINE WHETHER

14   THE PATENTEE HAS USED THE... THE CLAIM LANGUAGE

15   INCONSISTENTLY, YOU HAVE TO LOOK AT EMBODIMENTS THAT ACTUALLY

16   RELATE TO THE CLAIMED ELEMENTS.

17     SO TO JUMP AHEAD TO SLIDE 74, SO *HONEYWELL*, IN *HONEYWELL*,

18   THE ISSUE WAS WHETHER THE PATENT'S DESCRIPTION OF FUEL

19   SYSTEM -- FUEL INJECTION SYSTEM COMPONENTS IN OTHER

20   EMBODIMENTS QUALIFIED THE PATENTEE'S STATEMENT THAT THE

21   PRESENT INVENTION WITH RESPECT TO A CLAIM ELEMENT WHERE THE

22   FUEL SYSTEM COMPONENT WAS MADE WITH A POLYMER HOUSING

23   ELECTRICALLY CONDUCTIVE FIBERS, WHETHER THESE OTHER REFERENCES

24   TO FUEL INJECTION SYSTEM COMPONENTS THAT WERE NOT A FUEL

25   FILTER, WHICH IS WHAT THEY WERE TRYING TO LIMIT IT TO, WHETHER

1    THOSE CONTRADICT.

2        AND THE COURT SAID, NO.  BECAUSE THOSE OTHER REFERENCES OF

3    FUEL SYSTEM COMPONENTS AREN'T THE ONES THAT ARE BEING

4    DISCUSSED IN THE CLAIMS.

5        AND HERE, THE CLAIM REQUIRES THE USE OF A SECURITY

6    COMPUTER.  AND IF YOU LOOK AT FINJAN'S REPLY BRIEF, THEY CITE

7    ALL THESE EMBODIMENTS.  BUT, IN FACT, THERE'S ONLY ONE

8    EMBODIMENT THAT THEY CLAIM BOTH REQUIRES A SECURITY COMPUTER

9    AND DOESN'T INCLUDE A SUBSTITUTE FUNCTION.

10       SO THAT EMBODIMENT IS THE ONE THAT IS IN COLUMN 7 AT LINES

11   20 TO 31.  AND YOU'LL SEE THAT THAT EMBODIMENT -- SEE IF I

12   HAVE A SLIDE HERE FOR THAT.  THAT IS SLIDE 75.

13       THIS SAYS, "THERE IS YET FURTHER PROVIDED IN ACCORDANCE

14   WITH A PREFERRED EMBODIMENT", AND THEN IT REPEATS THE LANGUAGE

15   OF THE CLAIMS.  THAT IS EXACTLY THE LANGUAGE OF THE CLAIM.  SO

16   IT USES "FIRST FUNCTION" AND "SECOND FUNCTION", THE SAME TERMS

17   WHOSE MEANING IS AT ISSUE HERE.  BUT IT DOESN'T IDENTIFY THE

18   FIRST FUNCTION WITH -- IT DOESN'T CONTRADICT THE DESCRIPTION

19   OF THE PRESENT INVENTION.  IT JUST REFERS TO A FIRST FUNCTION.

20   IT DOESN'T SAY WHAT IT IS.

21       AND, IN FACT, THIS STATEMENT HERE OCCURS, AND IT'S

22   ESSENTIALLY A SYNOPSIS OF WHAT COMES LATER IN THE DETAILED

23   DESCRIPTION.  SO THIS IS NOT ACTUALLY DESCRIBING AN

24   EMBODIMENT.  THIS IS ESSENTIALLY A PREVIEW OF WHAT IS GOING TO

25   BE DESCRIBED.

1      AND THEN ONCE YOU GET DOWN TO THAT DETAILED DESCRIPTION,

2   THERE IS NOT A SINGLE INSTANCE, NOT ONE, NOT ONE THAT THEY

3   HAVE IDENTIFIED, THERE ISN'T ANY, IN THAT DETAILED DESCRIPTION

4   WHERE AN ORIGINAL FUNCTION IS DESCRIBED AS PERFORMING THE ROLE

5   THAT IS GIVEN TO THE FIRST FUNCTION OF THE CLAIM.

6      SO THAT IS NOT A CONTRADICTORY DISCLOSURE THAT WOULD

7   OTHERWISE OBVIATE THE EFFECT OF THE PATENTEE'S DESCRIPTION OF

8   THE REFERENCE TO THE PRESENT INVENTION.

9      AND, AGAIN, FINJAN HASN'T IDENTIFIED -- THAT IS THE ONLY

10   ONE THEY IDENTIFIED THAT INCLUDES THE ELEMENTS OF THE CLAIM

11   THAT ARE REQUIRED FOR AN EMBODIMENT TO BE RELEVANT TO

12   CONSISTENCY UNDER *HONEYWELL*.

13      SO, I WANT TO, UNLESS THE COURT HAS FURTHER QUESTIONS ON

14   THE FIRST FUNCTION, SECOND FUNCTION, I THINK IT'S PRETTY

15   STRAIGHTFORWARD.  THE PATENTEE DESCRIBED THE FIRST FUNCTION

16   BEING A SUBSTITUTE FUNCTION AS THE PRESENT INVENTION IN

17   CONNECTION WITH AN ELEMENT OF THE CLAIMS.  THERE IS NO

18   INCONSISTENT DISCLOSURE IN THE PATENT AND, THEREFORE, UNDER

19   CONTROLLING PRECEDENT, THAT IS A DISCLAIMER THAT IS BINDING ON

20   FINJAN.

21      AND THE CONSTRUCTION OF THE SECOND FUNCTION AS THE

22   ORIGINAL FUNCTION FOLLOWS FROM THAT CHARACTERIZATION OF THE

23   PRESENT INVENTION WITH RESPECT TO THE FIRST FUNCTION.

24      SO I'LL MOVE ON TO THE... LET'S SEE.  I DO WANT TO ADDRESS

25   A COUPLE OF POINTS THAT WERE MADE IN FINJAN'S ARGUMENT.

1          SO THE ARGUMENT THAT, WELL, WE PROSECUTED NARROW CLAIMS IN

2     THE '289 PATENT AND THEN -- SO THAT SHOULD MEAN THAT THESE

3     CLAIMS SHOULD BE GIVEN A BROADER CONSTRUCTION BECAUSE THEY

4     USED DIFFERENT LANGUAGE.  THERE'S ABSOLUTELY NO CASE.  THEY

5     HAVE CITED NO CASE.  THERE'S NO CASE THAT ESTABLISHES A

6     PRINCIPLE OF CLAIM DIFFERENTIATION BETWEEN RELATED

7     APPLICATIONS.  THAT'S JUST NOT TRUE.

8          IN FACT, *HONEYWELL* SAYS, AND WE CITED THIS ON PAGE 20 OF

9     OUR OPPOSING BRIEF, THAT THE PATENTEE'S INTENT, APPARENT

10    INTENT WHEN PROSECUTING ANOTHER APPLICATION TO GAIN BROADER

11    CLAIM SCOPE IS ENTITLED TO NO WEIGHT.

12         SO GETTING DOWN TO THE ISSUE OF WHAT IS "A CALL", THIS IS,

13    AGAIN, ANOTHER CLEAR EXAMPLE OF A DISCLAIMER THAT FINJAN HAS

14    MADE IN ORDER TO MAINTAIN THE VALIDITY OF THEIR PATENTS

15    AGAINST -- IN MANY IPR'S, AND FINJAN IS TRYING TO TAKE IT

16    BACK.

17         SO IF WE GO TO DR. MEDVIDOVIC'S DECLARATION, WHICH IS

18    INSERTED AT SLIDE 76, FINJAN SAYS IN THEIR BRIEF THAT, WELL,

19    WHAT HE SAID IN HIS DECLARATION WAS JUST EXEMPLARY.

20         WELL, THAT COULDN'T BE FURTHER FROM THE TRUTH.  HE SAYS IN

21    PARAGRAPH 57 OF HIS DECLARATION, "A PERSON OF SKILL IN THE ART

22    WOULD UNDERSTAND THE TERM "FUNCTION CALL" TO REFER TO A

23    REQUEST FOR THE SERVICES OF A PARTICULAR FUNCTION AND NOT THE

24    FUNCTION CALL."

25         THEN HE -- EXCERPTS ADOPTS A DEFINITION FROM THE *MICROSOFT*

1    *COMPUTER DICTIONARY* THAT SAYS "FUNCTION CALL".  PROGRAM'S

2    REQUEST FOR THE SERVICES OF A PARTICULAR FUNCTION.  A FUNCTION

3    CALL IS CODED AS THE NAME OF THE FUNCTION ALONG WITH ANY

4    PARAMETERS NEEDED FOR THE FUNCTION TO PERFORM ITS TASK.

5         AND JUST TO BE CLEAR, IT WAS... IT WAS SAID, YOU KNOW,

6    THERE'S SOMETHING -- I THINK IT WAS SOMEHOW WE AREN'T BEING

7    GENUINE OR CANDID, I CAN'T REMEMBER WHAT THE WORDS WERE, THEY

8    WEREN'T KIND, BY NOT FOCUSING ON WHAT THE PTAB ACTUALLY DID IN

9    RELATION TO THIS STATEMENT, BUT THAT'S NOT HOW PROSECUTION

10   DISCLAIMER WORKS.

11        EXAMINER PTAB NEED NOT RELY ON A STATEMENT FOR IT TO

12   AFFECT A DISCLAIMER.  A DISCLAIMER IS PART OF THE NOTICE

13   FUNCTION.

14             **THE COURT:**  UNDERSTOOD.

15             **MR. CROSBY:**  YES, SIR.  SO THAT POINT HAS NO PURPOSE

16   WHATSOEVER.

17        BUT IN POINT OF FACT, THE PTAB DID RELY ON THIS.  AND

18   THAT'S HOW... THAT'S HOW THEY WERE ABLE TO DISTINGUISH A PRIOR

19   ART REFERENCE THAT HAD THE EXACT SAME FUNCTIONALITY AS THE

20   FIRST FUNCTION, SECOND FUNCTION EXCEPT THERE WAS A SPECIFIC

21   IMPLEMENTATION DETAIL WHEREBY THE SUBSTITUTE FUNCTION INSTEAD

22   OF ACTUALLY BEING PLACED AS A CALL INTO THE BODY OF THE

23   CONTENT, THE NAME OF THE ORIGINAL FUNCTION WAS ESSENTIALLY

24   ASSIGNED TO A POINTER THAT THEN CALLED, THAT THEN -- SO IT WAS

25   INDIRECT ROUTES TO THE EXACT SAME FUNCTIONALITY.

```
1        BASED ON THAT NARROW DISTINCTION, BASED ON THIS TESTIMONY
2   ABOUT WHAT A CALL IS, FINJAN ULTIMATELY WAS ABLE TO PROTECT
3   THE VALIDITY OF THEIR PATENTS.  AND SO TO NOW ALLOW THESE
4   PATENTS TO BE ASSERTED BROADLY WHEN IT WAS BY SUCH A NARROW
5   DISTINCTION THAT THEY WERE ABLE TO SAVE THESE PATENTS, I
6   THINK, WOULD BE UNJUST.
7            THE COURT:  ALL RIGHT.  NO FURTHER QUESTIONS ABOUT
8   THAT.
9            MR. CROSBY:  THANK YOU, YOUR HONOR.
10           MS. KOBIALKA:  I'M JUST GOING TO MAKE A COUPLE OF
11  QUICK POINTS.
12       WE ARE NOT ARGUING THAT THERE ARE CONTRADICTORY
13  EMBODIMENTS IN THE DISCLOSURE OF THE '154.  WE ARE JUST SAYING
14  THAT THERE'S MULTIPLE DIFFERENT EMBODIMENTS.  WE CITED TO
15  THOSE IN OUR BRIEFS.  I THINK WE COUNTED A TOTAL OF 38.
16       THE DISTINCTION BETWEEN OUR CASE AND THE HONEYWELL,
17  HONEYWELL HAD ONE, THEY HAD ONE SINGLE EMBODIMENT.  I BELIEVE
18  IT WAS A FUEL FILTER, AND THAT WAS IT.  SO THAT WAS WHY THEY
19  DETERMINED THAT IT WAS JUST LIMITED TO THAT PARTICULAR
20  DESCRIPTION OF THE PRESENT INVENTION.  SO THAT, I THINK,
21  DISTINCTION IS THERE.
22       IN TERMS OF CLAIM DIFFERENTIATION, THEY MADE AN ARGUMENT.
23  YOU CAN'T CLAIM THE SAME INVENTION ACROSS TWO PATENTS.  SO I'M
24  NOT SURE EXACTLY WHAT THE SUGGESTION IS THERE, BUT THE
25  CONSCIOUS DECISION WAS TO GO TO THE FIRST FUNCTION, THE SECOND
```

1    FUNCTION, AND THAT IS SUPPORTED IN THE SPECIFICATION.  THEY

2    CITED TO ONE PLACE, BUT ALSO IN COLUMN 7, THE PARAGRAPH ABOVE

3    STARTING AT LINE 9, THERE'S ANOTHER PREFERRED EMBODIMENT OF

4    THE PRESENT INVENTION, AND IT TALKS ABOUT THE FIRST FUNCTION

5    AND THE SECOND FUNCTION.

6        SO THERE'S SEVERAL PLACES THROUGHOUT THE SPECIFICATION.

7    YOU CAN'T THEN IMPORT THE DISCUSSIONS WHERE THEY ARE TALKING

8    ABOUT AN ORIGINAL FUNCTION AND A SUBSTITUTE FUNCTION, AND

9    IMPORT THAT, PARTICULARLY WHEN WE ARE ABLE TO DEMONSTRATE THAT

10   THERE WAS A SEPARATE PATENT THAT HAD THOSE SPECIFIC CLAIMS,

11   UNLIKE HERE WHERE THE SPEC SUPPORTS -- THERE'S NO ARGUMENT TO

12   THE CONTRARY, THE SPEC SUPPORTS AND DISCUSSES A FIRST FUNCTION

13   AND A SECOND FUNCTION.  SO --

14        **THE COURT:**  I GUESS I AM UNCLEAR, THOUGH, ON WHAT

15   REALLY THE IMPORT IS OF THE OTHER PATENT.

16        DO I HAVE THAT BEFORE ME?

17        **MS. KOBIALKA:**  YES.  IT'S EXHIBIT 3?  SO WITH OUR

18   REPLY BRIEF, THE MANES DECLARATION, THE LAST EXHIBIT ATTACHED

19   TO IT, AND I'M GOING TO GET YOU THE NUMBER.

20        **THE COURT:**  ALL RIGHT.

21        JUST RIGHT THERE IT'S ATTACHED TO YOUR REPLY BRIEF AND

22   GERMANE TO THE DISCUSSION WE HAD EARLIER, IT'S KIND OF LATE TO

23   MAKE MUCH OF THAT.

24        WHAT LEGAL -- WHAT CASE SUPPORTS YOUR PREMISE?  YOUR

25   OPPOSING COUNSEL SAID THAT THERE'S NO CASE THAT SUGGESTS THAT

1    THIS IDEA THAT THERE'S ANOTHER PATENT OUT THERE THAT'S WRITTEN

2    DIFFERENTLY OUGHT TO READ ON HOW I INTERPRET THESE CLAIMS.

3        WHAT'S YOUR LEGAL BASIS FOR THAT ARGUMENT?

4            **MS. KOBIALKA:**  THE FUNDAMENTAL PRINCIPLE THAT, WELL,

5    ONE IS WE HAD A BROADENING CONTINUATION THAT WAS THE WHOLE

6    PURPOSE OF FILING THE SECOND PATENT WHICH TURNED INTO THE

7    '154, BUT ALSO THE PRINCIPLE WHICH IS THROUGHOUT PATENT LAW,

8    YOU CAN'T CLAIM THE SAME INVENTION IN TWO PATENTS.  I MEAN,

9    THE PATENT OFFICE IS GOING TO REQUIRE YOU TO SEPARATE OUT THE

10   TWO.  THIS CLAIM DIFFERENTIATION ARGUMENT THAT THEY MADE,

11   THAT'S THE FIRST TIME THEY RAISED THAT.

12           **THE COURT:**  LET ME ASK A DIFFERENT QUESTION.

13       WHAT AUTHORITY DID YOU CITE THAT IS RELEVANT ON THIS POINT

14   IN YOUR BRIEF?

15           **MS. KOBIALKA:**  I DON'T THINK WE CITED -- LET ME

16   DOUBLE-CHECK.  I DON'T THINK WE CITED -- WE DISTINGUISHED

17   THEIR CASES BECAUSE IT WASN'T AN ARGUMENT THAT THEY MADE.  IT

18   WAS NOT AN ARGUMENT THAT THEY MADE.

19           **THE COURT:**  I DON'T SEE THIS ARGUMENT AS THE LIKELY

20   LINCHPIN OF IT, SO WHY DON'T WE PROCEED.

21           **MS. KOBIALKA:**  SO WE TURN TO THE LAST TERM OF THE

22   '154 PATENT, WHICH IS... SORRY, "WHEN THE FIRST FUNCTION IS

23   INVOKED".

24       IN ALL MY EFFORTS TO BE ORGANIZED, I THINK I BROUGHT TOO

25   MUCH PAPER.  MY APOLOGIES.

1        HERE, ONCE AGAIN, WE ARE ARGUING THE PLAIN AND ORDINARY

2   MEANING.  THE DEFENDANTS' CONSTRUCTION IS "IN RESPONSE TO THE

3   FIRST FUNCTION BEING INVOKED".  THEY DON'T HAVE ANY SUPPORT IN

4   THE INTRINSIC EVIDENCE FOR THIS.

5        ONCE AGAIN, THIS IS ANOTHER CLAIM TERM WE ARE CONCERNED

6   ABOUT, OR CONSTRUCTION, THAT IS GOING TO LEAD TO SOME MISCHIEF

7   IN THE SENSE OF WHAT IS A RESPONSE, FOR EXAMPLE, THAT THEY ARE

8   REFERRING TO?

9        NOW, THE POINT OF THIS PATENT IS TO OFFLOAD SOME OF THE

10  CHECKING SO IT'S DONE ON A SECURITY COMPUTER.  AND IF YOU TAKE

11  A LOOK AT WHERE THIS CLAIM TERM APPEARS IN THE ACTUAL CLAIMS,

12  I'VE PROVIDED THAT.  THAT'S SLIDE 23.

13       SO I'VE REPRODUCED THE ELEMENT THAT IT FALLS IN.  "A

14  TRANSMITTER FOR TRANSMITTING THE INPUT TO THE SECURITY

15  COMPUTER FOR INSPECTION WHEN THE FIRST FUNCTION IS INVOKED."

16  AND THEN CLAIM 4 ALSO HAS A SIMILAR... SIMILAR RECITATION OF

17  ELEMENTS.

18       SO HERE, THE FIRST FUNCTION IS EXECUTED.  AS YOU NOTED IN

19  YOUR *PROOFPOINT* ORDER ABOUT INVOKING THAT HAD TO DO WITH

20  EXECUTION, YOU SEND THE INPUT TO THE SECURITY COMPUTER.  IT'S

21  THAT STRAIGHTFORWARD AND SIMPLE.

22       THE IDEA THAT IN RESPONSE TO THE FIRST FUNCTION BEING

23  INVOKED, I THINK THERE'S AMBIGUITY THERE THAT WOULD JUST BE

24  INJECTED INTO THE CLAIM CONSTRUCTION, AND REALLY THE ONLY TERM

25  IS "WHEN" THAT'S AT ISSUE.  SO WE'RE SIMPLY JUST SAYING THAT

1    WHEN THAT FIRST FUNCTION IS EXECUTED, YOU SEND THE INPUT TO

2    THE SECURITY COMPUTER.

3              **THE COURT:**  ALL RIGHT.

4         **MR. CROSBY:**  SO I AGREE THAT THIS CLAIM CONSTRUCTION

5    DISPUTE REALLY COMES DOWN TO THE MEANING OF "WHEN".  GIVEN

6    THAT WE AGREE ON THAT, I WAS SURPRISED NOT TO SEE ANYTHING

7    ABOUT THAT IN FINJAN'S REPLY BRIEF.

8         IN OUR RESPONSIVE BRIEF, WE CITED THIS COURT'S DECISION IN

9    *TRANSPERFECT*.  IF YOU CAN PULL UP SLIDE 80, REFERRING TO THE

10   DISPUTE AT ISSUE IN THAT CASE, THE COURT SAID, "THIS DISPUTE

11   ESSENTIALLY REVOLVES AROUND WHETHER THE WORD 'WHEN' SHOULD BE

12   GIVEN ITS TEMPORAL MEANING, FOR EXAMPLE, AT WHICH TIME, OR ITS

13   CONDITIONAL MEANING, I.E., IF, BOTH OF WHICH ARE COMMONLY

14   RECOGNIZED BY MANY ENGLISH DICTIONARIES."

15        SPEAKERS OF THE ENGLISH LANGUAGE KNOW THAT WHEN CAN MEAN

16   IF OR AT THE SAME TIME DEPENDING ON HOW IT IS USED.

17        SO IN A CASE LIKE THIS, WHERE A WORD HAS MULTIPLE ORDINARY

18   MEANINGS, *02 MICRO* SAYS THAT -- AND THOSE MEANINGS ARE IN

19   DISPUTE, *02 MICRO* SAYS THAT JUST SIMPLY SAYING ORDINARY

20   MEANING DOESN'T RESOLVE THE PARTIES' DISPUTE.  A CLAIM

21   CONSTRUCTION MUST BE ENTERED TO DETERMINE WHICH OF THOSE

22   MEANINGS APPLIES SO THAT THE PARTIES AREN'T LEFT ARGUING THIS

23   CLAIM CONSTRUCTION ISSUE TO THE JURY.

24             **THE COURT:**  AGREED.

25        AND TO THE DISCUSSION I WAS HAVING EARLIER, IT'S CLEAR,

1    ISN'T IT, THAT ONE WAY I CAN DO THAT IS SAY ITS PLAIN AND

2    ORDINARY MEANING, AND IT'S THAT PLAIN AND ORDINARY MEANING IS

3    NOT LIMITED IN THE WAY THAT'S BEING PROPOSED BY THE DEFENDANT.

4         AS A MATTER OF LAW I CAN DO THAT, CORRECT?

5              **MR. CROSBY:**  YOUR HONOR COULD SAY THAT INCLUDES ONE

6    MEANING, THE OTHER MEANING, OR IT COULD SAY THAT IT INCLUDES

7    BOTH MEANINGS.

8         HOWEVER, IN OUR RESPONSIVE BRIEF, WE PROVIDED EXTENSIVE

9    CITATIONS TO INSTANCES IN WHICH THE PATENT EXCLUSIVELY USES

10   WHEN IN ITS CONDITIONAL SENSE.  IT IS THE INVOCATION OF THE

11   FIRST FUNCTION THAT CAUSES THE SECURITY INPUT TO BE SENT --

12   CAUSES THE INPUT TO BE SENT TO THE SECURITY COMPUTER FOR

13   INSPECTION.  THAT'S HOW THE, AGAIN, THE DESCRIPTION OF THE

14   PRESENT INVENTION THAT WE DISCUSSED PREVIOUSLY, THAT'S HOW THE

15   PATENT SAYS THIS INVENTION OPERATES.  THAT'S HOW IT SAYS IT

16   WORKS.

17        FINJAN HAD EVERY OPPORTUNITY TO TRY AND FIND ONE INSTANCE

18   WHERE WHEN IS USED IN A TEMPORAL SENSE, AND THEY PASSED ON

19   THAT OPPORTUNITY.  THEY DID NOT RESPOND AT ALL IN THEIR REPLY

20   BRIEF TO THE SHOWING THAT WE MADE.

21             **THE COURT:**  ARE YOU MAKING A LEXICOGRAPHY ARGUMENT?

22   OBVIOUSLY THE DEFAULT IS ITS PLAIN AND ORDINARY MEANING.  I

23   HAVE TO RESOLVE THE DISPUTE ONE WAY OR ANOTHER, BUT IT SOUNDS

24   TO ME LIKE YOU'RE SAYING THE PATENTEE ACTED AS A LEXICOGRAPHER

25   SOMEHOW.

1    BASED ON WHAT?

2         MR. CROSBY:  NO, IT'S NOT A LEXICOGRAPHY ARGUMENT,

3    YOUR HONOR.  WHEN A TERM HAS MULTIPLE MEANINGS, ONE REFERS TO

4    THE SPECIFICATION TO SEE WHICH OF THE MEANINGS THE PATENTEE

5    INTENDED, WHETHER IT WAS ONE OR THE OTHER OR BOTH.

6         THAT'S EXACTLY WHAT HAPPENED IN *TRANSPERFECT*.

7    *TRANSPERFECT* LOOKED AT THE PATENT AND SAID THERE ARE MANY,

8    MANY INSTANCES IN THAT CASE WHERE THE WHEN WAS USED

9    TEMPORALLY.  IN THAT CASE THE OTHER PARTY SAID, WELL, YOU

10   KNOW, THERE ARE SOME WHERE IT'S USED CONDITIONALLY.  THE COURT

11   SAID THOSE ARE AMBIGUOUS.

12        AND SINCE ALL OF THE CLEAR EXAMPLES WERE TEMPORAL USES

13   THEN THE PATENT -- SO THIS IS NOT SAYING THAT THE PATENTEE

14   DEFINED WHEN TO HAVE SOME SORT OF SPECIAL MEANING THAT'S

15   DIFFERENT FROM ITS ORDINARY MEANING; THAT'S LEXICOGRAPHY.

16   THIS IS FOLLOWING THE *PHILLIPS* METHOD TO LOOK AT THE

17   SPECIFICATION TO INFORM THE MEANING OF THE CLAIMS.

18        WHEN THE PATENTEE HAS CONSISTENTLY AND EXCLUSIVELY USED

19   WHEN IN THE CONTEXT OF THE CLAIM LIMITATION AT ISSUE, NAMELY,

20   SENDING THE, TRANSMITTING THE INPUT WHEN THE FIRST FUNCTION IS

21   INVOKED, WHEN THAT IS EXCLUSIVELY USED IN A CONDITIONAL SENSE,

22   AND THE PATENTEE SAYS THAT IS THE PRESENT INVENTION, THAT'S

23   VERY STRONG EVIDENCE THAT THE MEANING WHICH IS CONVEYED TO A

24   PERSON OF ORDINARY SKILL IN THE ART BY THIS USAGE OF THE WORD

25   "WHEN" IS THE CONDITIONAL ONE THAT THE PATENTEE EXCLUSIVELY

1    USED.  THAT IS THE LOGIC OF *TRANSPERFECT*.  THAT IS THE LOGIC

2    OF *PHILLIPS*.

3        AND THERE REALLY IS NO BASIS -- THERE'S ANOTHER PRINCIPLE,

4    I APOLOGIZE I DON'T HAVE THE NAME OF THE CASE RIGHT...

5    AVAILABLE TO ME.  BUT THERE IS A CASE, AND I CAN PROVIDE IT

6    LATER, THAT SAYS WHEN A COURT IS CONFRONTED WITH TWO EQUALLY

7    PLAUSIBLE MEANINGS FOR A CLAIM TERM, AND ONE OF THOSE MEANINGS

8    IS NARROWER AND HAS WRITTEN DESCRIPTION AND ENABLEMENT SUPPORT

9    IN THE PATENT SPECIFICATION, AND THE OTHER DOES NOT HAVE

10   WRITTEN DESCRIPTION OR ENABLEMENT SUPPORT IN THE PATENT

11   SPECIFICATION, THE COURT SHOULD CHOOSE THE NARROWER

12   CONSTRUCTION.

13       I DON'T THINK IT'S NECESSARY TO, HOWEVER.  I THINK THAT

14   CASE MAY HAVE BEEN CITED IN *TRANSPERFECT*.  AS SOON AS I SIT

15   DOWN, I CAN FIND IT FOR YOUR HONOR.

16           **THE COURT:**  THAT'S OKAY.  *TRANSPERFECT* IS ONE

17   DISTRICT COURT CASE AND IT'S THE ONE THAT YOU'VE CITED.  I'LL

18   LOOK AT IT AND DETERMINE IF THAT IS PERSUASIVE AND CUTS YOUR

19   WAY.

20           **MR. CROSBY:**  IT ALSO CITES THE FEDERAL CIRCUIT CASE

21   THAT ANNOUNCES THE PRINCIPLE THAT I JUST DESCRIBED.

22           **THE COURT:**  UNDERSTOOD.

23           **MR. CROSBY:**  THANK YOU, YOUR HONOR.

24           **MS. KOBIALKA:**  I'LL JUST BRIEFLY RESPOND.

25       SO THEY CITE TO THE CASE ABOUT WHEN OR IF, BUT NEITHER ONE

1    OF THEM IS ACTUALLY THEIR CONSTRUCTION.  I'M SORRY.  THEY

2    CITED TWO POSSIBLE MEANINGS.  WHEN IS AT WHICH TIME OR IF, AND

3    THE *TRANSPERFECT* -- FROM THE *TRANSPERFECT* CASE, BUT THAT'S NOT

4    REALLY WHAT THEIR CONSTRUCTIONS ARE.

5        AND WE -- THAT'S WHY ON OUR REPLY WE WERE CLEAR THAT THIS

6    DOESN'T SEEM TO BE A DISPUTE REALLY BECAUSE WHEN THE FIRST

7    FUNCTION IS EXECUTED, THAT'S WHEN YOU'RE GOING TO SEND THE

8    INPUT TO THE SECURITY COMPUTER.  I THINK THAT IS TEMPORAL IN

9    NATURE.

10       SO I'M NOT SURE THERE'S A LEGAL DISTINCTION THAT THEY ARE

11   ACTUALLY MAKING HERE THAT'S REALLY OF ANY NOTE, AND THERE'S NO

12   REASON TO GO OFF OF, BASICALLY, DEVIATE FROM THE PLAIN AND

13   ORDINARY MEANING.

14       CAN WE GO TO THE LAST TERM, YOUR HONOR?

15           **THE COURT:**  YES.

16           **MS. KOBIALKA:**  THE LAST ONE IS THE '299 PATENT.  AND

17   THIS IS A CLAIM TERM, "A WARNING OF POTENTIAL RISK".

18       THIS PATENT GENERALLY HAS TO DO WITH DYNAMICALLY

19   GENERATING AND UPDATING SEARCH AND SECURITY RESULTS THAT GET

20   COMBINED.

21       AND IN SLIDE 25, I HAVE BOTH PARTIES' CONSTRUCTION.  WE

22   HAVE PLAIN AND ORDINARY MEANING.  THEY HAVE A DIFFERENT

23   CONSTRUCTION ABOUT AN INDICATION THAT A SECURITY ASSESSMENT

24   HAS NOT YET BEEN PERFORMED BY THE CONTENT SCANNER DISTINCT

25   FROM PRESENTING POTENTIAL SECURITY RISKS.

1      AND THEY MAKE A NUMBER OF ARGUMENTS ON THEIR BRIEF

2   REGARDING THE FILE HISTORY, THE PROSECUTION HISTORY, BUT THE

3   AMENDMENTS THAT WERE MADE DURING THE PROSECUTION ADDRESSED ALL

4   OF THOSE ARGUMENTS THAT THEY ATTEMPT TO RAISE WITH RESPECT TO

5   WHEN THE SECURITY OR AT WHAT POINTS IN TIME IS THE SECURITY

6   ASSESSMENT PERFORMED.

7      THE REAL FOCUS OF THE ISSUE, I MEAN THERE'S MORE TO IT,

8   BUT REALLY THE PRIMARY POINT IS THEY ARE SAYING THAT THE

9   SECURITY ASSESSMENT IS NOT YET PERFORMED.  AND THAT DEFIES THE

10  ACTUAL CLAIMS WHEN YOU LOOK AT THE CLAIM LANGUAGE AND THE

11  CONTEXT AND WHEN THIS PARTICULAR CLAIM ELEMENT APPEARS.

12     SO ON SLIDE 26, I HAVE PROVIDED THE DYNAMICALLY GENERATING

13  CLAIM ELEMENT.  AND TO BE CLEAR, EVERY TIME A WARNING OF

14  POTENTIAL RISK APPEARS IN THE CLAIMS, THERE'S FOUR DIFFERENT

15  INDEPENDENT CLAIMS, AND THIS COMES UP, IT'S EITHER IN

16  CONNECTION WITH DISPLAY A WARNING A POTENTIAL RISK OR

17  DISPLAYING A WARNING.  SO THERE IS THAT ADDITIONAL ELEMENT,

18  THAT'S THE CONTEXT FOR IT.

19     BUT IN THE "DYNAMICALLY GENERATING" THAT'S ON 26, THIS IS

20  FROM CLAIM 1, WHAT YOU HAVE IS SEVERAL DIFFERENT ELEMENTS.

21  THE FIRST ONE YOU'RE GOING TO BE PRESENTING A PORTION OF THE

22  IDENTIFIED CONTENT, AND THAT'S GOING TO BE PRIOR TO COMPLETING

23  THE RECEIVING FROM THE CONTENT SCANNER.

24     SO IT MIGHT HELP IF I BACK UP JUST A LITTLE BIT.  YOU SEND

25  OUT A SEARCH REQUEST, YOU RECEIVE RESULTS FROM THE SEARCH

1    ENGINE THAT GENERATES A SUMMARY.  THAT REQUEST GOES TO THE

2    CONSENT SCANNER TO ASSESS THE POTENTIAL RISKS, AND YOU RECEIVE

3    ASSESSMENTS FROM THAT CONTENT SCANNER, AND YOU GO INTO THE

4    DYNAMICALLY GENERATING.

5         SO HERE, WHERE IT SAYS "PRIOR TO THE COMPLETION OF

6    RECEIVING FROM THE CONTENT SCANNER", THEY ARE TALKING ABOUT

7    THE POTENTIAL SECURITY RISKS OR THE ASSESSMENT THAT'S BEING

8    DONE.

9         THE NEXT ELEMENT SAYS, "DYNAMICALLY UPDATING", BUT I

10   ACTUALLY WANT TO GO TO THE DISPLAY ELEMENT.  BECAUSE THAT'S

11   REALLY WHAT HAPPENS NEXT IN THE ORDER OF THINGS.  AND IT'S

12   CLEAR FROM THE LANGUAGE.  BECAUSE IT SAYS "IT DISPLAYS A

13   WARNING OF POTENTIAL RISK SUBSEQUENT TO PRESENTING AND PRIOR

14   TO SAID DYNAMICALLY UPDATING".  SO THAT'S WHY WE HAVE THE

15   ARROW THERE JUST TO DEMONSTRATE AT WHAT POINT THAT HAPPENS.

16        THEN THE LAST ELEMENT IS "DYNAMICALLY UPDATING THE

17   COMBINED SEARCH AND SECURITY RESULTS SUMMARY", AND THAT

18   CONTINUES ON FROM THE CONTENT SCANNER.

19        SO THE TIMING IS ALL WITHIN THE CLAIMS ITSELF.  THE

20   AMENDMENTS THAT WE DID ADDRESSED ALL OF THE THINGS THAT WERE

21   RAISED IN THE PROSECUTION HISTORY.  AND WHAT'S KEY IS, IT'S

22   PRIOR -- SO THE DISPUTE, WHEN THEY ARE SAYING THEY HAVE NOT

23   YET PERFORMED THE ASSESSMENT BY THE CONTENT SCANNER CAN'T FIT

24   WITHIN THIS CLAIM.  IT WON'T MAKE SENSE BECAUSE OF THE

25   LANGUAGE "PRIOR TO COMPLETION OF THE RECEIVING FROM THE

1    CONTENT SCANNER" AND ALSO SUBSEQUENT TO THE PRESENTING, YOU'RE

2    GOING TO GET THE DISPLAYING, BUT PRIOR TO THE DYNAMICALLY

3    UPDATING.  SO THAT WON'T MAKE SENSE WITH THEIR PARTICULAR

4    CONSTRUCTION.

5        IF YOU LOOK AT THE NEXT SLIDE, THERE'S -- THIS IS ACTUALLY

6    THROUGHOUT THE PATENT.  SO THE NEXT SLIDE IS SLIDE 27.  AND

7    I'VE REPEATED FOR CLAIMS 1 AND 21 THAT SAME TYPE OF ELEMENTS

8    REGARDING A COMPLETION OF RECEIVING FROM THE CONTENT SCANNER,

9    BUT YOU HAVE THAT SAME THING IN CLAIM 13 AND CLAIM 20.

10       SO IT'S GOING TO BE IMPORTANT FOR CLAIM CONSTRUCTION

11   PURPOSES YOU HAVE TO CONSTRUE THE TERMS SO YOU CAN USE IT

12   THROUGHOUT THE PATENT.  YOU CAN'T JUST SORT OF PICK AND

13   CHOOSE.  IT'S NOT GOING TO MAKE SENSE, PARTICULARLY IF YOU

14   LOOK, FOR EXAMPLE, AT CLAIM 13 THAT SAYS, "PRESENTS AT LEAST A

15   PORTION OF THE IDENTIFIED CONTENT WHILE SOME OF THE

16   ASSESSMENTS OF POTENTIAL SECURITY RISK HAVE NOT YET BEEN

17   RECEIVED FROM THE CONTENT SCANNER".

18       IT'S NOT SAYING NOT YET BEEN PERFORMED BY THE CONTENT

19   SCANNER WHICH IS WHAT THEY ARE TRYING TO SUGGEST WOULD OCCUR,

20   AND SO IT JUST DOESN'T MAKE SENSE.  SIMILARLY YOU HAVE THAT

21   LANGUAGE IN CLAIM 20.

22       DO YOU HAVE ANY QUESTIONS, YOUR HONOR?

23             **THE COURT:**  I DON'T.  THANKS.

24             **MR. CROSBY:**  BEFORE I PROCEED, COULD YOU POINT OUT TO

25   ME -- SORRY.

1          YOUR HONOR, MAY I ADDRESS OPPOSING COUNSEL TO DETERMINE

2    WHERE THIS MAY HAVE BEEN CITED IN PREVIOUS BRIEFING?

3               **THE COURT:**  WHAT, THE SLIDE 27?

4          **MR. CROSBY:**  THE ARGUMENT ON SLIDE 27.  I DON'T

5    RECALL THAT ARGUMENT HAVING BEEN MADE IN THE BRIEFING.

6               **THE COURT:**  IS THERE A CITE FOR THAT?

7          **MS. KOBIALKA:**  YES.

8          IF YOU LOOK AT PAGE 18 OF OUR OPENING BRIEF, WE DO TALK

9    ABOUT PRIOR TO COMPLETION OF SAID RECEIVING AND WE TALK ABOUT

10   THE CLAIM LANGUAGE PRIOR TO THE BEGINNING OF THE SECURITY

11   ASSESSMENT.

12         **MR. CROSBY:**  SORRY, WHICH PAGE IS THIS?

13         **MS. KOBIALKA:**  LOOKING AT PAGE 18 OF OUR BRIEF UNDER

14   THE TERM "A WARNING OF POTENTIAL RISK".  AND SO WE ARE --

15   THESE ARE --

16         **MR. CROSBY:**  IS CLAIM 13 MENTIONED THERE?  IS

17   CLAIM 20 MENTIONED THERE?

18         **MS. KOBIALKA:**  NO.  THE ELEMENT, AND THEN IN OUR

19   REPLY, WE ALSO SAY WHICH IS RELATED TO THE TIME AND SECURITY

20   RISKS ON PAGE 15.

21         WE SPECIFICALLY SAY THAT THE CLAIMS ADDRESS THE TIMING

22   ISSUE.

23         **MR. CROSBY:**  SO THE ANSWER IS THAT THIS FAILURE TO --

24   PURPORTED FAILURE TO PARSE CLAIMS 13 AND 20 WAS NOT

25   SPECIFICALLY RAISED IN ANY PREVIOUS BRIEFING, IF I UNDERSTAND

1    CORRECTLY --

2            **THE COURT:**  OKAY.  I'LL MAKE THAT DETERMINATION, BUT

3    WHY DON'T YOU PROCEED.

4            **MR. CROSBY:**  I WANT TO APOLOGIZE IF I HAVEN'T FULLY

5    PROCESSED IT.  I DON'T REALLY UNDERSTAND THE ARGUMENT.

6        IN ANY EVENT, YOUR HONOR, SO... I APOLOGIZE.  I LEFT MY

7    SLIDES AT THE TABLE.

8        THE POINT OF BITDEFENDER'S PROPOSED CONSTRUCTIONS OF THIS

9    TERM IS TO PREVENT FINJAN FROM SEEKING TO RECOVER SUBJECT

10   MATTER THAT THEY DISCLAIMED THROUGH THE MANY, MANY, MANY

11   AMENDMENTS THAT THEY MADE DURING THE PROSECUTION OF THIS

12   PATENT.

13       IT IS, OF COURSE, BLACK LETTER LAW THAT WHEN A PATENTEE

14   AMENDS A PATENT FOR A REASON OF PATENTABILITY TO OVERCOME A

15   REJECTION THAT SURRENDERS THE SUBJECT MATTER THAT WAS

16   PREVIOUSLY PRESENTED.

17       THE ORIGINAL -- I THINK IT IS IMPORTANT TO NOTE THAT THE

18   ORIGINAL SUBJECT MATTER THAT WAS PRESENTED WAS CLAIMED IN THIS

19   PATENT WAS SIMPLY PRESENTING A COMBINED SET OF SEARCH RESULTS

20   AND COMPLETED SECURITY ASSESSMENTS.  AND THAT WAS FOUND TO BE

21   ALL OVER THE PRIOR ART.  AND FINJAN WENT THROUGH A SERIES OF

22   NARROWING, NARROWING, NARROWING AMENDMENTS TO TRY AND COME UP

23   WITH SOMETHING THAT WAS IN THEIR DISCLOSURE THAT WASN'T

24   DISCLOSED IN THE PRIOR ART.

25       AND SO IN THE PROCESS OF THOSE AMENDMENTS, THE CURRENT

1    CLAIM LIMITATION, "THE WARNING OF POTENTIAL RISK" WAS

2    DISTINGUISHED FROM THE SECURITY ASSESSMENTS THAT WERE

3    PRESENTED NEXT TO THE SEARCH RESULTS IN THE PRIOR ART.  THE

4    ARGUMENT WAS THAT THERE'S A DISCLOSURE, I THINK, IT'S IN

5    COLUMN 7 THAT THEY CITED, YOU KNOW, AS BEING SUPPORT FOR THIS

6    FINAL AMENDMENT THAT GOT THESE CLAIMS ALLOWED, BUT THAT WE,

7    INSTEAD OF JUST PRESENTING COMPLETED SECURITY ASSESSMENTS NEXT

8    TO SECURITY RESULTS -- NEXT TO SEARCH RESULTS, WHAT WE DO AND

9    WHAT WE TEACH IN THE PATENT AND THE SUBJECT MATTER WHICH

10   JUSTIFIES THIS AMENDMENT TO OUR CLAIMS, IS THAT IN ORDER TO

11   DECREASE LATENCY, WE'LL SHOW THE SEARCH RESULTS WITHOUT THE

12   SECURITY ASSESSMENTS HAVING BEEN COMPLETED, AND WE WILL WARN

13   YOU ENTER AT YOUR OWN RISK, AND THEN WE'LL UPDATE THE SEARCH

14   RESULTS TO ADD THE COMPLETED SECURITY ASSESSMENTS.  THAT'S

15   WHAT THEY SAID WAS THEIR NOVEL DISTINCTION OVER THE PRIOR ART.

16       SO -- AND ALSO ON THE WAY OF GETTING TO THAT CLAIM, THERE

17   WAS A VERSION OF THE CLAIMS WHERE THE CURRENT WARNING OF

18   POTENTIAL RISK WAS TAKEN BY CLAIM TERM CALLED DISPLAYING A

19   NOTICE OF RISK INDICATING THAT SAID GENERATING A COMBINED

20   SEARCH AND SECURITY RESULTS SUMMARY IS IN PROGRESS.

21       AND WITH RESPECT TO THAT -- SO IT WAS THE SAME ESSENTIALLY

22   BUT AT THAT POINT IT GOT PRETTY MUCH TO THE SAME CLAIM, BUT

23   THEY WERE ESSENTIALLY TRYING TO CLAIM THE STEP OF SHOWING A

24   PROGRESS INDICATOR WHILE THE SEARCH RESULTS, WHILE THE

25   SECURITY ASSESSMENTS WERE NOT COMING BACK AS BEING THEIR POINT

1   OF NOVELTY.

2       THE EXAMINER SAID, NO, THAT LITTLE HOUR GLASS ON YOUR

3   SCREEN ON YOUR COMPUTER WARNINGS ARE KNOWN ALL OVER --

4   PROGRESS INDICATORS ARE KNOWN ALL OVER THE ART AND ALSO THE

5   EXAMINER CITED SOME PARTICULAR ART THAT HAD, IN FACT, PROGRESS

6   INDICATORS IN THIS CONTEXT.  SO THEY FURTHER AMENDED THAT

7   CLAIM TO ADD THIS WARNING OF POTENTIAL RISK LANGUAGE.

8       SO THE PURPOSE OF BITDEFENDER'S CONSTRUCTIONS IS TO

9   PREVENT FINJAN FROM TRYING TO CLAIM THAT SECURITY ASSESSMENTS

10  AND WARNINGS OF THE CLAIMS CAN BE THE SAME THING, RIGHT?  AND

11  ALSO TO PREVENT FINJAN FROM TRYING TO CLAIM THAT A SIMPLE

12  PROGRESS INDICATOR, WHICH THEY DISCLAIM, WOULD SATISFY THE

13  WARNING REQUIREMENT OF THE CLAIMS.

14      AND SO FINJAN HAS SAID, WELL, YOU KNOW, THE SEQUENCE --

15  WELL, LET'S SORT OF GO THROUGH THE ARGUMENTS --

16          **THE COURT:**  AGAIN, WITH SOMETHING LIKE THIS, I THINK

17  WHAT'S MOST HELPFUL HONESTLY IS FOR YOU TO POINT ME TO EXACTLY

18  THE LANGUAGE THAT YOU BELIEVE DRIVES THE DISCLAIMER, AND THEN

19  I'LL JUST EVALUATE IT.

20      THIS IS SORT OF AN INTERESTING VARIANT ON THE DISCLAIMER

21  ARGUMENT IN THAT IT DOESN'T SOUND LIKE TO ME YOU'RE SAYING

22  THEY, IN THE IPR, SAID IN BASICALLY THE WORDS THAT YOU'RE

23  PRESENTING THAT THIS IS WHAT THE CLAIM HAS TO MEAN; RATHER YOU

24  ARE SAYING PIECE TOGETHER FROM A NUMBER OF AMENDMENTS THAT

25  THEY MADE OVER TIME THAT THIS IS ESSENTIALLY WHAT'S LEFT.

1      IS THAT FAIR?

2           **MR. CROSBY:**  YEAH, EXCEPT I WOULDN'T CONSIDER IT TO

3      BE AN INTERESTING OR UNUSUAL ARGUMENT.

4           **THE COURT:**  OKAY.

5           **MR. CROSBY:**  IT'S --

6           **THE COURT:**  STOP.  STOP.  STOP.  STOP.

7      WHAT I NEED FROM YOU, AND MAYBE YOU JUST TELL ME IT'S THE

8      PLACES THAT ARE CITED AT PAGES 27 THROUGH 28 OF YOUR BRIEF,

9      AND THAT'S WHAT I NEED TO ASSESS TO DECIDE WHETHER I AGREE

10     WITH YOUR DISCLAIMER ARGUMENT.

11     IS THAT FAIR?

12          **MR. CROSBY:**  SURE, YOUR HONOR.

13     SO, FIRST OF ALL, WITH RESPECT TO THE STANDARD THAT

14     AMENDMENT AFFECTS A DISCLAIMER, WE CITED IT IN OUR BRIEF AND

15     ARE ALSO AVAILABLE TO YOU ON THE SLIDE 83, *FESTO* AND

16     *HONEYWELL*, WHICH CLEARLY SAY THAT AN AMENDMENT FOR PURPOSES OF

17     PATENTABILITY SURRENDERS THE PRIOR SUBJECT MATTER.

18     SO THE CONCEPT IS ANYTHING THAT WAS CLAIMED PREVIOUSLY

19     THAT WOULD HAVE FALLEN WITHIN THE CLAIMS AS PREVIOUSLY

20     PRESENTED CANNOT STILL BE COVERED BY THE AMENDED CLAIM IF THE

21     AMENDMENT WAS MADE TO OVERCOME A PRIOR ART REJECTION.  THAT'S

22     A SURRENDER OF WHAT YOU PREVIOUSLY CLAIMED.  YOU CAN'T GO

23     BACK.

24          **THE COURT:**  FAIR ENOUGH.  SO FACTUALLY THE RECORD

25     THAT ESTABLISHES THAT IS AS CITED BY YOU IN YOUR BRIEF.

1          **MR. CROSBY:**  THAT'S... THAT'S CORRECT.

2      SO JUST TO PUT A FINE POINT ON IT, IF... IF WE GO TO

3   SLIDE 84, YOU'LL SEE THIS IS THEIR REJECTED CLAIM THAT JUST

4   CALLED FOR GENERATING A DISPLAY PAGE WITH COMBINED SEARCH AND

5   SECURITY RESULTS.  AND THIS IS ACTUALLY A QUOTATION FROM THE

6   OFFICE ACTION THAT IS ATTRIBUTING THIS FEATURE TO ZAMIR.

7      AND THEN YOU CAN SEE THAT THE ISSUED CLAIM CONTAINS

8   LANGUAGE THAT IS ESSENTIALLY CORRESPONDING, IT'S THE... IT'S

9   THE PRESENTING POTENTIAL SECURITY RISKS OF THE PRESENTED WEB

10  CONTENT, AND THEN, OF COURSE, ADDITIONAL LIMITATIONS AFTER AND

11  THERE'S DYNAMICALLY UPDATING, AND THEN AND DISPLAYING A

12  WARNING OF POTENTIAL RISK.

13     SO THIS CLAIM, WHICH ORIGINALLY INCLUDED THE CORE OF IT,

14  WAS DISPLAYING POTENTIAL SECURITY RISK OF THE PRESENTED WEB

15  CONTENT, WHICH WAS IN THE ZAMIR REFERENCE EARLY ON, THIS

16  ADDITIONAL LIMITATION WAS ADDED.

17     SO, FOR EXAMPLE, *HONEYWELL*, WHICH IS 370 F. 3D 1131 SAYS

18  THAT AMENDING TO INTRODUCE A NEW ELEMENT GIVES RISE TO A

19  PRESUMPTION OF SURRENDER.  IT GIVES RISE TO A PRESUMPTION THAT

20  THE ELEMENT IS DIFFERENT FROM WHAT HAD BEEN THERE BEFORE.

21     AND SO THE IMPLICATION -- SO, FOR EXAMPLE, IF THE WARNING

22  OF POTENTIAL RISK COULD BE THE SAME THING AS A SECURITY

23  ASSESSMENT, AND THE ARGUMENT WERE, WELL, YOU KNOW, I'VE

24  DISPLAYED THE FIRST, YOU KNOW, THE WEB PAGE AS BEING

25  PROGRESSIVELY RENDERED BY THE BROWSER AND I NOW DISPLAYED THE

1    FIRST SEARCH RESULT WITH A COMPLETED SECURITY ASSESSMENT AND

2    THAT COMPLETED SECURITY ASSESSMENT IS THE WARNING, AND THEN I

3    DISPLAY THE SECOND SEARCH RESULT WITH A SECURITY ASSESSMENT

4    AND THAT SEARCH RESULT IS THE SECURITY ASSESSMENT OF THE

5    CLAIMS, BASICALLY I'M ACCUSING THE SAME THING AT TWO DIFFERENT

6    TYPES OF BEING THESE TWO DISTINCT ELEMENTS.

7        THAT'S THE KIND OF ARGUMENT THAT WE DON'T WANT TO SEE IN

8    THIS CASE.  AND IT WOULD BE PRECLUDED BECAUSE THE FACT THAT

9    WARNING A POTENTIAL RISK WAS ADDED TO THE CLAIM WHEN

10   ASSESSMENTS OF POTENTIAL SECURITY RISK WAS ALREADY IN THE

11   CLAIM MEANS THAT THOSE HAVE TO BE TWO DIFFERENT THINGS UNDER

12   *HONEYWELL* AND AN AVALANCHE OF PRECEDENT.

13       SO SIMILARLY, "WARNING OF POTENTIAL RISK", I WOULD POINT

14   YOU TO... SO LET'S LOOK AT SLIDE 85, THE FEBRUARY 1ST, 2010

15   AMENDMENT.  SO THAT'S WHERE THE REJECTED CLAIM INCLUDED THE

16   LANGUAGE "DISPLAYING A NOTICE OF RISK INDICATING THAT SAID

17   GENERATING A COMBINED SEARCH AND SECURITY RESULTS SUMMARY IS

18   IN PROGRESS".  AND THEN THE ISSUED CLAIM IS "DISPLAYING A

19   WARNING OF POTENTIAL RISK".

20       SO THAT "WARNING OF POTENTIAL RISK" WAS SUBSTITUTED FOR

21   THAT PRIOR LANGUAGE.  SO, AGAIN, THEY CAN'T MEAN THE SAME

22   THING.  THAT HAS TO BE NARROWING, "WARNING OF POTENTIAL RISK"

23   HAS TO BE NARROWING.  IT CAN'T INCLUDE DISPLAYING A NOTICE OF

24   RISK THAT INDICATES THAT THE SEARCH AND SECURITY RESULTS

25   SUMMARY IS IN PROGRESS.

1        AND WE HAVE EXPRESSED THAT CONCEPT THROUGH A POSITIVE

2    LIMITATION WHICH IS ESSENTIALLY DRAWN FROM THE PORTION OF THE

3    SPECIFICATION THAT FINJAN CITED IN SUPPORT OF THE AMENDMENT,

4    BUT I THINK IT WOULD BE EQUALLY WARRANTED TO JUST PUT A

5    NEGATIVE LIMITATION IN THERE AND SAY, FURTHER DISTINGUISHED

6    FROM THIS LANGUAGE, DISPLAYING A NOTICE OF RISK INDICATING

7    THAT IS IN PROGRESS.

8        THAT WOULD ALSO CAPTURE THE SENSE OF THE DISCLAIMER

9    WITHOUT READING IN AN ELEMENT FROM THE SPECIFICATION, ALBEIT

10   AN ELEMENT THAT FINJAN ITSELF POINTED TO AS PROVIDING THE

11   WRITTEN DESCRIPTION SUPPORT FOR THIS VERY NARROW CLAIM AFTER

12   MUCH TORTUROUS PROSECUTION.

13       SO THERE'S THIS CLAIM THAT WE'RE -- TWO CLAIMS WITH

14   RESPECT TO TIMING.  ONE THAT OUR CONSTRUCTION IS NOT

15   CONSISTENT WITH THE TIMING THAT'S REQUIRED BY THE CLAIMS

16   BECAUSE IT'S CLEAR THAT THE WARNING THAT THE SECURITY

17   ASSESSMENTS CAN BE IN THE PROCESS OF BEING PERFORMED, BEING

18   PERFORMED PRESENT TENSE WHILE THE WARNING IS DISPLAYED.  WE

19   DON'T DISPUTE THAT AND OUR CONSTRUCTION DOESN'T CONTRADICT

20   THAT.

21       IT'S PERFORMED IN THE PAST TENSE THAT IS AT ISSUE HERE.

22   SO THE CLAIM LANGUAGE, IT REFLECTS THE ORDER THAT THE WARNINGS

23   OF POTENTIAL RISK OCCUR BEFORE THE SECURITY ASSESSMENTS ARE

24   COMPLETED, BUT IT DOESN'T FORECLOSE, OR AT LEAST -- WE'RE

25   CONCERNED IT WOULDN'T FORECLOSE FINJAN FROM ARGUING THAT THE

1    WARNINGS CAN -- EVEN AFTER THE SECURITY ASSESSMENTS HAVE BEEN

2    PERFORMED, WHEN THEY ARE DONE YOU CAN STILL DISPLAY THESE

3    WARNINGS, PERHAPS CALLING, YOU KNOW, THE OTHER ISSUE THE

4    SECURITY ASSESSMENTS THE WARNINGS.

5        SO THERE'S A DISCLAIMER THAT GOES BEYOND WHAT THEY SAID IN

6    THE CLAIMS WHEN THEY ARE CHARACTERIZING THE EFFECT OF THESE

7    CLAIMS TO THE EXAMINER DURING PROSECUTION, AND THIS WOULD BE

8    THE SEPTEMBER 10, 2010 OFFICE ACTION, WHICH IS IN OUR SLIDE.

9        AND I AM GOING TO HURRY AND FINISH THINGS UP BECAUSE I

10   KNOW WE ARE GETTING CLOSE TO THE END OF THE DAY.

11       IN ANY EVENT, THE SEPTEMBER 10TH, 2010 OFFICE ACTION

12   WHERE -- RESPONSE, AND THE REMARKS THEY SAY, YOU KNOW, THESE

13   CLAIMS HAVE BEEN AMENDED TO INCLUDE THESE LIMITATIONS OF

14   PRESENTING THE WEB CONTENT PRIOR TO COMPLETION, DYNAMICALLY

15   UPDATING, DISPLAYING A WARNING, AND THEN SAYING IN THE

16   INTERIM.

17       THAT "IN THE INTERIM" IS NOT SOMETHING THAT MADE IT INTO

18   THE CLAIM BUT IT IS SOMETHING THAT FINJAN USED TO DESCRIBE THE

19   EFFECT OF THE CLAIMS.  SO "IN THE INTERIM" SUBJECT TO I AND

20   PRIOR TO II.  SO IT'S NOT JUST THAT THE WARNING IS INITIATED

21   PRIOR TO II, BUT THE DISPLAY OF THE WARNING OCCURS IN THE

22   INTERIM BETWEEN I AND II.  THE "IN THE INTERIM" LANGUAGE IS

23   NOT THERE IN THE CLAIM.

24       SO WE THINK -- AND THE JURY IS NOT GOING TO SEE THAT

25   LANGUAGE, JUST LIKE THE JURY IS NOT GOING TO SEE THE PRIOR

1    LANGUAGE WITH RESPECT TO PROGRESS INDICATORS.  THE JURY IS NOT

2    GOING TO BE ABLE TO SEE OR UNDERSTAND THAT THIS IS SUBJECT

3    MATTER THAT FINJAN HAS DISCLAIMED.  AND IT WILL BE AT A

4    DISADVANTAGE IN ARGUING THAT THESE CLAIMS DON'T COVER THESE

5    THINGS THAT FINJAN EXCLUDED DURING THEIR PROSECUTION OF THE

6    PATENTS.

7        I HAVE MORE.  IT'S IN OUR BRIEF.  WE ARE GETTING CLOSE TO

8    THE END OF THE DAY.  IF THE COURT HAS ANY FURTHER QUESTIONS

9    ABOUT OUR VIEW OF THE DISCLAIMER OR OUR SUPPORT FOR IT, I

10   WOULD BE HAPPY TO TRY AND ANSWER THEM.

11           **THE COURT:**  I DON'T.

12       IN LOOKING AT YOUR BRIEF THERE ARE REFERENCES TO EXHIBITS,

13   BUT AT LEAST ON THE FACE OF IT, IT DOESN'T TELL ME, FOR

14   EXAMPLE, THAT EXHIBIT O IS A DOCUMENT FROM DATE X.

15       HOW -- I WOULD JUST NEED TO GO BACK TO THOSE EXHIBITS AND

16   THEN PIECE THEM TOGETHER WITH THE DATES THAT YOU JUST SAID ON

17   THE RECORD TO FIGURE OUT WHAT MATCHES WHAT?

18           **MR. CROSBY:**  THE ADAMSON DECLARATION ACTUALLY

19   CONTAINS AN INDEX THAT WILL IDENTIFY THOSE EXHIBITS BY --

20           **THE COURT:**  I'M JUST THINKING, YOU STRESS THAT

21   INTERIM POINT.  I SEE ON PAGE 24 THAT YOU DO REFER IN A LINE

22   TO THAT ISSUE, BUT IT'S NEITHER HERE NOR THERE.  I THINK IT

23   WOULD HAVE BEEN HELPFUL IF IN THE BRIEF IT SAID WHAT WE ARE

24   CITING HERE IS A DOCUMENT THAT WAS SUBMITTED TO THE PTO ON

25   DATE X, BUT NONETHELESS I'LL FIGURE IT OUT.

1          **MR. CROSBY:**  IF I CAN GIVE YOU A DOCKET CITE TO THAT.

2     IT'S DOCUMENT 81-2, PAGE 529 OF 547.  SO 81-2, PAGE 529 IS THE

3     REFERENCE TO INTERIM.  AND YOU'LL SEE THE NEXT PAGE OF THAT

4     DOCUMENT HAS THE DATE ON IT.  SO THAT'S AN IMPORTANT ONE.

5          AGAIN, THEY ARE ALL REFERENCED IN MY SLIDES AND THE

6     ADAMSON DECLARATION THAT ACCOMPANIED OUR BRIEF HAS A

7     DESCRIPTIVE TITLE FOR THEM.

8          **THE COURT:**  ALL RIGHT.  ANY LAST RESPONSE?

9          **MS. KOBIALKA:**  YES, AND I WILL MAKE IT BRIEF.

10         SO BASED ON THE ARGUMENT I JUST HEARD, IT SOUNDS LIKE THE

11    CONSTRUCTION THAT THEY ARE PROPOSING MAY BE DIFFERENT, AND I

12    WASN'T -- IT WASN'T CLEAR TO ME.

13         THE ISSUE THAT WE TOOK WITH RESPECT TO THEIR CONSTRUCTION

14    IS THE SECURITY ASSESSMENT HAS NOT YET BEEN PERFORMED.  THAT

15    IS DIRECTLY FROM THEIR CONSTRUCTION.  AND IT SOUNDED LIKE THEY

16    ARE ARGUING SOMETHING DIFFERENT.  SO IT WAS UNCLEAR TO ME

17    WHETHER OR NOT THEY'VE ACTUALLY REVISED THEIR CONSTRUCTION.

18         THE SECOND POINT THAT I WAS GOING TO HAVE WAS THESE SLIDES

19    THAT WERE PROVIDED TO YOU, I BELIEVE THEIR SLIDE 84 AND 85,

20    AND THEN THERE WAS A SUBSEQUENT SLIDE WHICH WAS THE LAST SLIDE

21    THAT THEY SHOWED YOU, I DON'T HAVE A NUMBER ON IT THAT THEY

22    PROVIDED TO ME, BUT IF YOU FOLLOW THE TIME LINE OF WHERE THE

23    CLAIMS WERE AMENDED, THEY DON'T -- THEY ACTUALLY DON'T FOLLOW

24    IN TIME.

25         SO IF YOU LOOK AT SLIDE 84, HE'S TALKING ABOUT A

```
1    SEPTEMBER 2009 OFFICE ACTION.  AND THEN SAYS THIS IS WHAT THE

2    ISSUE CLAIM IS.  IF YOU LOOK AT IT, IT'S VERY DIFFICULT TO

3    TRACK AND FOLLOW WHAT HAD HAPPENED THERE.

4         THEN SEPARATELY, IN CLAIM -- SLIDE 85, THEY SIMILARLY DO

5    THAT AND THEY TALK ABOUT A FEBRUARY 1ST, 2010 AMENDMENT, AND

6    THEN -- ANYWAY.  SO MY POINT IS, WHEN YOU LOOK AT WHAT THEY

7    HAVE ATTACHED TO THEIR BRIEF AND THE CITATIONS, I COULDN'T

8    MAKE HEADS OR TAILS OF IT IN TERMS OF HOW THE CLAIMS WERE

9    AMENDED.

10        AND TO THE EXTENT THAT WE WERE GETTING OVER PRIOR ART, WE

11   SAID WE AMENDED THESE CLAIMS TO ADDRESS THESE SPECIFIC

12   LIMITATIONS, BUT THE REJECTED CLAIMS THAT THEY ARE TALKING

13   ABOUT LOOK VERY DIFFERENT FROM THE ACTUAL ISSUED CLAIMS.

14        HERE, IT'S TALKING ABOUT A COMBINED SECURITY SEARCH RESULT

15   SUMMARY, THIS IS THE GENERATION, AND THEY ARE SOMEHOW MATCHING

16   THAT TO THE DYNAMICALLY UPDATING.

17        SO I THINK YOU'RE GOING TO HAVE A HARD TIME, AS WE DID,

18   TRYING TO PIECE TOGETHER WHAT THEY WERE REFERRING TO.  BUT WE

19   SAID, WE MADE THESE AMENDMENTS.  THE TIMING LIMITATION WHICH

20   IS WHAT THEY SAID IN THEIR BRIEF WAS REALLY THE ISSUE IS

21   ADDRESSED IN THE CLAIMS THEMSELVES.

22             THE COURT:  IT SOUNDS LIKE THERE'S NO DISPUTE AS TO

23   THE APPLICATION OF THE LEGAL PRINCIPLE THAT AN AMENDMENT THAT

24   ADDRESSES A REJECTION CEDES, IT'S JUST A MATTER OF SLOGGING

25   THROUGH THE RECORD AND DECIDING IF I THINK IT DID OR NOT.
```

1          **MS. KOBIALKA:**  RIGHT.  AND WE HAVE NOT SAID THAT A

2   SUMMARY IS THE SAME THING AS A WARNING.  SO I HEARD THAT A FEW

3   TIMES, WHICH IS WHY I'M CONFUSED AS TO WHAT THEIR CONSTRUCTION

4   NOW REALLY MEANS IN TERMS OF WHAT I JUST HEARD OF THE

5   ARGUMENT.

6          **THE COURT:**  OKAY.

7          **MR. CROSBY:**  WOULD YOU LIKE ME TO VERY BRIEFLY

8   ADDRESS WHETHER WE HAVE CHANGED OUR CONSTRUCTION OR NOT?

9          **THE COURT:**  HAVE YOU?

10          **MR. CROSBY:**  NO, YOUR HONOR.

11          **THE COURT:**  OKAY.  GOT IT.

12       SUBMITTED?

13          **MS. KOBIALKA:**  THANK YOU, YOUR HONOR.

14             (PROCEEDINGS CONCLUDED AT 5:01 P.M.)

15

16                   **CERTIFICATE OF REPORTER**

17          I, DIANE E. SKILLMAN, OFFICIAL REPORTER FOR THE

18   UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY

19   CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE

20   RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

21

22                  *Diane E. Skillman*

23          DIANE E. SKILLMAN, CSR 4909, RPR, FCRR

24             MONDAY, JUNE 25, 2018

25

**DIANE E. SKILLMAN, OFFICIAL COURT REPORTER, USDC**